UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11086-RCL

RICHARD S. PATOSKI,

Plaintiff

v.

ALPHONSO JACKSON, SECRETARY DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

Defendant.

**ORDER ON**

**PLAINTIFF'S SECOND MOTION TO AMEND THE COMPLAINT**
*(Docket # 21)*

ALEXANDER, M.J.

Plaintiff Richard S. Patoski ("Patoski") files the instant motion seeking leave to amend his First Amended Complaint to "add claims for race discrimination in connection with his non-selection for the Community Builder position." From the outset, this Court looks to Fed. R. Civ. P. 15(a), noting that "leave [to amend a complaint] shall be freely given when justice so requires." However, Rule 15(a) does not provide the courts with a rubber stamp to simply allow every motion to amend without consideration of the merits. The First Circuit has clearly held that a court

1

may deny a motion to amend under Rule 15(a) when the record demonstrates that amendment would be, among other reasons, futile, made in bad faith, the product of undue delay, or a dilatory tactic on the part of the movant. See, e.g., Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001). As such, defendant, Alphonso Jackson, Secretary Department of Housing and Urban Development ("HUD"), vigorously opposes Patoski's motion on the grounds that Patoski failed to exhaust his administrative remedies on his racial discrimination claim as a reason for his non-selection for the Community Builder position, rendering the sought amendment futile, and that Patoski's undue delay in bringing this new claim is equally fatal.

Patoski filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in or around July 1998 alleging "discrimination based on age and gender." First Amended Complaint, at ¶ 12.[1] It is axiomatic that before seeking relief from the

---

[1] Patoski attempts to contradict his own characterization of the nature of his EEOC complaint by claiming that, through an error of the EEOC - allegedly losing his original complaint - he is unable to "know for sure the scope of the claims that [he] originally brought to the [EEOC]." Plaintiff's Second Motion to Amend the Complaint, at ¶ 6. While this Court is cognizant of the fact that Patoski's EEOC complaint was filed *pro se*, that does not alleviate an otherwise intelligent individual - one who is asserting in the instant action that he is extremely qualified for advancement at HUD - from maintaining a copy or at least some record of an important document that he drafted and filed. The Court, thus, will not entertain the implied notion that an inference should be drawn in Patoski's favor that he may have alleged racial discrimination with regard to the Community Builder

courts under Title VII, a litigant must exhaust available administrative remedies in a timely fashion. See, e.g., Cano v. United States Postal Serv., 755 F.2d 221, 223 (1st Cir. 1985) (affirming the district court's dismissal because plaintiff failed to timely file her charge of discrimination). As this Court more fully articulated in the preceding footnote, Patoski presents no factual basis to believe that he brought the issue of racial discrimination with regard to the Community Builder position before the EEOC. Patoski, thus, failed to exhaust his administrative remedies regarding his claim for racial discrimination in his non-selection for the Community Builder position and, unless otherwise excused, is barred from adding this new claim to the instant action. See Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005) ("In a Title VII case, a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door."). Accordingly, since his new claim would be barred, allowing Patoski to amend the First Amended Complaint to include an allegation of race-based discrimination regarding his non-selection for the Community Builder position would be futile, without more.

While Patoski does not deny that he failed to overtly assert a charge of race-based discrimination during his administrative proceedings, he avers that his claim for race-based discrimination regarding his non-selection for the Community Builder

---

position in his original EEOC complaint.

3

position grew out of his original EEOC complaint, even if not specifically stated therein. By this reasoning, Patoski likens this situation to others where courts have allowed such "new" allegations to stand within a civil complaint because they could foreseeably grow from the original EEOC complaint. The parties do not dispute that "the scope of the civil complaint is accordingly limited by the charge filed with the EEOC *and the investigation which can reasonably be expected to grow out of it.*" Powers v. Grinnell Corp., 915 F.3d 34, 38 (1st Cir. 1990) (internal citations omitted) (emphasis added). The issue here is simply whether Patoski's new claim of race-based discrimination falls within the rationale articulated in Powers and could thus have reasonably been expected to grow out of his original EEOC charges. Id. If Patoski's claim cannot be found to fall within the exception articulated in Powers, this Court must, for reasons previously articulated, find the sought amendment futile and deny the motion.

Neither party presents this Court with cases specifically supporting or rejecting the inclusion of race-based discrimination allegations in a civil complaint that reasonably grew out of age and/or gender allegations in the original EEOC complaint. HUD, however, provides this Court with a significant number of examples from this and other District and Circuit courts where plaintiffs unsuccessfully attempt to expand the civil action by alleging wholly new theories of discrimination that were

4

not previously presented administratively. See, e.g., Luciano v. Coca Cola Enters., Inc., No. Civ. A. 02-10895, 2004 WL 1922137, at *1 (D. Mass. Aug. 30, 2004) (refusing to allow plaintiff to proceed with hostile work environment claims when such claims were not mentioned in the administrative filings); Kenny v. MML Investors Servs., Inc., 266 F. Supp. 2d 239 (D. Mass. 2003) (refusing to allow plaintiff to add claims of gender discrimination where plaintiff's administrative charge alleged race discrimination and constructive discharge); Sekamate v. Newton Wellesley Hosp., No. Civ. A. 00-12528, 2002 WL 31194873 (D. Mass. Sept. 3, 2002) (allowing summary judgment against plaintiff's newly added theory of disability discrimination for failure to exhaust administrative remedies because nothing in the administrative record showed that the plaintiff alleged any form of disability-based discrimination); Antol v. Perry, 82 F.3d 1291, 1295-96 (3d Cir. 1996) (sex discrimination not within scope of disability discrimination claim even where same failure to promote was basis for claim); Castro v. United States, 775 F.2d 399, 403 n.2 (1st Cir. 1985) (declining to allow plaintiff who alleged age discrimination to add claims of national origin discrimination); and Shah v. Mount Zion Hosp. & Med. Ctr., 642 F.2d 268, 271-72 (9th Cir. 1981) (administrative charge alleging sex and national origin discrimination does not permit plaintiff to assert claims in federal court for race, color and religious discrimination because such claims are not reasonably

related).

