UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RICHARD S. PATOSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-11086 RCL |
| | ) | |
| ALPHONSO JACKSON, SECRETARY, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

**DEFENDANT'S OBJECTION TO THE MAGISTRATE'S REPORT AND RECOMMENDATION DENYING THE REQUEST THAT THE DEFENDANT BE PERMITTED TO EXERCISE EXECUTIVE PRIVILEGES SHOULD THE COURT CONCLUDE THAT THE WORK PRODUCT AND ATTORNEY CLIENT PRIVILEGES DO NOT APPLY**

Defendant, Alphonso Jackson, Secretary of the Department of Housing and Urban Development ("HUD"), hereby respectfully objects to the Magistrate's Report and Recommendation directing that the United States formally assert executive and/or presidential communications privilege with respect to an October 2002 legal opinion of the Department of Justice ("DOJ") regarding HUD's Affirmative Employment Plan ("AEP") that was provided to the Domestic Policy Council in the Executive Office of the President. The assertion of the executive and presidential privileges, which would likely be extremely disruptive of the work of high level level Executive Branch officials, should not be required when other privileges protecting the document from disclosure have already been asserted by defendant and have been effectively conceded by plaintiff to apply.

Defendant has already asserted the work product doctrine and the attorney-client privilege in support of the withholding of the documents in question from discovery. Plaintiff has not responded at all to those privilege assertions. By way of Motion dated November 7, 2006, the Defendant requested that this Court allow the Defendant to assert Executive privilege as to the October 2002 Memoranda should the Court deem those memoranda to be discoverable

after reviewing the assertion of the attorney client and work product privileges.  On January 22, 2007, Magistrate Judge Alexander denied the motion in a report and recommendation, stating, "[i]n that there is no doubt that the exerted (sic) privileges exist, the Court sees no reason to delay asserting them as it deems necessary."  Docket # 28, Report and Recommendation, January 22, 2007.

## Background

In fulfilment of its obligations under Title VII of the Civil Rights Act of 1964, the Equal Employment Opportunity Commission ("EEOC") promulgated Management Directive 714 ("MD 714") in 1987, which required each federal department and agency to prepare and submit to the EEOC an "affirmative employment plan" to be reviewed and approved by the EEOC.  The directive required agencies to develop affirmative employment programs ("AEP") which hold senior management responsible for equal employment opportunity objectives and provides for the establishment of numerical "goals" where there is a "manifest imbalance" or "conspicuous absence" of minorities and women in the work force.[1]

One of the arguments of the Plaintiff in this matter is that the collection and dissemination of workforce statistics, based upon race, to managers, in combination with managerial performance standards based upon EEO considerations, leads managers to consider race (and/or gender) in making individual personnel decisions irrespective of whether taking race into account can be justified as a matter of law.  Plaintiff bases that argument on HUD's AEP, which is no longer in place because MD 714 was replaced in 2003 by an entirely new Management Directive.

Plaintiff alleges that HUD's now superceded AEP violated the constitution - - and that HUD's present practices do so as well -- and seeks prospective injunctive relief.  Plaintiff also

---

[1] In 2003, EEOC MD-714 was superceded by EEOC MD 715.  See, e.g., Worth v. Jackson, 451 F.3d 854, 856 (D.C. Cir. 2006) (finding, inter alia, that Plaintiff's claims with respect to the AEP Program were rendered moot by the adoption of MD 715 which eliminates the creation of any goals based upon the statistical analysis).

brings claims pursuant to Title VII alleging that he was improperly denied two positions, one announced in 1998, and one announced in 2000, as result of the AEP.

## Argument

In the course of discovery, the Plaintiff has sought production of various legal memoranda prepared by the Department of Justice Civil Division and the Office of General Counsel for HUD that were generated in connection with prior litigation on this issue. See Worth v. Jackson, 451 F.3d 854, 856 (D.C. Cir. 2006).[2] As relevant to the instant Motion, the Plaintiff also seeks production of two memoranda prepared by the Department of Justice Civil Division for the Executive Office for the President addressing the allegations in that matter. These documents consist of legal analysis and opinion offered by counsel to their clients with respect to then pending litigation. See Declaration of Carole Wilson, Senior Counsel, HUD Office of General Counsel, Docket #19, Exhibit 1, ¶¶ 6, 8.

