UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD S. PATOSKI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALPHONSO JACKSON, SECRETARY, ) <br> DEPARTMENT OF HOUSING AND ) <br> URBAN DEVELOPMENT, ) <br> ) <br> Defendant. ) | C.A. No. 05-11086 RCL |

PLAINTIFF RICHARD S. PATOSKI'S REVISED MOTION TO COMPEL
RESPONSES TO HIS FIRST SET OF DOCUMENT REQUESTS

Pursuant to this Court's order of December 4, 2006, the parties have met in person to resolve the issues raised in Plaintiff's original motion to compel and Plaintiff is hereby submitting this revised motion. The revised motion eliminates issues that have been resolved. Exhibits referred in this revised motion are attached to the Plaintiff's original motion.

Plaintiff's timely filed discovery requests are attached as Exhibit 1, and Defendant HUD's responses are contained in Exhibit 2. HUD supplemented its responses on or about October 3, 2006 (Exhibit 3), on October 4, 2006 (Exhibit 4), and again on October 12, 2006. HUD provided a privilege log. Exhibit 5.

Mr. Patoski is a White male, and current employee of Defendant HUD. This is a reverse discrimination case, in which Mr. Patoski alleges that he was rejected for two promotions, because of his race, sex and/or age. Mr. Patoski further alleges that HUD has implemented, and continues to adhere to, formal and/or informal policies that

discriminate against the hiring and promotion of White males, in violation of Title VII and the Fifth Amendment to the United States Constitution.

### DOCUMENT REQUESTS NOS. 1, 2, 4, 5, 7, 8, RELATING TO HUD'S JUSTIFICATIONS FOR ENGAGING IN AFFIRMATIVE ACTION

As part of his claims, Patoski alleges that HUD improperly engaged in affirmative action, without proper constitutional justification. During the period in which Patoski was twice rejected for the promotions at issue in this case, HUD's "AEP" program (Affirmative Employment Program) was implemented to achieve a proportionate representation within HUD that was at least equal to the gross population as a whole, with respect to PATCOB categories. Cockrell Dep., at 36, Exhibit 6. HUD would use its quota based system to encourage hiring, promotion and training of women, and those of various racial and ethnic backgrounds. Cockrell Dep., at 24-25, Exhibit 6. However, there were no goals or objectives to seek adequate representation for White males or to make sure that their were no barriers to their advancement. Cockrell Dep., at 27, 31-32, Exhibit 6.

Such policies resulted in disproportionate staffing patterns, at the expense of White males. For example, the HUD AEP Fiscal Year 2001 Update Report shows that White males were underrepresented in all six categories of HUD workers, and that, overall, they constituted only 27.8% of the workforce as compared to 42.6% of the civilian labor force. Meanwhile, Black females were overrepresented, constituting 25% of the HUD workforce, despite consisting of only 5.4% of the civilian labor force. Exhibit 7, at DII-20. Nevertheless, HUD set numerical goals for hiring 50 additional Black females, but did not set any goal for hiring underrepresented White males. Exhibit 7, at DII-32.

While Black males were represented in the HUD workplace at almost twice the rate they appear in the civilian work force, HUD nevertheless set itself the goal of hiring 20 additional Black males. Exhibit 7. Attainment of these goals would have the likely effect of increasing the White males' already marked underrepresentation in the HUD workplace.

In 1995, the United States Supreme Court decided Adarand Constructors, Inc. v. Pena, 115 S. Ct. 2097, 2105-2107 (1995), which held that the Fifth Amendment of the United States Constitution prohibits Federal race-based affirmative action programs, which are unjustified and/or exceed narrow Constitutional limits. Id. Under the approach required by the Constitution, any preference based on racial or ethnic criteria is subject to strict scrutiny, and is subject to the most searching examination. Adarand, 115 S. Ct. at 2111, 2112.

