UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD S. PATOSKI,                )
    Plaintiff,                    )
v.                                 )          C.A. No. 05-11086-RCL
ALPHONSO JACKSON, SECRETARY        )
DEPARTMENT OF HOUSING AND          )
URBAN DEVELOPMENT                  )
    Defendant.                    )

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### Introduction

    The Plaintiff, Richard Patoski ("Patoski"), has brought the instant action alleging that with respect to two positions for which he applied -- a Community Builder ("CB") position in 1997 and a Public Housing Revitalization Specialist ("PHRS") position in 2000 -- the Department of Housing and Urban Development ("HUD") unlawfully discriminated against him in violation of Title VII and the Constitution.  Specifically, he alleges that HUD discriminated against him on the basis of his race (white) with respect to the 2000 PHRS position; and on the basis of gender (male) with respect to both 1997 CB position and the 2000 PHRS position.  Plaintiff also alleges age discrimination in denying him the 1997 CB position.

    Patoski further contends that HUD's Affirmative Employment Program ("AEP") constituted an impermissible affirmative action program.  According to Patoski, the collection and dissemination to managers of workforce statistics based upon race and gender, in combination with managerial performance standards based upon EEO considerations, led HUD hiring officials consider race and/or gender in making individual personnel decisions irrespective of whether taking race into account can be justified as a matter of law.  Finally, Patoski seeks to pursue claims that HUD's ongoing policies and procedures discriminate against him on the basis of his race and gender in violation of Title VII and the Equal Protection Clause of the Constitution.

    Plaintiff seeks summary judgment as to two of the foregoing claims.  First, Plaintiff first

contends that testimony of Mary Lou Crane ("Crane"), an individual who made recommendations to the hiring official in the 1997 CB hiring process concerning Plaintiff, has conceded that gender played a role in her recommendation, a purported violation of 42 U.S.C. § 2000e-2(m). Second, Plaintiff seeks a declaratory judgment that HUD's AEP constituted an impermissible "affirmative action program." With respect to the 1997 CB hiring position, Plaintiff has not met his burden of establishing discrimination, he cannot impute alleged discriminatory intent of Crane to the decision making official, and genuine issues of fact preclude summary judgment in favor of Plaintiff.

With respect to HUD's AEP, any general challenge to HUD's AEP is moot, Plaintiff has not established that the AEP is relevant to the two non-selections at issue before this court, and genuine issues of fact would preclude summary judgment as to issues relating to HUD's AEP.

## **ARGUMENT**

### I.    **Standard of Review In Summary Judgment**

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir.1995). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the non-moving party's position ." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir.1990).

In considering motions for summary judgment, the court must view the facts in a light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. Barbour, 63 F.3d at 37. Summary judgment is appropriate only when all the relevant pleadings and supporting documents, viewed in a light most favorable to the non-moving party, present no genuine

issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.

56(c); Barbour, 63 F.3d at 36 (citation omitted).

## II.    The Plaintiff Has Failed to Establish That The Undisputed Material Facts Warrant Summary Judgment in Favor of The Plaintiff Under 42 U.S.C. § 2000e-2(m)

Plaintiff contends that the deposition testimony of Crane, an individual who made

recommendations concerning the Plaintiff to the hiring official, Jose Cintron ("Cintron") for the

1998 CB position, unequivocally establishes that gender played a role in the decision making

process for the 1998 CB position.  Thus, contends Plaintiff, he is entitled to summary judgment

under 42 U.S.C. § 2000e-2(m).  That statute provides, in relevant part:

> [A]n unlawful employment practice is established when the complaining party
> demonstrates that race, color, religion, sex, or national origin was a *motivating factor*
> for any employment practice, even though other factors also motivated the practice.

42 U.S.C. § 2000e-2(m) (emphasis added).  Specifically, Plaintiff seeks to rely upon testimony of

Crane that she viewed the female gender of two applicants as a "positive attribute" and/or "positive

factor."[1]

### A.    The Plaintiff's Reliance Upon  *Cariglia v. Hertz Equipment Rental Corporation* Is Misplaced

As a preliminary matter, Plaintiff does not dispute that it was Cintron, not Crane, who was

the hiring official of HUD with respect to the CB position.  Although Crane made recommendations

---

[1]For ease of reference, the testimony of Crane upon which Plaintiff relies is the following:
Q:    When you recommended her [Deborah Griswold], did you regard it as a
        positive factor that she was a female?
A:    Yes. . . .
Q:    Did you regard her [Linda Pellegrino's] gender as a positive attribute when
        you made the recommendation to - -
A:    Probably.
Pl. SOF, ¶169, 170-171; Def. Resp. to Pl. SOF, ¶ 169, 170-171.

to the hiring official regrading the applicants' suitability for the position, she did not make the hiring decision.  Def. SOF, ¶ 5, 7; Pl. SOF, ¶ 156; 159; Def. Resp. to Pl. SOF, ¶ 159.  Rather, it was Cintron who made the decision as to who would be hired for the CB position.  Id.  As to claims of gender discrimination, Plaintiff's theory of the case thus is premised on the notion that the alleged discriminatory intent of Crane may be *imputed* to Cintron (and the Defendant).  For this proposition, Plaintiff relies upon First Circuit's decision in Cariglia v. Hertz Equipment Rental Corporation, 363 F.3d 77 (1st Cir. 2004).  That case provides that "corporate liability can attach when neutral decisionmakers rely on information that is manipulated by another employee who harbors illegitimate animus."  Id. at 86-87.

