UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD S. PATOSKI,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ALPHONSO JACKSON, SECRETARY,<br>DEPARTMENT OF HOUSING AND<br>URBAN DEVELOPMENT,<br><br>　　　　　Defendant. | C.A. No. 05-11086 RCL |

**PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANT FROM ASSERTING THAT ITS AFFIRMATIVE EMPLOYMENT PROGRAM WAS JUSTIFIED BY EEOC MANAGEMENT DIRECTIVE 714**

Plaintiff hereby submits his motion in limine to preclude Defendant from asserting before the jury in this case that its Affirmative Employment Program (AEP) was justified by, required by, or permitted by EEOC Management Directive 714 (MD-714, or any other rule or law. A fuller description of the AEP is contained in Plaintiff's Motion in Limine Relating to HUD's Affirmative Employment Program, and it is suggested that that motion be reviewed before this one.

In its pleadings, HUD has exhibited a practice of claiming that its AEP is justified and or supported by MD-714. HUD's claim is false, as the AEP violated MD-714, and HUD's AEP contained gender based affirmative action that went well beyond what was required, suggested or permitted by MD-714. Plaintiff requests that the Court preclude HUD from indicating to the jury that its AEP, as implemented, was authorized or permitted by any law, rule or regulation.

I.   FACTUAL BACKGROUND

Plaintiff adopts by reference to facts as stated in his Motion in Limine Relating to HUD's Affirmative Employment Program. Citations to the SOF 1-203 refer to the Plaintiff's Rule 56.1 Statement of Facts filed in Support of Plaintiff's Motion for Summary Judgment. Citations to "Resp. to HUD Fact" and SOF 204, et seq. refer to facts contained in Plaintiff's Rule 56.1 Statement filed in opposition to HUD's motion for summary judgment. Exhibits cited herein refer to the Exhibits attached to the Plaintiff's Rule 56.1 submissions.

II.   MD-714 DOES NOT SUPPORT, PERMIT OR JUSTIFY THE AEP AS IMPLEMENTED BY HUD

The AEP, as implemented by HUD, violated MD-714 in the following ways.

i.   <u>HUD voluntarily adopted numerical goals</u>:   MD-714 does not **require** that agencies adopt numerical goals to establish parity in the PATCOB categories, but only stated that agencies "may" establish goals. SOF 15. Thus, HUD generated numerical goals because of its own policy; and not because such goals were compelled by MD-714. <u>Resp. to HUD Fact 70A(i).</u>

ii.   <u>HUD adopted goals without undertaking sufficient investigation or scrutiny</u>:

MD-714 states that an agency may adopt numerical goals where it has engaged in an "appropriate workforce analysis," conducted in light of a review of <u>Johnson v. Transportation Agency, Santa Clara County,</u> 107 S. Ct. 1442 (1987). SOF 18. The <u>Johnson</u> case permitted a voluntary affirmative action program to remedy a "conspicuous imbalance in a traditionally segregated job." <u>Johnson v. Transportation Agency</u>, 107 S. Ct. 1442, 1451-1452 (1987)). HUD implemented goals and objectives without complying with this standard. First, HUD failed to identify which, if any of its jobs were

2

"traditionally segregated." SOF 149. Second, HUD failed to tailor its goals and objectives to positions that were "traditionally segregated." SOF 21-150. Third, instead of eliminating only "conspicuous imbalance," HUD issued numerical goals and objectives to eliminate any imbalance, no matter how slight. SOF 27; <u>Resp. to HUD Fact 70A(ii)</u>.

iii. <u>HUD used goals to eliminate insubstantial underrepresentation</u>. MD-714 provides that agencies may establish numerical goals to correct imbalance only when the agency's workforce representation of an EEO group is "substantially below its representation in the appropriate CLF." SOF 16. However, HUD generated numerical goals purportedly to correct underrepresentation, no matter how insignificant the underrepresentation was, and even if the underrepresentation was not "substantial." SOF 27; <u>Resp. to HUD Fact 70A(iii)</u>.

iv. <u>HUD failed to treat White males equally</u>. On its face, the MD-714 entitles White males to benefit from the same sort of goals and objectives as other EEO groups, to remedy underrepresentation, and to eliminate barriers to equal employment. SOF 13. However, under HUD's AEP, White males could never benefit from goals and objectives, no matter how great their underrepresentation. SOF 29. As such, gains of other EEO groups were likely to be made at the expense of White males, who were already underrepresented in every major job occupation at HUD. <u>Resp. to HUD Fact 70A(iv)</u>.[1]

v. <u>HUD used AEP numerical goals and objectives to maintain diversity</u>: MD-714 clearly states that the purpose of numerical goals is to attain, rather than maintain, a