The logic of the above referenced cases is instructive. In addition, this Court notes Judge Tauro's decision in Silva v. Hit or Miss, prohibiting a plaintiff from suing for racial discrimination "because her race is nowhere mentioned in the MCAD complaint [for disability discrimination]." 73 F. Supp. 2d 39, 41 (D. Mass. 1999). Further, the First Circuit has acknowledged that despite the current confusion amongst courts on how to handle these situations, Clockedile v. New Hampshire Dept. of Corrections, 245 F.3d 1, 6 (1st Cir. 2001), the purposes of administrative exhaustion "would be frustrated if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action." Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996).

This Court finds the logic espoused in the above-mentioned decisions of this and other courts persuasive. To be sure, there are plainly significant differences between allegations of age and/or gender discrimination and racial discrimination. Initially, the three are so different as to be specific enumerated categories of protected classes as defined under Title VII (race and sex) and the Age Discrimination in Employment Act (age). 42 U.S.C. ¶ 2000e-2 and 29 U.S.C. ¶ 623. Patoski's assertion that investigation of his age and gender discrimination claims would

automatically place the EEOC on notice of his potential race-based discrimination claims, because the individuals targeted by the age and gender discrimination investigation are identical to those identified with relation to the race-based discrimination claim, is of no moment. Patoski makes an illogical assumption that an individual questioned about topics A and B will automatically and without specific prompting, disclose information about unrelated topic C. It cannot be assumed that EEOC investigations are designed as fishing expeditions to uncover all possible transgressions, especially if not alleged. Such an assumption would never close the door on an investigation and leave the EEOC perpetually open to new civil claims based solely on an inference the agency could have uncovered additional acts of discrimination if it only asked the right questions. Such a result would be illogical and unfair, placing an enormous burden on the EEOC and making it virtually impossible to assure the government receive proper notice of allegations in order to provide a meaningful defense.

Accordingly, this Court holds that a claim of race-based discrimination cannot reasonably be said to have grown out of an EEOC investigation of age and/or gender discrimination allegations. In light of the above holding, Patoski's proposed amendment to add a claim for race-based discrimination with regard to the Community Builder position would be futile.

Patoski further claims that he did not understand one of HUD's motives to have been race-based regarding his non-selection for the Community Builder position until the deposition of Mary Lou Crane[2] in May 2006. Specifically, Ms. Crane's testimony revealed that: "If Plaintiff had been Black or Hispanic, Crane would have regarded this as a positive factor in his application for the Community Builder position." Plaintiff's Second Motion to Amend the Complaint, ¶ 4.[3] The instant motion does not concern the merits of Patoski's claim that the above testimony evidenced racial discrimination, and this Court takes absolutely no position on the matter. What this Court must decide, however, is whether, despite not having brought this claim before the EEOC, Patoski is entitled to amend his complaint because of extenuating circumstances that prevented him from doing so earlier. This Court finds no such extenuating circumstances.

Of paramount importance, Patoski clearly knew of Ms. Crane's statement in February of 1999, during the EEOC administrative proceedings, and at a point when

---

[2] It must be noted that Ms. Crane was the Regional Director, to whom Boston-based Community Builders would report, once hired. However, while Ms. Crane's recommendation for hiring was given substantial weight, ultimately, Ms. Crane did not make the hiring decisions for Community Builder positions.

[3] As discovery has not yet concluded, this Court must consider a motion to amend under the standards of Fed. R. Civ. P. 12(b)(6) and, thus, quote the above characterization of Ms. Crane's testimony from Patoski's motion, assuming that all of the plaintiff's allegation are true. See Hatch, 274 F.3d at 19.

Patoski was represented by counsel. At that point, Ms. Crane submitted an affidavit whereby she affirmed her position that she used "workforce diversity" as a selection recommendation. It is of no minor importance that Patoski acknowledged the existence and content of Ms. Crane's affidavit not less than three separate times. See Complaint, at ¶ 10; First Amended Complaint, at ¶ 10; proposed Second Amended Complaint, at ¶ 10. Having knowledge of Ms. Crane's position, Patoski's time to bring a claim before the EEOC began to run at least at the time he or his counsel became aware of the contents of Ms. Crane's affidavit.

Accordingly, Patoski was on notice of Ms. Crane's statement for the Community Builder position at least as early as February 1999. With such notice, it was incumbent upon Patoski to bring the matter, if he so desired, to the EEOC within the limitations period. He may not now, some seven years later, bring the new allegation before this Court, not having previously brought the claim before the EEOC and exhausting his administrative remedies and without demonstrating an exceptional circumstance for this delay.

This Court hereby DENIES Plaintiff's Second Motion to Amend the Complaint in its entirety.

SO ORDERED

1/22/07
Date



United States Magistrate Judge