In opposing the Plaintiff's Motion to Compel, the Defendant has submitted affidavits clearly establishing the applicability of the attorney client and work product privileges as to the documents that are also potentially subject to Executive privileges. See Declaration of Carole Wilson, ¶¶ 6, 8. Concurrent with the assertion of the attorney client and work product privileges, Defendant requested that this Court grant him an extension of time in which to determine whether to assert Executive privileges until after this Court has ruled on the claims of attorney-client privilege for the very same documents.

Assertion of privileges designed to protect Executive Branch deliberations from public disclosure itself requires deliberations at the highest levels of the Executive Branch. Landry v. F.D.I.C., 204 F.3d 1125, 1135 (D.C. Cir. 2000) (discussing need for high level official to assert deliberative process). As the Supreme Court has made clear, when addressing the entitlement of litigants to inquire into the deliberations of those "in close proximity to the President," courts

---

[2]In Worth, the Plaintiff alleged, as does the Plaintiff in this matter, that HUD's AEP program constituted unconstitutional affirmative action.

should eschew requiring any earlier a formal assertion of Executive privilege than is necessary because protecting the Executive from vexatious litigation is a "paramount necessity." Cheney v. U.S. Dist. Court for Dist. of Columbia, 542 U.S. 367, 382 (2004) (citations omitted).  In this regard, federal courts are directed to avoid potential constitutional conflicts that may arise in the context of the assertion of Executive privileges, "whenever possible:"

> Executive privilege is an extraordinary assertion of power "not to be lightly invoked."  Once executive privilege is asserted, coequal branches of the Government are set on a collision course.  The Judiciary is forced into the difficult task of balancing the need for information in a judicial proceeding and the Executive's Article II prerogatives.  This inquiry places courts in the awkward position of evaluating the Executive's claims of confidentiality and autonomy, and pushes to the fore difficult questions of separation of powers and checks and balances.  *These occasions for constitutional confrontation between the two branches should be avoided whenever possible.*

Cheney, 542 U.S. at 389 (emphasis added) (citations omitted).  Moreover, it is not only the *assertion* of the privilege that gives rise to separation of powers concerns, it is the very fact that the determination of whether to assert the privilege (or not) distracts the Executive from the proper exercise of its constitutional duties.  Id.

Resolution of the assertion of attorney client and work product privileges in this matter is likely to  moot the need for deliberations within the Executive Branch regarding whether to assert and support the deliberative process and presidential communications privilege.  Indeed, the Plaintiff has failed to submit any response whatsoever to the assertion of the attorney client and work product privileges.  See, e.g, Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 225 (1st Cir. 2005) (Upon prima facie evidence that the privilege applies "[t]he party challenging the privilege carries the burden of establishing that any communications are discoverable.").  Thus, left to the Court, with respect to the assertion of the attorney client and work product privileges, is the almost redundant question of whether the attorney client and work product privileges apply to two memoranda prepared by government counsel for their client with respect to claims made in specific litigation.  This is indisputably an

occasion where it is possible to avoid imposing an unnecessary burden upon the Executive and to avoid any potential conflict between the Executive and Judicial branches.

Consistent with the Supreme Court's directive in <u>Cheney</u>, there is no reason to require the Executive to assert this privilege where other privileges may moot the necessity to impose the burden upon the Executive branch.

## **Conclusion**

For these reasons, the Defendant respectfully objects to the Magistrate's Report and Recommendation.

>Respectfully submitted,
>MICHAEL J. SULLIVAN
>United States Attorney
>
>/s/ Mark J. Grady
>MARK J. GRADY
>Assistant U.S. Attorney
>U.S. Attorney's Office
>John Joseph Moakley U.S. Courthouse
>1 Courthouse Way, Suite 9200
>Boston, MA   02210
>Tel. No. (617) 748-3136

### Certificate of Service

Review of the docket reflects that this Objection will be served electronically.

>/s/ Mark J. Grady
>MARK J. GRADY