Under strict scrutiny analysis, numerical hiring goals based on race must be narrowly tailored to remedy ongoing patterns and practices of exclusion, or at the lingering effects of prior discriminatory conduct that has ceased. See Adarand, 115 S. Ct. at 2133 (Souter, J. dissenting). It must be shown that such exclusion has resulted in a significant underutilization of racial or ethnic groups. Richmond v. J.A. Croson Co., 488 U.S. 469, 500 (1989). The agency must demonstrate the existence of racial exclusion with a "strong basis in evidence." Croson, 488 U.S. at 500. In other words, the burden rests on the agency to justify its race-based remedial programs, to establish that they pass muster under strict scrutiny.

For example, if the Federal Government seeks to justify its affirmative action program, it is not enough to show that there are fewer group members within the job

category than in the general population. Rather, it must be shown that there are fewer group members in the job category than exist in the qualified labor pool, and that the disparity be "significant." Croson, 488 U.S. at 500, 501.

In light of the Adarand decision, President Clinton, in a memorandum dated July 19, 1995, directed department heads to evaluate the race based programs they were administering. Likewise, in a February 29, 1996 Memorandum from the United States Department of Justice, entitled "Post-*Adarand* Guidance on Affirmative Action in Federal Employment," the agencies were directed to evaluate their affirmative action programs to make sure they complied with strict scrutiny. Exhibit 8.

Patoski propounded document request nos. 1-5, 7-8 to determine what, if any, analysis was conducted by HUD to determine that its numerical race-based hiring program was constitutional. HUD only responded by objecting:

1.  All documents, studies, recommendations, reports and analyses relating to or undertaken in response to, a memorandum from President Clinton, dated July 19, 1995, requiring that Heads of Executive Departments and Agencies undertake "an evaluation of programs you administer that use race or ethnicity in decision making."

    Objection: the defendant objects to this request on the ground that the request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The defendant further objects to this request on the ground that it seeks materials protected by the attorney client privilege, work product doctrine and/or the deliberative process privilege.

2.  All documents relating to any program changes or eliminations made as a result of any evaluations as described in document request 1.

    Objection: the defendant objects to this request on the ground that the request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The defendant further objects to this request on the ground that it seeks materials protected by the attorney client privilege, work product doctrine and/or the deliberative process privilege.

3.  A Memorandum to general counsels, dated February 29, 1996, from John R. Schmidt, of the United States Department of Justice, relating to "Post Adarand Guidance

4

on Affirmative Action in Federal Employment."

   The defendant objects to this request on the ground that it seeks materials protected by the attorney client privilege, work product doctrine and/or the deliberative process privilege.

4.   All documents reflecting or evidencing the distribution of the document described in document request 3, and or responding to that document.

   The defendant objects to this request on the ground that it seeks materials protected by the attorney client privilege, work product doctrine and/or the deliberative process privilege.

5.   All documents, studies, recommendations, reports and analyses relating to whether HUD recruitment, hiring, training and/or promotion practices complied with the strict scrutiny standard enunciated as described in the document identified in document request 3.

   The defendant objects to this request on the ground that it seeks materials protected by the attorney client privilege, work product doctrine and/or the deliberative process privilege.

7.   All correspondence between EEOC and HUD on how to determine if HUD's affirmative employment programs, and diversity programs, met the strict scrutiny standard of Adarand Constructors, Inc. v. Pena, 115 S. Ct. 2097 (1995).

   The defendant objects to this request on the ground that it seeks materials protected by the attorney client privilege, work product doctrine and/or the deliberative process privilege.

8.   All documents, studies, recommendations, reports and analyses relating to whether HUD recruitment, hiring, training and/or promotion practices complied with the strict scrutiny standard enunciated in the decision of Adarand Constructors, Inc. v. Pena, 115 S. Ct. 2097 (1995).

   The defendant objects to this request on the ground that it seeks materials protected by the attorney client privilege, work product doctrine and/or the deliberative process privilege.

   One of HUD's supplemental responses to these requests further stated, "Materials withheld subject to a claim of privilege are listed in the attached privilege log." <u>Exhibit 4</u>, at 1-3. While HUD's affirmative action program has been placed squarely at issue, HUD is refusing to provide any documents indicating whether or not it undertook an

5

analysis to determine whether the program met the requirements of strict scrutiny, and the results of such analysis. Such a position is completely untenable, where HUD's AEP has been placed directly at issue, and HUD, as a Federal agency, is under the Constitutional obligation to justify its programs involving racial and gender preference. The work product doctrine does not bar disclosure where there is no other way to acquire the information.