The Plaintiff's reliance upon Cariglia is misplaced.  In Cariglia, a supervisor desirous of terminating an older worker because of his age gave a report to senior management omitting critical facts, thereby making it look as if that employee had misused company funds.  The First Circuit described the provision of "information that is *inaccurate, misleading, or incomplete* because of another employee's discriminatory animus" as the "the critical issue."  Id. at 83, 86-87 (emphasis added).  The First Circuit therefore vacated and remanded the district court's entry of judgment for the defendants, holding that "the district court did not address the critical legal issue of whether corporate liability can attach when neutral decisionmakers rely on information *that is manipulated by another employee who harbors illegitimate animus.*"  Id. at 86 (emphasis added).  See also, e.g., Cariglia v. Hertz Equipment Rental Corp., 343 F. Supp.2d 50, 54-55 (D. Mass. 2004) (upon remand, imputing discriminatory intent of a lower level supervisor to the ultimate decision makers because false and misleading information was provided to the decision makers); Delelegne v. Kinney System, Inc., 2004 WL 1281071, *4 (D. Mass. 2004) .

4

This case is far removed from the situation presented in <u>Cariglia</u>. Crane testified that she relayed to Cintron that she did not feel that Plaintiff had the requisite interpersonal skills for the position. Def. SOF, ¶8-10; Pl. SOF (Exhibit 39).[2] Even assuming that Crane viewed the gender of female applicants positively, there is no evidence that Crane relayed *falsified* information to Cintron concerning the Plaintiff or *concealed* information concerning the Plaintiff for the purpose of furthering that alleged discriminatory intent. As such, plaintiff's reliance upon <u>Cariglia</u> is misplaced. In this case, the Plaintiff seeks to impute the alleged discriminatory intent of Crane to Cintron based upon her communication of *accurate* information. <u>Compare</u> <u>Azimi v. Jordan's Meats, Inc.</u>, 456 F.3d 228, 248 n.14 (1st Cir. 2006) ("Nor does Azimi allege that this is a case like [<u>Cariglia</u>], in which a neutral decisionmaker is induced to act based on *inaccurate information* provided because of the provider's discriminatory animus.") (emphasis added).

Finally, summary judgment is in appropriate with respect to Plaintiff's claims as to the testimony of Crane because, under the summary judgment standard, this Court cannot find that Crane provided false information to Cintron based upon a discriminatory animus. That is, resolving all factual disputes in favor of the Defendant, this Court is required to assume the truth of Crane's testimony that she did not believe Plaintiff to have the requisite interpersonal skills of the CB position. For that reason as well, <u>Cariglia</u> would not apply.

**B.    Even Assuming That Alleged Discriminatory Animus Of Crane Could Be Properly Imputed to Cintron, There Is A Genuine Issue Of Material Fact As To Whether Gender Was A Motivating Factor**

Summary judgment also is inappropriate because there remains a genuine issue of fact to be

---

[2]In the administrative proceedings, Plaintiff's immediate supervisors testified similarly as to his interpersonal skills. Def. SOF, ¶ 13-15.

resolved as to whether gender was a motivating factor in Crane's recommendations *at all*. Plaintiff's argument wholly ignores conflicting testimony on the issue, testimony that Plaintiff's counsel, himself, elicited:

> Q: So you would agree with me that gender was a motivating factor in your decision to recommend Ms. Pellegrino?
> A: No.  I would not agree that it was a motivating factor.
> Q: Okay.  Well you said it was a positive attribute.
> A: That's different.
> Q: Well, what --
> A: Positive as opposed to motivating is different.

Def. Resp. to Pl. SOF, ¶ 18.  Resolving this factual dispute in favor of the Defendant, as is required under the summary judgment standard, summary judgment is unwarranted.

Further, the present facts are readily distinguishable from that before the court in the case upon which the Plaintiff primarily relies, Hannon v. Chater, 887 F. Supp. 1303 (N.D. Cal. 1995). In Hannon, the decision making official provided an affidavit relating that an applicant's gender was a motivating factor in the decision to select her.  Id. at 1308.  There were no inferences that needed to be drawn to determine that gender played a role in the hiring process.  Here, by contrast, Crane was not the decision making official.  As noted above, Plaintiff asks this Court to infer from Crane's view of two female candidate's gender as a positive attribute, either that she fabricated the information relayed about the Plaintiff, or, that she fabricated the information she relayed about the female applicants.  See Cariglia, supra.  No such inference could be drawn by a reasonable factfinder, and such an inference is certainly not one that Court could draw against the Defendant under the summary judgment standard.