---

[1] HUD may assert that it withheld the benefit of the AEP to White males based on a letter it received from the EEOC. That letter is not a part of MD-714, and does not compel HUD to act in the manner that it did.

balanced workforce. MD-714, ¶ 13(d)(6), SOF 18. However, HUD would use AEP goals to maintain diversity, after it had already been achieved. For example, in the FY 1998 AEP Update Report, there was no goal to add Asian American/Pacific Islander females in the Technical category, because parity had been achieved in that area. <u>FY 1998 AEP Update Report</u>, at 4002, DII-22, <u>Exhibit 16</u>. However, in the FY 1999 Report, there was a goal to add three Asian American/Pacific Islander females in the Technical category. <u>FY 1999 AEP Update Report</u>, at 4113, DII-24, <u>Exhibit 17</u>. Thus, even after parity was achieved in that category, HUD continued to use affirmative action to maintain diversity, in violation of MD-714, and in violation of <u>Johnson</u>, 107 S. Ct. at 1455 (affirmative action is permitted to attain diversity, and not to maintain it). <u>Resp. to HUD Fact 70A(v)</u>.

vi.   <u>HUD's AEP Designed to Exceed Parity of Women and Minorities in PATCOB categories</u>:   MD-714 made it clear that numerical goals and objective were meant to attain parity. SOF 18; MD-714, ¶ 13(d)(6), <u>Exhibit 7</u>. However, HUD consistently established numerical goals for adding women and minorities into PATCOB categories, even in categories where those EEO groups already exceeded parity. SOF 54, 71, 86, 103, 118, 130. In one particularly egregious instance, HUD established a goal of adding 50 Black female Administrative workers, even though Black females in the Administrative category at HUD were already over four times their representation in the Civilian Labor Force in that category. SOF 123, 124. The EEOC objected to this goal. SOF 124; <u>Resp. to HUD Fact 70A(vi)</u>.

vii.   <u>HUD Established Objectives For Increasing The Promotion Rates Of Women And Minorities, But Not For White Males</u>: MD-714 makes no provision for establishing

4

objectives for increasing the promotion rates of EEO groups. However, when the promotion rate for an EEO group was lower than its percentage of the workforce, HUD would announce an objective to increase that EEO group's promotion rate (except for White males). SOF 48, 56, 72, 88, 105. Such a broad objective would encourage promotion of women and minorities into positions where parity had already been exceeded. See id. Often, HUD would establish an objective to increase an EEO group's promotion rate, even if that group had already been promoted in numbers commensurate with its workforce composition. SOF 58, 74, 90, 106. This affirmative action was never sanctioned by MD-714. Resp. to HUD Fact 70A(vii).

viii.  HUD Established Objectives For Increasing The Training Of Women And Minorities, But Not For White Males: MD-714 makes no provision for establishing objectives for increasing the training rates of EEO groups. However, when an EEO group at HUD was enrolled in Special Employment Programs in numbers less than its percentage in the overall HUD workforce, HUD would establish an objective to increase that EEO group's participation. SOF 59, 75, 91, 107. Sometimes, HUD established an objective for the increased participation of an EEO group, even though that group was already enrolled in SEPs at rates exceeding their workforce representation. SOF 61, 77, 92, 109. Such objectives would have the effect of increasing the representation of women and minorities, even in areas in which disparity had disappeared, at the expense of the representation of White males. This affirmative action was never sanctioned by MD-714. Resp. to HUD Fact 70A(viii).

**WHEREFORE,** Plaintiff requests that the Defendant be precluded from arguing or implying to the jury that its AEP, as it was implemented by HUD, was permitted, sanctioned or justified by MD-714 or any other rule, guideline, regulation or law.

> Respectfully submitted,
>
> The Plaintiff,
> By her Attorneys
>
> _____/s/ Robert S. Mantell_____
> Kevin G. Powers
> BBO# 405020
> Robert S. Mantell
> BBO# 559715
> Rodgers, Powers & Schwartz LLP
> 18 Tremont Street
> Suite 500
> Boston, MA  02108
> (617) 742-7010

## RULE 7.1 CERTIFICATION

I certify that on January 17, 2008, attorneys for the parties, Robert S. Mantell and Mark Grady, Esq., met in a good faith effort to resolve the issues raised in this motion.

> _____/s/ Robert S. Mantell_____

Patoski motion in limine md 714