Tellingly, HUD removed its attorney client and work product objections to the the production of the February 29, 1996 DoJ memorandum requiring agencies to evaluate their affirmative action programs in view of the strict scrutiny analysis. See Exhibit 2, Response to Request No. 3, at 1-2.

Patoski is entitled to HUD's analysis related to whether its AEP program satisfied Constitutional requirements. The burden rests on the government, in implementing an affirmative action program, to justify its existence, and show it to be appropriate under Constitutional principles. Adarand, 115 S. Ct. at 2111, 2112. Moreover, Patoski is entitled to HUD's analysis undertaken at the time that the AEP was in effect. With regard to race or gender classifications, the government's justification must be genuine, and not hypothesized or invented *post hoc* in response to litigation. United States v. Virginia, 116 S. Ct. 2264, 2275 (1996).

HUD should not be permitted to provide to the Court a post hoc analysis, which ignores or glosses over what it knew or understood at the relevant time. Plaintiff is entitled to analysis of the program undertaken while the program was in effect. Those justifications appear to be contained only in documents that HUD wishes to shield from discovery. Absent disclosure of these documents, HUD should be precluded from

advancing that it had any legitimate justification for its affirmative action program. In the alternative, it should be required to respond fully to document requests 1, 2, 4, 5, 7-8.

HUD is limiting its response (and its privilege log) to documents that HUD produced. Certainly other Federal agencies, such as the EEOC, have generated documents on this issue. The EEOC, which drafted MD-714, which was ostensibly the basis of the HUD affirmative action program, decided to eliminate MD-714 based on "recent and significant changes in the law, including recent Supreme Court decisions." MD-715 § 1. In other words, MD-714 was eliminated because it was illegal. Plaintiff is entitled to learn what inquiry was made concerning MD-714, and when it became apparent that it violated the Constitution. HUD, as a branch of the Federal Government, should be forced to turn over all relevant documents issued by the Federal Government, to which it has access.

DOCUMENT REQUEST NOS. 27-31, 37<br>EVALUATIONS AND AWARDS

Plaintiff seeks evaluations and awards of the individuals who affected Plaintiff's career opportunities, to determine whether the evaluation process created incentives, or noted the recipients' penchant to disfavor White males.

The parties really have no controversy with regard to these discovery requests. HUD has stated that it will provide the responsive evaluations and SF-50s if it can find them (See Exhibit 13), but it has not yet provided the documents. (Recently, HUD provided an SF-50 of Mr. Yeow). Thus, Plaintiff requests only that the Court establish a deadline for HUD to provide responsive documents.

Plaintiff's discovery requests included document request 29, which requested performance evaluations from various individuals involved in the selection process for

7

the two positions directly at issue in Mr. Patoski's case. HUD policy required that supervisors and managers be evaluated with regard to their compliance with the affirmative action policies. It was Mr. Patoski's goal to determine whether any of the relevant individuals were commended for hiring or favoring females or those of various racial or ethnic backgrounds, and to determine in what ways HUD encourages its managers and supervisors to make decisions based on race and/or sex. See Johnson v. Transportation Agency, Santa Clara County,, 107 S. Ct. 1442, 1467 (1987) (Scalia, dissenting) (evaluations of supervisory personnel based on their ability to attain an affirmative action plan's objective for a diverse workforce "unmistakably communicated" that concrete numerical results in hiring were expected).

27.   The performance evaluations for FY 98 and any narratives regarding the EEOC/AE/Diversity Performance Element rating for the supervisors and managers involved in the selection process for the Community Builder Positions in the Boston, MA HUD Field Office under vacancy announcement #OS-MST-98-0002A, including, without limitation, the FY98 performance evaluations for Jose Citron, Mary Lou Crane, Anthony Brito, Cal Kolaski, Macella Brown, Jacqueline Campbell, Robert Paquin, and the Human resources Manager responsible for overseeing the selection process.