Further, in Hannon, the testimony with respect to the consideration of gender as a factor was unequivocal.  In this case, by contrast, while Crane testified as to a commitment to diversity and

viewed the hiring of women and minorities (categories of individuals she perceived as under-represented) as "positive," that testimony is not the same as an express statement that gender was a motivating factor in the decision not to hire Plaintiff. Indeed, as noted above, Crane testified that while some applicants' gender was viewed "positively," gender *was not* a "motivating factor" in making recommendations for the CB position.[3]

In light of Crane's testimony that gender was not a "motivating factor," Plaintiff cannot meet his burden of establishing his entitlement to summary judgment. Drawing all inferences in favor of HUD, this Court is compelled to credit Crane's testimony that gender was <u>not</u> a "motivating factor." <u>Anderson</u>, 477 U.S. at 249; <u>Cox v. Hainey</u>, 391 F.3d 25, 29 (1st Cir.2004); <u>Nicolo v. Philip Morris, Inc.</u>, 201 F.3d 29, 33 (1st Cir.2000). .

### C.    An Interest in a Diverse Workforce Is Not Evidence of Discriminatory Intent

Finally, Plaintiff's reliance upon Crane's (or HUD's) interest in achieving a diverse workforce is similarly unavailing to establish discriminatory intent against White males. It is unremarkable that Crane and HUD, itself, consider a diverse workforce to be a laudable goal,[4] a goal that is widely shared in our society. <u>Compare</u>, <u>e.g.</u>, <u>Grutter v. Bollinger</u>, 539 U.S. 306 (2003); <u>Petit v. City of</u>

---

[3]Other testimony is consistent:

Q:    Did you regard Mr. Patoski's gender as a factor in deciding not to
      recommend him? A: No.

Q:    No. So it was a neutral – A:  Yes.

Q:    Okay. So let me – so – let me ask it this way. Was Mr. Patoski's gender a
      factor in your decision not to recommend him?    A :No. . . . .

Q:    Okay. Did the fact that Mr. Patoski is male enter into your recommendation?

A:    No.

Crane. Depo., p. 143-144, 155.

[4]As more fully detailed below, these cases, in as much as they address affirmative action, are inapposite. HUD does not seek to justify an affirmative action program, or to justify the use of a gender or race based criteria based upon this interest in diversity. <u>See</u> <u>infra</u> Section, IIID.

Chicago, 352 F.3d 1111, 1114 (7th Cir.2003). But viewing diversity as a laudable goal is not evidence that a decision maker harbors discriminatory intent against White males,[5] and courts have uniformly rejected like claims. [6]

Hence, because neither the testimony of Crane nor HUD's stated goal of achieving a diverse workforce demonstrate that gender was a factor in the decision not to hire this Plaintiff, summary judgment for the Plaintiff must be denied.

## II.    SUMMARY JUDGMENT IS UNWARRANTED AS TO PLAINTIFF'S CLAIMS CHALLENGING HUD'S AEP PROGRAM

Plaintiff also seeks summary judgement as to both Count VII of Plaintiff's First Amended Complaint, which contends that HUD's AEP constituted an unconstitutional affirmative action program, and, apparently as to the purportedly "factual" issue of whether HUD's AEP was lawful. See Plaintiff's Memorandum in Support of the Plaintiff's Motion for Summary Judgment ("Pl. Sum. J. Memo."), p. 6. In this regard, Plaintiff asks this Court to find that HUD's AEP constituted an "an

---

[5]Contrary to the Plaintiff's allegations, Crane believed that an interest in diversity applied to all races and genders, including white males. Def. SOF, ¶ 17.

[6]See, e.g., Plumb v. Potter, 212 Fed. Appx. 472 (6th Cir. 2007) (statement indicating that an increase in diversity was what a facility "needed" is not evidence of discrimination); Mlynczak v. Bodman, 442 F.3d 1050, 1058 (7th Cir. 2006) ("Although Taboas was a decisionmaker and the evidence showed that he was philosophically favorable to the hiring of minorities, that does not prove that any particular decision he made was for discriminatory reasons."); Pilditch v. Board of Education, City of Chicago, 3 F.3d 1113, 1118, 1119 (7th Cir. 1993) (same); Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir.1991) (same) (per curiam); Jones v. Bernanke, --- F. Supp.2d ----, 2007 WL 1662330, * 6 (D.D.C. 2007) (same); Reilly v. TXU Corp., 2006 WL 2586818, *13 (N.D. Tex. 2006) (same); Altizer v. City of Roanoke, Virginia, 2003 WL 1456514, *4 (W.D. Va. 2003) (same); Lutes v. Goldin, 62 F. Supp.2d 118, 131-132 (D.D.C.,1999) (same); Blanke v. Rochester Telephone Corp., 36 F. Supp.2d 589, 597 -598 (W.D.N.Y. 1999) same); Brown v. Time, Inc., 1997 WL 231143, *4 (S.D.N.Y. 1997) (same); Payne v. Norwest Corp., 911 F. Supp. 1299, 1305-06 (D .Mont.1995) (same), aff'd in part and rev'd on other grounds in part, 113 F.3d 1079 (9th Cir.1997).