    Government records retrievable by individual name are subject to the Privacy Act and may not be disclosed without a court order. In this regard, defendant has forwarded to Plaintiff a proposed order for the Court to enter, authorizing disclosure of materials under that Act. Absent court authorization, the defendant and undersigned counsel could be subject to civil and/or criminal penalties for disclosure of records covered by the Privacy Act. The defendant shall supplement this response.

28.   Any awards received by any of the persons named in request 27 above for their performance during 1998.

    See Response No. 27.

29.   The performance evaluations for FY 2000 and any narratives regarding the EEOC/AE/Diversity Performance Element Rating for the supervisors and managers involved in the selection process for the Public Housing Revitalization Specialist positions in the Boston, MA HUD field Office under Vacancy Announcement # 06-DEU-2000-0081A and #06-MSR-2000-0099AZ, including, without limitation, the FY 2000 performance evaluations of Cheryl Ann Tenninga, Mirza Del Rosario, Carmen

8

Valenti, Maxine Saunders, the Human Resources Supervisor for Debora Medvic, a Human Resources Specialist and the Human Resources Supervisor for Jeffrey Lahmers.

See Response No. 27.

30. Any awards received by any of the persons named or identified in request 29 above and Jeffrey Lahmers and Emmanuel Yeow, for their performance during 2000.

See Response No 27.

31. The annual performance appraisal for Deborah Medvic for 2000 and any document relating to any action taken against Ms. Medvic for the error she made in finding plaintiff ineligible for the Public Housing Revitalization Specialist position in vacancy announcement #06-MSR-20000-0099AZ.

See Response No. 27.

37. The annual performance reviews, if any, of the HUD EEO Director, from January 1, 1997, to the present.

Objection: the defendant objects to this request on the ground that the request is not reasonably calculated to lead to the discovery of admissible evidence in this matter, See Response No. 27. Notwithstanding, the defendant shall supplement this response.

HUD supplemented its response by providing many evaluations and awards, but unfortunately, they are not the ones that Mr. Patoski sought. See Exhibit 3, at 7-9. It further stated that it provided performance appraisals of the persons specifically named in request 27, however, it failed to provide evaluations for Mary Lou Crane. Id. Mr. Patoski sought the evaluations which gave participants and decisionmakers ratings, and awards, during the period(s) in which the subjects of the evaluations took actions which contributed to the rejection(s) of Mr. Patoski. Instead, HUD provided evaluations for these actors for periods that were either before or after they took action that was relevant to Mr. Patoski.

Thus, Mr. Patoski seeks the evaluations of Mary Lou Crane, Jose Cintron, Anthony Brito, Marcella Brown and Robert Paquin, covering their work during the period of October 1997 through April 1998.

Mr. Patoski seeks the evaluation of Cheryl Ann Teninga which covers the period of May 10 though June 30, 2000.

Mr. Patoski seeks the evaluations of Carmen Valenti, Debora Medvic, Jeffrey Lahmers Emmanuel Yeow, and Maxine Saunders, for the period covering February 1, 2000 through June 30, 2000.

While HUD has provided an evaluation for Mirza Del Rosario coving the period of February 1, 2000 through September 30, 2000, it has not provided the EPPES evaluation for the period, and it should do so.

Plaintiff also seeks the SF-50s for the relevant time periods, which will demonstrate whether relevant individuals obtained bonuses based on positive evaluations.

> The Plaintiff
> By his attorneys,
>
> /s/ Robert S. Mantell
> Kevin G. Powers
> BBO# 405020
> Robert S. Mantell
> BBO# 559715
> Rodgers, Powers & Schwartz LLP
> 18 Tremont Street, Suite 500
> Boston, MA  02108
> (617) 742-7010, ext. 305
> fax (617) 742-7225

## LR 7.1 AND 37 CERTIFICATION

I, Robert S. Mantell, hereby state that I have initiated numerous attempts, over the past months, including a face-to-face meeting with Mark Grady, Esq., attorney for Defendant on February 13, 2007, to resolve or narrow the issues contained in this motion, some of which have been described above.

/s/ Robert S. Mantell

Patoski motion to compel revised