unlawful discriminatory practice," and seeks to introduce evidence of HUD's AEP as evidence of discriminatory intent in two non-selection claims at issue because "HUD was engaged in discriminatory practices" at the time of those rejections.   Id.   Thus, Plaintiff appears to pursue summary judgment as to the validity of HUD's AEP as an independent claim for relief, see First Amended Complaint, Count VII, and, as a "factual" issue to be resolved by this Court with respect to the two non-selection claims.  See Pl. Memo., p. 6-10.

The two aspects of this claim must be addressed independently.  First, a general challenge to HUD's AEP, as expressed in Count VII of the First Amended Complaint, is unquestionably moot. Second, to the extent that the Plaintiff seeks a "factual" finding of this Court that HUD's AEP was invalid, so as to constitute evidence of discriminatory intent in the two non-selection claims at issue: (1) Plaintiff improperly seeks to avail himself of a method of proof available only in class action claims; and (2) Plaintiff has failed to establish that HUD's AEP is relevant to the non-selection claims.   To the extent that Plaintiff moves for summary judgement contending that HUD's AEP is an "Affirmative Action Plan" that does not meet constitutional scrutiny, that claim fails to state a basis for summary judgment relief because HUD does not seek to rely upon the AEP to justify the use of race and/or gender based hiring criteria with respect to those positions.

**A.      Background - HUD's AEP, EEOC MD 714 and EEOC MD 715**

In fulfilment of its obligations under Title VII of the Civil Rights Act of 1964, the Equal Employment Opportunity Commission ("EEOC") promulgated Management Directive 714 ("MD 714") in 1987, which required each federal department and agency to prepare and submit to the EEOC an "affirmative employment plan" to be reviewed and approved by the EEOC.  See Pl. SOF, ¶ 11-20.

9

In its AEP Reports to EEOC, HUD conducted statistical analysis of its workforce in caparison to the civilian labor pool and analyzed its hirings, promotions and training.  <u>See</u> Def. SOF, ¶ 70; Pl. SOF, ¶ 24, 31-143 (and Exhibits cited); Def. Resp. to Pl. SOF, ¶ 31-143.  With respect to hirings, where HUD's workforce reflected a "conspicuous absence" or "manifest imbalance" of a particular EEO group, MD 714 authorized HUD to generate a "numerical objective" that reflected the number of individuals from a particular group that would need to be hired to bring HUD's workforce into balance with the diversity of the civilian labor pool.  Def. SOF, ¶ 70; Pl. SOF, ¶ 25; Def. Resp. to Pl. SOF, ¶ 25.   These were not mandatory objectives and there was no timeline attached to such objectives.  Def. SOF, ¶ 70; Pl. SOF, ¶ 28; Def. Resp. to Pl. SOF, ¶ 28.  Pursuant to the directions of EEOC, no numerical objectives were established for White males under the AEP. Def. Resp. to Pl. SOF, ¶ 29.

In 2003, EEOC MD-714 was superceded by EEOC MD-715.  Def. SOF, ¶ 72-74.  <u>See</u>, <u>generally</u>, <u>Worth v. Jackson</u>, 451 F.3d 854, 856 (D.C. Cir. 2006) (finding, *inter alia*, that a White male's claims of unequal treatment under the AEP Program were rendered moot by the adoption of MD 715).  As relevant here, MD 715 eliminates any distinction between white males and other groups, and, while it continues to require that HUD compile and analyze data for the purpose of comparing its workforce diversity to that of the civilian labor force, it does not distinguish in any way between White males and other groups.  Def. SOF, ¶ 73.  It also eliminates the establishment of any "numerical objectives ."  <u>Id</u>.

### B.    Plaintiff's Claims That HUD's AEP Discriminated Against White Males Are Moot

Plaintiff challenges HUD's AEP because it allegedly deprived him of the opportunity to compete for job openings on an even playing field, inasmuch as White males did not receive any of

the benefits of the AEP initiatives.  See Pl. Sum .J. Memo. at 14-30.[7]  It is undisputed, however,

that EEOC MD-714 -- the directive under which HUD's AEP was established -- was superseded in

October 2003 by EEOC MD-715, and that  MD 715 has eliminated the alleged disparate treatment

of which this Plaintiff complains. Def. SOF, ¶ 72.  Under these circumstances, Plaintiff's claim is

moot.  See Spencer v. Kemna, 523 U.S. 1, 7 (1998) (case becomes moot when "it no longer

present[s] a case or controversy under Article III, § 2, of the Constitution."); Mangual v. Rotger

Sabat, 317 F.3d 45, 60 (1st Cir. 2003) .

Plaintiff contends that the issue is not moot because "'a defendant's voluntary cessation of

a challenged practice does not deprive a federal court of its power to determine the legality of the

practice.'" Pl. Sum .J. Memo. P. at 20 (quoting Northeastern Fla. Chap. Of Assoc. Gen. Contractors

v. Jacksonville, 508 U.S. 656, 661-662 (1993)).  That contention lacks merit.  As the D.C. Circuit

held in dismissing a like claim as moot:

> To be sure, the Supreme Court has occasionally addressed challenges to laws no
> longer in force, but it has done so only when the statute or ordinance in question has
> been replaced by a substantially similar enactment, or where the governing body
> expressed an intent to re-enact the allegedly defective law.  Neither condition exists
> here, particularly given that the advent of MD-715, with its apparent commitment to

---

[7]As an initial matter, it is questionable whether a general claim challenging HUD's AEP represents a viable claim against the government. In Brown v. General Services Administration, 425 U.S. 820 (1976), Supreme Court concluded that Title VII is the sole and exclusive means by which to bring challenges to alleged federal workplace discrimination.  Title VII affords this Plaintiff a remedy with respect to his two non-selection claims, and, in that such relief is exclusive, a question arises as to whether a general challenge to policy may be brought at all.  See Def. Sum. J. Memo., p. 3-4.  Assuming, nonetheless that a claim against HUD's AEP would exist under either the constitution, or some other federal statute, any such claim is moot. Compare Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995) (recognizing a cause of action for unequal treatment under the equal protection clause); with  Mlynczak v. Bodman, 442 F.3d 1050, 1057 (7th Cir. 2006) (upholding the principle that Title VII is the sole remedy for federal workplace discrimination, that court noted that "[n]othing in the Supreme Court's later opinion in Adarand, which does not even cite Brown and which concerned the equal protection rights of private federal contractors, changed that rule.").

> equal treatment for all, decreases the likelihood that any new AEP will resemble the now-defunct AEP. Because the Constitution nowhere licenses us to rule on the legality of an agency policy that no longer exists and that, according to the district court, will never again exist, Worth's challenge to HUD's AEP is moot.

Worth v. Jackson, 451 F.3d 854, 861 (D.C. Cir. 2006) (citations omitted).  See also, e.g., Princeton University v. Schmid, 455 U.S. 100, 103 (1982); Gulf of Maine Fisherman's Alliance v. Daley, 292 F.3d 84, 88 (1st Cir. 2002).[8]   The evidence in this matter demonstrates -- and Plaintiff does not contest -- that MD 715 has eliminated the disparities in treatment that Plaintiff contends existed under the AEP and MD 714.  Def. SOF, ¶ 73-74.[9]  To the extent that the Plaintiff seeks to pursue a general challenge HUD's AEP on behalf of "all white males," see First Amended Complaint Count VII, Pl. Memo., p. 14-20, that is independent of the two non-selection claims at issue, such claims are unquestionably moot and must be dismissed.

   C.    **The Validity of The AEP Is Not At Issue In This Matter Because the Plaintiff Has Not Established That the AEP Is Relevant To The Decisions Not To Hire Him For the CB Or PHRS Positions**

   Plaintiff's non-selection claims are unaffected by the repeal of HUD's AEP.  Plaintiff has not established, however, that HUD's AEP is relevant to those claims.  As such, the validity of HUD's AEP is not at issue in this matter at all.  To introduce a general policy as evidence of

---

   [8]In addition to the undisputed evidence that MD 714 has been repealed and will not be re-enacted, "governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." Coral Springs Street Systems, Inc. v. City of Sunrise, 371 F.3d 1320, 1328-1329 (11th Cir. 2004).

   [9]To the extent that the Plaintiff's Motion is construed as seeking declaratory relief on this issue, see Pl. Memo., p. 6, such a construction of the claim does not effect mootness analysis.  "A declaratory judgment may not be used to secure judicial determination of moot questions." Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1514 (9th Cir.1994) (citations omitted); Long v. Bureau of Alcohol, Tobacco and Firearms, 964 F. Supp. 494, 497 (D.D.C.1997) (same).

discriminatory intent -- even an alleged affirmative action policy -- Plaintiff must establish a causal

connection between the AEP and the two non-selections, *i.e.*, he must establish that the AEP *actually*

*played a role in the decision making processes at issue*. See Mlynczak, 442 F.3d at 1058 ("The

existence of DOE's affirmative action policy alone is not enough to permit a trier of fact to attribute

this type of illegal manipulation to the decisionmakers."); Cerrato v. San Francisco Community

College Dist., 26 F.3d 968, 976 (9th Cir.1994) ("Other circuits have held - and common sense tells

us - that the mere fact of an affirmative action plan's existence is not relevant to proving

discrimination unless the employer acted pursuant to the plan. We agree."); Axel v. Apfel, 171 F.

Supp.2d 522, 529 (D. Md. 2000) (same); Bostron v. Apfel, 104 F. Supp.2d 548, 555 -556 (D. Md.

2000) (same).

Plaintiff contends with respect to the individual non-selection claims that if the AEP had

been applied equally, HUD would have established numerical objectives for hiring of white males

for both the CB and PHRS positions. See Pl. Sum. J. Memo at 10. Because he denied the benefit

of such numerical objectives as a White male, Plaintiff contends that the AEP is both invalid and

evidence that he was discriminated against in those non-selections. Id.[10] Plaintiff further contends

that the fact that HUD Managers were evaluated for compliance with HUD's equal employment

opportunity policies demonstrates that HUD managers attempted to meet the AEP's "numerical

objectives" in order to secure favorable performance ratings. See Pl. SOF, ¶ 19,23,63-64, 78-79,95-

---

[10]In addition to the numerical hiring objectives, Plaintiff cites examples from HUD's AEP
Reports reflecting that HUD established "objectives" to increase promotions, trainings and
participation in special employment programs for minorities and women. See Pl. SOF, ¶ 31-143.
Such claims, even if true, are not relevant to the *hiring* decision at issue. The Plaintiff does not
claim that HUD failed to promote him within his present position, failed to provide him training, or
failed to allow him to participate in special employment programs. See also, Def. Sum. J. Memo.,
p. 4-11. Such claims, pursued on behalf of "all white males" are moot. See Section IIIA, supra.

96, 110-111, 198.

There is no evidence, however, linking the "numerical objectives" of HUD's AEP to the two non-selections actually at issue in this case. See Def. SOF, ¶ 17, 48-53. The undisputed evidence demonstrates that the decision makers in both the CB and PHRS hiring processes were wholly unaware of any "numerical objectives." Neither Crane nor Cintron, the putative hiring official(s) for the 1998 CB position, nor Cheryl Teninga ("Teninga"),[11] the hiring official for the 2000 PHRS position, were aware of any numerical objective or "goal" established by the AEP, or that AEP stood for anything more than a commitment to a diverse workforce.[12] See Def. SOF, ¶ 17, 48-53.

To the extent that Plaintiff claims individual prejudice in the CB and PHRS selection process from the absence of "numerical objectives " for white males, no rational factfinder could conclude that the AEP, and its "numerical objectives" played any role whatsoever. Indeed, if, as the undisputed evidence demonstrates, the decision makers in the CB and PHRS hiring processes were wholly unaware of *any* "numerical objectives" of the AEP, there can be no prejudice to Plaintiff from the absence of such numerical objectives for White males.

> **D.    Plaintiff Improperly Seeks to Prove His Individual Discrimination Claim Through the Pattern and Practice Method of Proof Applicable to Class Action Claims**

In Count VII, for which he now seeks Summary Judgment, Plaintiff alleges that HUD's AEP

---

[11]Since Plaintiff did not make the best qualified list for the PHRS position, there is substantial doubt as to whether Teninga's motives are appropriately at issue in this matter at all. She never reviewed or decided any issue in the 2000 PHRS hiring process with respect to this Plaintiff. See Def. Resp. to Pl. SOF, ¶ 195. The PHRS process, and Plaintiff's failure to state an actionable claim with respect to that non selection, are more fully described in the Defendant's Memorandum in Support of Defendant's Motion For Summary judgment. Id., p. 12-18.

[12]As previously noted, a commitment to a diverse workforce does not equate to, or even constitute evidence of, an intent to discriminate.

constituted an impermissible "pattern or practice." In a "pattern or practice" claim, the focus, as to liability, is upon question of whether the class can establish a pattern of discriminatory decision-making, *i.e.*, the company's standard operating procedure, rather than upon individual employment decisions. See generally, Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 360 n.46 (1977) (recognizing class based relief for claims alleging discriminatory "patterns and practices."). The class must prove the existence of a pattern or practice of discrimination, usually by statistical evidence and policies of employer. If the employer fails to rebut the prima facie case, the resulting finding of a discriminatory pattern or practice gives rise to an inference that all class members subject to the policy were its victims and are entitled to appropriate remedies. Id. at 361-362. The class may seek individual relief in the remedial stage of the proceedings, during which the class has the benefit of the presumption that "any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." Id. at 362.

There is a "manifest" and "crucial" difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination. Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 876 (1984). To the extent that the Plaintiff seeks to pursue individual non-selection claims based upon HUD's AEP as an unlawful "pattern or practice," such claims must be dismissed. As the Supreme Court has held:

> Title VII does not recognize a right of individuals to challenge patterns and practices. Title VII prohibits discriminatory employment *practices,* not an abstract policy of discrimination. The mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer.

General Telephone Co. v. Falcon, 457 U.S. 147, 159 n.15 (1982) (emphasis in original).

Indeed, independent pattern and practice claims have only been recognized by the Supreme Court in the context of class action claims or claims brought by the Equal Employment Opportunity Commission.[13] As noted by the Sixth Circuit in rejecting attempts by an individual to pursue such claims:

> [A] pattern-or-practice claim is focused on establishing a policy of discrimination; because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case.

Bacon v. Honda of America Mfg., Inc., 370 F.3d 565, 575 (6th Cir. 2004) (quotation omitted). Accordingly, the overwhelming majority of courts have rejected attempts by individuals to pursue individual "pattern and practice" claims. See Def. Sum. J. Memo, p. 4-5 (and cases cited).

This Court should follow the reasoning of the uniform body of authority, deny summary judgment as to this issue, and dismiss Plaintiff's pattern and practice claims.

### D. Summary Judgment Is Unwarranted As to the Issue Of Whether HUD's AEP Is A Constitutionally Permissible Affirmative Action Program Because HUD Does Not Seek To Rely Upon The AEP As An Affirmative Defense

To the extent that Plaintiff seeks summary judgment as to the claim that HUD's AEP was an impermissible Affirmative Action Plan, this Court need not undertake such analysis because HUD does not seek to justify its alleged use of race and/or gender in the non-selections at issue based upon its AEP. Instead, HUD has contended that the relative qualifications of the applicants dictated the result.[14] There is, as a consequence, a significant logical disconnect between the reality

---

[13] See, e.g., Arbaugh v. Y&H Corp., 126 S. Ct. 1235, 1239 (2006) ("a separate jurisdictional provision, 42 U.S.C. § 2000e-6(b), authorizing suits by the Government to enjoin "pattern or practice" discrimination.")

[14] Indeed, with respect to the 2000 PHRS position, Plaintiff appears to concede the superior qualifications of the selected individual. See Def. SOF, ¶ 26, 41-43.

16

of the dispute before this Court and the Plaintiff's claims with respect to HUD's AEP.[15]

Despite the fact that HUD does not seek to justify the use of race or gender based considerations as to the non selections at issue, Plaintiff nonetheless argues that the AEP is an unconstitutional "Affirmative Action Plan." As addressed in prior caselaw, however, the issue of whether an Affirmative Action Plan is constitutionally permissible arises only where an employer seeks to justify the use of race and/or gender based criteria in reliance upon the plan:

> Once a plaintiff establishes a prima facie case that race or sex has been taken into account in an employer's employment decision, the burden shifts to the employer to articulate a nondiscriminatory rationale for its decision. The existence of an affirmative action plan provides such a rationale. *If such a plan is articulated as the basis for the employer's decision*, the burden shifts to the plaintiff to prove that the employer's justification is pretextual and the plan is invalid.

Johnson v. Transportation Agency, 480 U.S. 616, 626 (1987) (emphasis added). Such analysis is clearly inapposite in this case. HUD does not seek to defend the alleged use of race or gender based criteria in the CB or PHRS hiring process by reference to the AEP.

HUD's AEP was a statistical tool, not an "affirmative action plan" directing HUD's employees to consider race and/or gender in making hiring decisions, nor did it establish hiring quotas, or direct HUD Managers to consider race and/or gender in making hiring decisions. As directed by the EEOC, HUD compiled data regarding its workforce and compared such data to the civilian labor pool. There is nothing insidious in such data collection. "Courts have not found requirements to collect data about the racial and gender make-up of a workforce to violate the

---

[15]The logical disconnect is illustrated by the Plaintiff's Complaint. Plaintiff contends, for example, that "HUD's AEP was based on HUD's claim that women and various racial and/or ethnic groups were under represented in its workforce." First Amended Complaint, ¶ 48. HUD's AEP was "based upon" the directive of the EEOC to compile such data under EEOC MD 714. HUD did not, as appears to be the claim of the Plaintiff, voluntarily adopt the AEP as an "affirmative action plan" to address past discrimination because it perceived various groups to be under represented.

Constitution."  Sussman v. Tanoue, 39 F. Supp.2d 13, 25 (D.D.C.,1999), rev'd on other grounds,

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  Indeed, as noted by the First Circuit:

> The short answer is . . . that possible and purely hypothetical misuse of data does not require the banning of reasonable procedures to acquire such data.  Statistical information as such is a rather neutral entity which only becomes meaningful when it is interpreted.

United States v. New Hampshire, 539 F.2d 277, 280 (1st Cir.1976).

As applied in this case, it is not HUD's AEP that is at issue, inasmuch as the AEP simply

requires HUD to collect data, conduct statistical analysis, and allows HUD to establish "numerical

objectives."  Instead, as to the non-selection claims at issue, Plaintiff takes issue with the failure of

HUD to establish any such numerical objectives  for "White males."  As noted above, however, the

undisputed evidence demonstrates that the "numerical objectives" did not play a role in the decisions

not to hire this Plaintiff for either the PHRS or CB position, and any general challenge to HUD's

AEP independent of the non-selection claims is moot.

Because HUD does not seek to justify the use of race or gender based hiring criteria, the

Plaintiff's claims that the AEP cannot meet constitutional scrutiny so as to allow HUD to rely upon

the AEP as an affirmative defense are immaterial.[16]

**E.    Even Assuming That HUD's AEP Remains Relevant To The Plaintiff's Non Selection Claims, Genuine Issues of Fact Preclude Summary Judgment That HUD's AEP Was Unlawful**

Assuming, nonetheless, that HUD's AEP is somehow relevant to the two non-selection

---

[16]The remaining cases cited by the Plaintiff in support of the Motion for Summary Judgment do not suggest a different analysis.  See Grutter v. Bollinger, 539 U.S. 306 (2003); United States v. Virginia, 518 U.S. 515 (1996); Wygant v. Jackson Board of Educ., 476 U.S. 267 (1986); Cotter v. City of Boston, 323 F.3d 160 (1st Cir. 2003); Mackin v. City of Boston, 969 F.2d 1273 (1st Cir. 1992).  In each instance, the Defendants sought to justify the use of race based decision making criteria.

claims before this Court, to the extent that the Plaintiff claims that HUD's AEP, as applied, constituted an impermissible "affirmative action program," genuine issues of material fact exist which preclude summary judgment.  As an initial matter, all of decision makers involved in the PHRS and CB hiring process have testified that they were unaware of any "numerical objectives" of the AEP.  Drawing, as it must, all inferences in favor fo Defendant, this Court must credit that testimony.  Assuming that such testimony is true, the Plaintiff cannot establish that the AEP is relevant to this action.

Moreover, Plaintiff contends that the otherwise unenforceable "numerical objectives, became mandatory because HUD managers were evaluated, *inter alia*, based upon their efforts to foster diversity.[17]  Because individuals who received high performance evaluations rating could expect raises and bonuses, the Plaintiff posits that HUD provided financial incentives for its managers to meet the "numerical objectives."  Such argument assumes that awards, raises and bonuses were issued at HUD solely for meeting AEP numerical objectives , rather than for overall performance, or, in fact, for exemplary performance in complying with *other* equal employment opportunity goals.[18]  Plaintiff's contention that HUD's AEP, as applied, constituted an impermissible affirmative action program asks this court to draw several inferences *in favor of* the moving party, rather than

---

[17]For instance, EEOC MD 714 requires that HUD Managers be evaluated "based upon meeting equal employment opportunity objectives."  It does so however, in context of all "equal employment opportunity objectives" including, the requirement that there be "equal employment opportunity for all employees and applicants for employment, regardless of their race, religion, color, sex, national origin, age or handicap. . ."  See Pl. SOF, Exhibit 7, ¶ 14(a).

[18]The rating criteria upon which Plaintiff relies also included, *inter alia*, "treating all employees fairly... encouraging cooperation and communication in the workplace... eradicating a hostile working environment, eliminating conduct that is rude, inappropriate, unprofessional or offensive... attending special emphasis events, working to resolve potential EEO complaints and accommodating employee's religious observances and disabilities."  Pl. SOF, Exhibit 37.

in favor of HUD.  Deciding the issue of whether such claims are actually true is the role of a

factfinder, not this Court.   See Cox v. Hainey, 391 F.3d 25, 29 (1st Cir.2004).[19]

Further, the fact that HUD Managers were encouraged to promote diversity or comply with

equal employment opportunity (EEO) directives, (which, ironically, would include Title VII's

directive not to discriminate) is simply not evidence that HUD's AEP "numerical objectives"

constituted hiring quotas or that HUD's AEP is discriminatory.   See, e.g., Mlynczak, 442 F.3d at

1058-59 ("To the extent that managers like Taboas were rewarded for improving workplace

diversity, plaintiffs have introduced nothing refuting the government's evidence that a wide variety

of measures were covered . . .").

Drawing all inferences in favor of the Defendant, a rational factfinder would not be

compelled to conclude that HUD's evaluation criteria, even a criteria that evaluated efforts to foster

diversity, effectively rendered the "numerical objectives" of HUD's AEP to be mandatory quotas.

## **CONCLUSION**

For the foregoing reasons, and for the reasons stated in the Defendant's Motion for Summary

Judgment, the Defendant requests that the Plaintiff's Motion for Summary Judgment be denied.

Respectfully Submitted,
MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Mark J. Grady
Mark J. Grady, Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way– Suite 9200
Boston, MA 02210

---

[19] Indeed, to the extent that the Plaintiff would contend that monetary rewards may have motivated Crane (an alleged decisionmaker in  CB hiring process) to discriminate against white males, Plaintiff simply ignores the fact that Crane was ineligible for any such award, bonus or raise. See Def. SOF, Exhibit 14, p. 60.

<u>Certificate of Service</u>
The foregoing memorandum will be served electronically.

/s/ Mark J. Grady
Mark J. Grady
Assistant United States Attorney