UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                  )
RICHARD S. PATOSKI,               )
                                  )
            Plaintiff,            )
                                  )
v.                                )        C.A. No. 05-11086 RCL
                                  )
ALPHONSO JACKSON, SECRETARY,      )
DEPARTMENT OF HOUSING AND         )
URBAN DEVELOPMENT,                )
                                  )
            Defendant.            )
_____)
```

## JOINT PRETRIAL MEMORANDUM

**The parties** hereby submit their joint pretrial memorandum.

A.      Names and addresses of trial counsel

Kevin G. Powers
Robert S. Mantell
Rodgers, Powers & Schwartz LLP
18 Tremont St., Suite 500
Boston, MA  02108
(617) 742-7010

For the Defendant
Mark J. Grady
Rayford Farquhar
United States Attorneys Office
One Courthouse Way
Boston, MA 02210
(617) 748-3100

B.      Summary of Parties Positions

        1.      Concise Statement of the Plaintiff's positions

In 1997, Mr. Patoski, a male, who was approximately 49 years old, applied for a
Community Builder (CB) position at HUD in the Boston Field Office.  While he was well
qualified for the position, he was rejected.  Instead, HUD offered a CB position to three

women, one of whom was approximately twenty years younger than Mr. Patoski. Mr.
Patoski asserts four distinct claims for recovery. First, he asserts that gender was a
motivating factor in the decision to reject him (Count IV). Second, he asserts that but for
his gender, he would have been hired into the position (Count II). Third, he asserts that
had he been younger, he would have been hired into the position (Count I). Fourth, he
asserts that he was discriminated against on account of a combination of gender and age
discrimination (Count III). Mr. Patoski will introduce evidence that gender was
considered at every step of the selection process, agency-wide for all job actions, agency-
wide for screening of the CB applicants and the same for the CB applicants for Boston
positions, and for the specific decision-maker(s) involved in making the final decision on
who to hire for the CB positions in Boston. Age likewise played a role in various stages
of the selection process.

Mr. Patoski seeks damages in an amount sufficient to compensate him for lost back pay
and front pay, lost benefits, including losses to any retirement benefit, medical bills as
identified in Plaintiff's Answers to Interrogatories, compensation for reputational loss, his
emotional distress and physical pain and discomfort caused by the discrimination,
punitive damages, pre- and post-judgment interest, and attorneys fees.

Plaintiff also seeks injunctive, equitable and declaratory relief, including promotion,
training, cessation of discriminatory conduct, and other relief.

      2.     Concise Statement of the Defendant's Position

      Briefly, the 1997 Community Builder ("CB") position was a newly created
position within HUD. There were four such positions created in the Boston office. The
Plaintiff, along with ten other candidates, made the "best qualified list" from which the
final selections for the Boston positions were made. The selecting official, Jose Citron,
was provided the list of 11 possible candidates for the position, of whom, he could select
any four. In making his decision, Citron contacted Mary Lou Crane, the Secretary's
Representative for New England, who would supervise the newly hired community
builders, regarding the candidates and their suitability for the position. Crane did not
recommend Patoski, reporting that she felt that Patoski lacked the necessary interpersonal
skills for the CB position. As result, Pastoski was ranked last of the eleven best qualified
candidates by Citron.
      Ultimately, three men and three women were selected for the position (one
woman and one man declined to accept the position).
      The defendant further contests the nature extent and causation as to Plaintiff's
injuries.

C.     Waived claims or defenses

None.

D.     Stipulated Facts

1.      Plaintiff Richard S. Patoski is an individual with a place of residence at 28
        Brookhouse Drive, Marblehead, MA 01945.

2.      Defendant Alphonso Jackson is the Secretary of the United States Department of
        Housing and Urban Development and is sued in his official capacity only
        [hereinafter this defendant is referred to as "HUD"].

3.      Plaintiff is a male with a date of birth of January 2, 1949.

4.      Plaintiff began to work for HUD in 1972.

5.      Since 1980, Plaintiff worked as a Community Planning and Development
        ("CPD") Representative in the CPD Division in HUD's Boston Field Office.

6.      In or about October 1997, Plaintiff applied for one of four Community
        Builder/Community Resource Representative positions in HUD's Boston office at
        the GS-14 level.

7.      It was determined that Plaintiff met the minimum qualifications for the position at
        the GS-14 level.

8.      With regard to Community Builder position, Patoski made the Best Qualified List
        for the GS-14 roster for the Boston location, because he was one of the candidates
        who had been given the top score of 16 by the Rating Panel.

9.      Jose Cintron, then Acting Deputy Assistant Secretary for Public and Indian
        Housing in Washington, D.C., (then 44 years old), was the Selecting Officer for
        the Boston CB vacancies.

10.     For the Boston Office, the Secretary's Representative was Mary Lou Crane.

11.     Mr. Cintron communicated with Ms. Crane regarding the applicants for the
        Boston Community Builder position.

12.     Ms. Crane told Mr. Cintron that she felt that Mr. Patoski lacked the necessary
        interpersonal skills for the position.

13.     On or about April 3, 1998, Plaintiff received a letter dated March 20, 1998, in
        which he was informed that he was not selected for one of the Community
        Builder/Community Resource Representative positions.

14.     Ms. Teninga (female) and Mr. Reeves (male) were selected, but they declined the
        offers.

15.    The persons offered the four community builder positions who accepted were Ms. Pellegrino (female, age 28), Ms. Griswold (female, age 42), Mr. Polito (male, age 40), and Mr. Bernard (male, age 55).

16.    To the extent that the three lists of CB applicants is admitted, EL and ELN means "eligible" and any code beginning with I means "ineligible."

17.    To the extent that the AEP reports are admitted, the Community Builder position falls within the "Administrative" category of jobs.

E.    Contested Issues of Fact

Defendant contests that Plaintiff was the victim of discrimination, and contests that Plaintiff suffered damages. As regards the particulars of this matter, the Plaintiff challenges the explanation provided by HUD for its decision not to select Mr. Patoski was the true and/or complete reason for his rejection.

F.    Questions Raised by Pending Motions

1.    Issues Raised By Plaintiff

Plaintiff has filed two motions in limine concerning HUD's AEP (an affirmative action policy that benefited White women at HUD, but not White males such as Mr. Patoski). In that motion, Plaintiff argues that the AEP violated Title VII, the Fifth Amendment of the Constitution, or a combination of both. Consequently, Mr. Patoski requests: [1] that the jury be instructed that HUD's AEP illegally disfavored males such as Plaintiff; [2] that HUD be precluded from arguing that the AEP, as HUD implemented it, was compelled or authorized by any law or EEOC policy or regulation; and [3] that HUD's stated desire for a workplace composition reflective of the nation's diversity constitutes an unlawful goal.

Plaintiff will also be filing a motion requesting that judicial notice be taken on Table 101 of the 2008 Statistical Abstract of the United States.

2.    Issues Raised by Defendant

First, whether the Plaintiff is entitled to a jury trial as to the claim of mixed age and gender discrimination and whether there has been a waiver of sovereign immunity so as to allow a "mixed" claim to proceed at all. Briefly, the United States is entitled to immunity from suit without its consent. Muirhead v. Mecham, 427 F.3d 14, 17 (1st Cir. 2005). To the extent that the plaintiff seeks to pursue a claim of "mixed" age and gender discrimination, neither Title VII nor the ADEA expressly recognizes such a claim and, as a consequence, there has been no waiver of sovereign immunity. Further, to the extent such a claim may exist, Plaintiff can point to no statute expressly granting a right to jury trial as to such a claim. "[T]he plaintiff in an action against the United States has a right to trial by jury only where Congress has affirmatively and unambiguously granted that

right by statute. <u>Lehman v. Nakshian</u>, 453 U.S. 156, 168 (1981). The Supreme Court has concluded that the ADEA contains no right to a jury trial and inasmuch as there is not statute expressly affording a right to sue for combined age and gender discrimination, there has certainly been no express and unambiguous statement by Congress granting a jury trial as to such a claim.

Second, the Defendant would challenge the admissibility and relevance of evidence that the Plaintiff proposes to submit regarding *White* males in a claim involving solely gender based discrimination. The Plaintiff was expressly denied leave to amend the Complaint to add claims of race based discrimination. <u>See</u> Docket # 29. As will be more fully set out in the Defendant's Motions in Limine addressing this issue, allegations of race based discrimination are not before this court and hence purported evidence of claims of race based discrimination, *i.e.*, statistical evidence regarding the alleged disparate treatment of White males, rather than males generally) is irrelevant. Further, even if minimally relevant (which it is not), evidence of alleged race based discrimination should be excluded as unduly prejudicial.

Third, as will be more fully set out in the Defendant's Motion in Limine on this issue, the Defendant challenges the qualifications of the Plaintiff's expert and the reliability of his analysis under the <u>Daubert</u> standard.

Fourth, as will be more fully set out in the Defendant's Motion in Limine on this issue, the Defendant would seek to exclude testimony of other employees regarding alleged other acts of discrimination by HUD.

Fifth, as set out in the Defendant's Motion in Limine, the Defendant has requested exclusion of testimony from psychiatric providers on the ground that the Plaintiff may not both assert the privilege as to such materials in discovery, yet, seek to introduce testimony of treating psychologists/psychiatrists at trial.

Sixth, the plaintiff seeks punitive damages which are unavailable against the United States. Punitive damages are not available against "a government, government agency or political subdivision" under Title VII. 42 U.S.C. § 1981a(b)(1). <u>See</u>, <u>e.g.</u>, <u>Robinson v. Runyon</u>, 149 F.3d 507, 517 (6th Cir. 1998) ("Title VII, explicitly exempts government agencies from punitive damages"); <u>Baker v. Runyon</u>, 114 F.3d 668, 669-670 (7th Cir.1997) ("Congress, in enacting section 1981a, exempted all government agencies from the Act's punitive damage provision, with no articulated exceptions.").

Seventh, as set out in the Defendant's Motion in limine, testimony of witnesses purporting to contradict HUD's stated justification are relevant only where the Plaintiff can establish that such contrary information was communicated to the decisionmakers prior to the decision not to select Mr. Patoski. "In assessing pretext, a court's focus must be on the perception of the decision maker, that is, whether the employer believed its stated reason to be credible." <u>Azimi v. Jordan's Meats, Inc</u>., 456 F.3d 228, 246 (1st Cir. 2006)(citations omitted).

Eighth, as noted in the Defendant's request for jury instructions, the Plaintiff's damages, other than for emotional distress are to be decided by this Court, rather than the jury.  In 1991, Congress broadened the waiver of sovereign immunity under Title VII to provide for an award of compensatory damages against the government where there has been a finding of discrimination or retaliation in employment. 42 U.S.C. § 1981a. Congress also provided that in cases where plaintiffs, including federal employees, seek compensatory damages, any party may request a jury trial. 42 U.S.C. § 1981a(c)(1).  In so doing, Congress left intact the equitable relief available under Title VII.  Section 102(b)(2) of the Civil Rights Act of 1991 excludes from compensatory damages to be awarded by a jury "backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964."  42 U.S.C. § 1981a(b)(2); see also Allison v. Citgo Petroleum Corp., 151 F.3d 402, 423 n.19 (5th Cir. 1998); McCue v. State of Kansas, 165 F.3d 784, 792 (10th Cir. 1999); Pollard v. E.I. duPont de Nemours & Co., 532 U.S. 843, 851 (2001); Landgraf v. USI Film Products, 511 U.S. 244, 253 (1994)("the new compensatory damages provision of the 1991 Act is "in addition to," and does not replace or duplicate, the backpay remedy allowed under prior law"); 42 U.S.C. § 2000e-5(g)(incorporated into federal sector programs by 42 U.S.C. § 2000e-16(d)); 42 U.S.C. § 1981a.  The traditional maxim that juries have authority only to award damages, and not equitable relief, applies in full force under Title VII. Therefore, the court, not the jury, continues to award equitable relief.


G.      Issues of Law

See Section F, and the Motions in Limine that it references.

H.      Requested Amendments to Pleadings

None.

I.      Additional Matters

None.

J.      Probable Length of Trial

Eight days.

K.      List of Names and Addresses of Witnesses

        Plaintiff's Witnesses

1.      Thelma R. Cockrell: 4829 Illinois Ave NW, Washington, D.C. 20011, ex-HUD
        employee. Ms. Cockrell is expected to testify regarding her personal knowledge

of the Agency's AEP, such as whether there is documentation of previous discrimination by HUD against females and minorities; whether females and minorities are under-represented at HUD; and, other matters relevant to the issues in these cases. Ms. Cockrell is designated as a fact witness.

2.    Linda Bradford Washington, HUD, 451 Seventh Street, Washington, D.C. 20410, fact witness.

3.    Keith T. Gaiter, HUD, 451 7th Street, SW, Washington, D.C. 20410, fact witness

4.    Linda Hawkins, HUD, 451 7th Street, SW, Washington, D.C. 20410, fact witness

5.    Joseph Smith: HUD employee HUD, 451 7th Street, SW, Washington, D.C. 20410. Mr. Smith is expected to testify regarding his personal knowledge *of:* information on his role in and procedures for ensuring that AEP hiring goals were met while he was the Deputy Assistance Secretary for Administration; information on his role and procedures regarding processing of EE0 complaints from white males; and, other matters relevant to the issues in these cases. Mr. Smith is designated as a fact witness.

6.    Larry Price: former HUD employee, 2525 Mulligan Lane, Belleville, Il  62220, Mr. Price is expected to testify regarding his personal knowledge of: how employment practices emanating from the AEP resulted in minorities being selected for 12 jobs for which he was on the BQL, including a job under the same vacancy announcement that is the subject of complaint BN 98-02; information on HUD's attempts to thwart his complaints and sanction imposed by an EEOC judge for delays by HUD in processing his EO discrimination complaints on the selections and, other matters relevant to the issues in this case. Mr. Price is designated as a fact witness.

7.    Everett Rothschild: HUD employee, HUD Tampa Field Office, 500 E. Zack Street, Tampa, FL.  Mr. Rothschild is expected to testify regarding his personal knowledge of how employment practices emanating from the AEP resulted in his not being selected for 40 jobs for which he was on the BQL (including job under the same vacancy announcement that is the subject of complaint # BN 98-02); delaying tactics used by HUD to thwart his EEO complaints filed in 1998; delay in HUD's completion of his ROI (which was only begun in March 2002); and, other matters relevant to the issues in these cases. Mr. Rothschild is designated as a fact witness.

8.    Edward Houchin: HUD employee. HUD Denver Regional Office, 1670 Broadway, Denver, CO.  Mr. Houchin  is expected to testify regarding his personal knowledge of: how employment practices emanating from the AEP resulted in women or minorities being selected for 22 jobs for which he was on the BQL; information on HUD's attempts to thwart his discrimination complaints, other matters relevant to the issues in this case. Mr. Houchin is designated as a

fact witness.

9.     Jose Cintron, HUD Field Office, Coral Gables, Fl, 16349 NW 12th Street, Pembroke Pines, FL  33028.  Agency employee and Selecting Official for Community Builder positions. Mr. Cintron is expected to testify regarding his personal knowledge of: why he contacted Mary Lou Crane for her recommendation; his criteria for selecting applicants; and, other matters relevant to the issues in this case. Mr. Cintron is designated as a fact witness.

10.    Patrick McManus: former Mayor of Lynn and past President of US Conference of Mayors, 17 Baltimore, Lynn, MA  01902. Mr. McManus is expected to testify regarding his personal knowledge of information on Plaintiff's demonstrated people skills while working with him and other public officials; and, other matters relevant to the issues in these cases.  Mr. McManus is designated as a fact witness.

11.    Norman Cole:  Lynn Housing and Neighborhood Development, 10 Church St., Lynn, MA  01902.  Mr. Cole is expected to testify regarding his personal knowledge regarding: information on Plaintiff's demonstrated people skills while working with local public officials; and, other matters relevant to the issues in these cases.  Mr. Cole is designated as a fact witness.

12.    D. Michael Beard: HUD, Office of Inspector General, 451 7th Street SW, Room 8184, Washington, D.C. 20410. Mr. Beard is expected to testify regarding his knowledge of the hiring of Community Builders, the dates of hiring and the numbers hired, and the duties that they perform, the duties of CPD's, and other matters relevant to the issues in these cases, including efforts to engage in affirmative action in filling these positions.  Mr. Beard is designated as a fact witness.

13.    Robert Paquin, HUD, Boston Field Office, 10 Causeway St., Boston, MA 02222: HUD employee, member of merit staffing panel for Community Builder positions in the HUD Boston Field Office. Mr. Paquin is expected to testify regarding his personal knowledge of:  information on the instructions given to merit staffing panel members; how female applicants were put on the BQL; how he had been informed by personnel staff that Mr. Tonini's application for the CB position had been lost when in fact he had been improperly found to be ineligible for the position; knowledge of the complainant's skills relevant to the CB positions; knowledge of Ms. Crane's lack of knowledge of the complainant's interpersonal skills; knowledge of Ms. Crane's attitude toward white male employees; and, other matters relevant to the issues in this case.  Mr. Paquin is designated as a fact witness.

14.    Susan Lang, former HUD employee, 4 Canal Street, Cambridge MA.  Ms. Lang is expected to testify regarding her personal knowledge of how merit staffing procedures were manipulated in the Boston Field Office to promote targeted

female employees in merit staffing and her personal knowledge of Plaintiff's demonstrated people skills with public officials.  Ms. Lang is designated as a fact witness.

15.    William Jolley, HUD employee, HUD Jacksonville Field Office,  400 W. Bay Street, Suite 1015, Jacksonville, Fl. Mr Jolley is expected to testify regarding his personal knowledge regarding age discrimination practices in merit staffing at HUD.   Mr. Jolley is designated as a fact witness.

16.    Arthur Tonini:, former  HUD employee, 6 Handel Road, Billerica, MA  01821. Mr. Tonini was an applicant for the CB position and supervisor of Ms. Griswold, a selectee for the CB position.  Mr. Tonini is expected to testify regarding his experience in multiple HUD programs and the fact that he had been incorrectly evaluated as ineligible, precluding him from being considered for a CB position; knowledge of Deborah Griswald's lack of interpersonal skills and, other matters relevant to the issues in these cases. Mr. Tonini is designated as a fact witness.

17.    Mary Lou Crane, former HUD employee, 11 Old Nugent Farm Road, Gloucester, MA  01930.  Ms. Crane is expected to testify regarding her personal knowledge of her interactions with Mr. Citron, the Selecting Official (SO) for the Community Builder positions; her assessment of Complainant's interpersonal skills; her recommendations regarding the applicants; likely promotion of Plaintiff had he been made a Community Builder, and, other matters relevant to the issues involved in these cases. Ms. Crane is designated as a fact witness.

18.    Virginia Swinson, former Grant Administrator, City of Gloucester, 1040 Washington Street, Gloucester, MA. 01915, Ms. Swinson is designated as a fact witness.

19.    Debra Griswold, HUD Tampa Field Office, 500 E. Zack Street, Tampa, FL..  Ms. Griswold is designated as a fact witness

20.    Cheryl Ann Teninga, HUD, 550 12 St. SW, Washington, D.C. 20410, HUD employee. Ms. Teninga is expected to testify regarding her relationship with Ms. Crane, her rejection of an offer of a CB position in the HUD Boston Field Office, her knowledge of affirmative action as it relates to hiring and promotion decisions at HUD, and the AEP.  Ms. Teninga is designated as a fact witness.

21.    Carmen Valenti, HUD employee and merit staffing panel member for the Public Housing Revitalization Specialist jobs. Mr. Valenti is expected to testify regarding his personal knowledge of: information given to merit staffing panel members on how to rate applications; affirmative action and equal opportunity at HUD; and, other matters relevant to the issues in these cases. Mr. Valenti is designated as a fact witness.

22.    Jeff Lamars, HUD employee and merit staffing panel member for the Public

Housing Revitalization Specialist jobs. Mr. Lamars is expected to testify regarding his personal knowledge of: information given to merit staffing panel members on how to rate applications; affirmative action and equal opportunity at HUD; and, other matters relevant to the issues in these cases. Mr. Lamars is designated as a fact witness.

23.     Richard Therrien: Former Community Builder fellow/Specialist. Mr. Therrien is expected to testify regarding his personal knowledge of: information about Ms. Crane's efforts to follow policy directives such as those related to the AEP; information on derogatory comments made publicly by Ms. Crane regarding Plaintiff's EO complaint, Plaintiff's personality and his ability to work with others following being asked to provide an affidavit regarding Plaintiff's formal EO complaint; and, other matters relevant to the issues in these cases. Mr. Therrien is designated as a fact witness.

24.     James Barnes: HUD employee, Boston Field Office, 10 Causeway Street, Boston, MA  02222. As Plaintiff's second level supervisor, Mr. Barnes is expected to testify regarding his personal knowledge of: Plaintiff's performance; and, other matters relevant to the issues in these cases. Mr. Barnes is designated as a fact witness.

25.     Dr. Lori Stearn HUD Employee Assistance Program Counselor, JFK Building, Room 110, Government Center, Boston, MA  02203. Dr. Stearn is expected to testify regarding her personal knowledge of: information pertaining to Complainant's emotional distress caused by his non-selections and/or the AEP. Dr. Stearn is designated as a medical and fact witness.

26.     Dr. Robert Abernathy: Massachusetts General Hospital, Wang Ambulatory Care Center, Suite 806E, 15 Parkman Street, Boston, MA  02114, 617 726-2401. Dr. Abernathy is expected to testify regarding: information pertaining to Complainant's emotional distress caused by his non-selections and/or the AEP. Medical witness.

27.     Susan Wald Patoski, Plaintiff's spouse, 28 Brookhouse Dr., Marblehead, MA 01945, Ms. Patoski is expected to testify regarding her personal knowledge of: information pertaining to Complainant's emotional distress caused by his non-selection.  Ms. Patoski is designated as a fact witness.

28.     Richard Patoski, 28 Brookhouse Dr., Marblehead, MA  01945, Plaintiff. Mr. Patoski is expected to testify regarding his personal knowledge of his qualification for the positions; his applications for the positions; the reason(s) given for his non-selections; the impact that the Agency's AEP, its actions and its inactions had on him, his career and his reputation; the pretextual nature of Defendant's explanation for his non-selection, and other matters relevant to the issues in these cases; and financial and emotional harm.  Mr. Patoski is designated as a fact witness.

29.    Plaintiff intends to call John Larsen as an expert witness, concerning HUD's hiring and promotion statistics, showing that white males were treated adversely to women and minorities at HUD, and how HUD's AEP violated applicable legal standards.  Plaintiff has provided HUD with a complete description of Mr. Larsen's qualifications as part of Mr. Larsen's expert report, which was timely provided to HUD.  In summary, Mr. Larsen has years of expertise as a Program Analyst with the FAA, along with extensive experience in affirmative action and underrepresentation.  See Expert Report 5-16.  Mr. Larsen's address is 58 Secretariat Lane, Jefferson, GA 30549.

30.    Karin Malfy will testify about her application for the CB position and her level of experience, or lack thereof in various HUD programs.  Jacksonville, FL

Plaintiff expressly reserves the right to supplement and/or modify this list pending the completion of discovery and he expressly reserves the right to call rebuttal witnesses.

Defendant's Witnesses
1.    Keeper of Records, Taunya L. Mayo and Paulette Ceophas, U.S. Department of HUD, 451 7th Street, Room 6210, Washington, D.C.  20410, 202-402-4996.  Ms. Ceophas and Mayo will be called upon to testify regarding the authenticity of HUD records as to the Boston CB application process.  Specifically, the two will testify that the applications, selection rosters, rating sheets, and other documents relating to selection process for the Boston CB position are true and accurate copies of the records maintained by HUD in the regular course of its business and otherwise to allow the admission of such records into evidence.  See Fed. R. Evid. 803(6) and (8); and 807.

2.    Jose Citron, HUD, Field Office, Coral Gables, FL. Mr Citron will testify regarding his role in the CB selection process.

3.    Mary Lou Crane, Former Secretary's Representative for HUD,  11 Old Nugent Farm Road, Gloucester, MA  01930.  Ms. Crane will testify regarding her communications with Mr. Citron in the CB selection process as to all applicants and the bases for her belief and communication to Mr. Citron that the plaintiff lacked the necessary interpersonal skills for the CB position.

4.    Bruce Tobey, 16 Montvale Avenue, Gloucester, MA 01930.  Mr. Tobey is the former mayor of Gloucester and will testify regarding his interactions with Plaintiff and communications with HUD and Ms. Crane regarding those interactions.

5.    Robert Paquin, HUD, Boston Field Office, 10 Causeway St., Boston, MA  02222. Mr. Paquin was a supervisor of the Plaintiff at the time of the non-selection and will testify regarding regarding Plaintiff's interpersonal skills.

6. Arthur Tonini:, former HUD employee. Mr. Tonini was a supervisor of the Plaintiff at the time of the non-selection and will testify regarding Plaintiff's interpersonal skills.

Possible Rebuttal Witnesses

7. Joseph Smith, Deputy Director, HUD HQ, Departmental Operations and Coordination, 451 Seventh Street, S.W., Washington, D.C. 20410. Mr. Smith may testify, as a selecting official, in rebuttal to claims that Price was denied any position on the basis of race and/or gender.

8. Michael Tramontia, former HUD employee. Mr. Tramontia may testify, as a selecting official, in rebuttal to claims that Price was denied any position on the basis of race and/or gender

9. William Apgar, former HUD employee. Mr. Apgar may testify, as a selecting official, in rebuttal to claims that Price was denied any position on the basis of race and/or gender.

10. Joseph Smith, former HUD employee. Mr. Smith may testify, as a selecting official, in rebuttal to claims that Price was denied any position on the basis of race and/or gender.

11. Mel Martinez, United States Senator for the State of Florida, Mr. Martinez may testify, as a selecting official, in rebuttal to claims that Price was denied any position on the basis of race and/or gender.

12. Mark Pilakowski, Departmental Real Estate Assessment Center, 550 12th Street, S.W., Washington, D.C. 20410. Mr. Pilakowski may testify, as a selecting official, in rebuttal to claims that Price was denied any position on the basis of race and/or gender.

13. Paula Blount, former HUD employee. Ms. Blount may testify, as a selecting official, in rebuttal to claims that Price was denied any position on the basis of race and/or gender.

14. William King, former HUD employee. Mr. King may testify, as a selecting official, in rebuttal to claims that Price was denied any position on the basis of race and/or gender.

15. Pam Patenaude, former HUD employee. Ms. Patenaude may testify, as a selecting official, in rebuttal to claims that Rothschild was denied any position on the basis of race and/or gender.

16. John Weicher, former HUD employee.  Mr. Weicher  may testify, as a selecting official, in rebuttal to claims that Rothschild was denied any position on the basis of race and/or gender.

17. Ferndanad Juluke, former HUD employee.  Mr. Juluke may testify, as a selecting official, in rebuttal to claims that Rothschild was denied any position on the basis of race and/or gender.

18. Yvonne McClean, former HUD employee.  Ms. McClean may testify, as a selecting official, in rebuttal to claims that Houchin was denied any position on the basis of race and/or gender.

19. John Eubanks, former HUD employee.  Mr. Eubanks may testify, as a selecting official, in rebuttal to claims that Houchin was denied any position on the basis of race and/or gender.

20. Floyd O. May, III, Departmental Real Estate Assessment Center, 550 12th Street, S.W., Washington, D.C.  20410.  Mr. May may testify, as a selecting official, in rebuttal to claims that Houchin was denied any position on the basis of race and/or gender.

21. Kenneth Marchs, former HUD employee.  Mr. Marchs may testify, as a selecting official, in rebuttal to claims that Houchin was denied any position on the basis of race and/or gender

22. Vickers Meadows, former HUD employee.  Mr. Meadows may testify, as a selecting official, in rebuttal to claims that Houchin was denied any position on the basis of race and/or gender.

23. Evelyn Meininger, former HUD employee.  Ms. Meninger may testify, as a selecting official, in rebuttal to claims that Houchin was denied any position on the basis of race and/or gender.

24. Ellen Dole, Denver Regional Office of Fair Housing and Equal Opportunity, 1670 Broadway, Denver, CO  80202.  Ms. Dole may testify in rebuttal to claims that Houchin was denied any position on the basis of race and/or gender

Defendant reserves the right to call rebuttal witnesses and to call any witness listed by the Plaintiff.

L.      List of Exhibits

A.      <u>AGREED UPON EXHIBITS</u>

1.      CPD Standards (Pl.'s SJ Exh. 1)

2.      Position Description of CPD Rep. (HE 16)
3.      11/25/97 Letter (contained in Pl.'s SJ Exh. 6)
4.      Community Builder Vacancy Announcement (Pl.'s SJ Exh. 31)
5.      Critical Element 8 (Crane Dep. Exh. 2)
6.      Instructions for Selecting Officials (Hawkins Dep. Exh. 5)
7.      11/20/96 certificate (contained in HE 6)
8.      6/23/95 certificate (contained in HE 6)
9.      Patoski performance appraisal 2/1/98-1/3/99 (HE 11)
10.     Patoski performance appraisal 2/1/97 – 1/31/98 (HE 12)
11.     Patoski award (HE 14)
12.     Patoski Performance appraisal (HE 15, 1-5)
13.     Rating Schedule for CB GS 13-15 (HE 21)
14.     GS-15 Selection Roster (HE 23)
15.     GS-14 Selection Roster (HE 24)
16.     GS-13 Selection Roster (HE 25)
17.     Griswold Application (HE 25A – 6576-6676)
18.     Pellegrino application (Pl.'s SJ Exh. 49; HE 25-L)
19.     Polito Application (HE 25E -- 7163-7184)
20.     Pellegrino Application (HE 25L)
21.     Reeves Application (HE 26)
22.     Patoski Application – revised (6275-6296)
23.     Eligibility Codes (HE 25 MM)
24.     Merit Staffing Eligibility Codes (HE 29)
25.     CB App. Materials Edward Bernard 6244-6274
26.     CB App. Materials Richard Patoski 6275-6318
27.     CB App. Materials Kenneth Barnard 6319-6325
28.     CB App. Materials William Barth 6326-6362
29.     CB App. Materials Charles Bell 6363-6388
30.     CB App. Materials Robert Berlan 6389-6410
31.     CB App. Materials William Bieryla, 6411-6444
32.     CB App. Materials Ellen Bradley, 6445-6460
33.     CB App. Materials George Bridgeman 6461-6481
34.     CB App. Materials Linda Cavanaugh 6482-6505
35.     CB App. Materials Robert Cormier 6506-6529
36.     CB App. Materials Charles Ellis 6530-6546
37.     CB App. Materials Danielle Marie Gaines 6547-6557
38.     CB App. Materials Merryl Gibbs 6558-6575
39.     CB App. Materials Deborah Griswold 6576-6676
40.     CB App. Materials Vanessa Harris 6677-6693
41.     CB App. Materials Judith Holly 6694-6710
42.     CB App. Materials Phillip Holmes 6711-6735
43.     CB App. Materials Bennie Howard 6736-6750
44.     CB App. Materials William Howell 6751-6765
45.     CB App. Materials Scott Hudman 6766-6783
46.     CB App. Materials Crystal Jones 6784-6849
47.     CB App. Materials Joan Ladesh 6850-6875

48.     BB App. Materials Robert LaPlante 6876-6906
49.     CB App. Materials Nannette Locke 6907-6938
50.     CB App. Materials Wendy Lucas 6939-6958
51.     CB App. Materials Subhas Mehta 6959-6970
52.     CB App. Materials Rafael Metzger 6971-7004
53.     CB App. Materials William Motiel 7005-7024
54.     CB App. Materials Kevin Neary 7025-7082
55.     CB App. Materials Earnest Nichols 7083-7104
56.     CB App. Materials Mary Noble 7105-7117
57.     CB App. Materials Francisco Padilla 7118-7147
58.     CB App. Materials Linda Pellegrino 7148-7162
59.     CB App. Materials James Polito 7163-7184
60.     CB App. Materials James Reeves 7185-7205
61.     CB App. Materials Marie Terese Rines 7206-7221
62.     CB App. Materials Arthur Tonini 7222-7234
63.     CB App. Materials Valarie Turner 7235-7251
64.     CB App. Materials Jeffery Twerago 7252-7269
65.     CB App. Materials Elizabeth Twomey 7270-7280
66.     CB App. Materials Joseph Vilardo 7281-7290
67.     CB App. Materials Gail Wholey 7291-7302
68.     CB App. Materials Robert Yablonskie 7303-7331


B.     Plaintiff's Exhibits

1.     CPD Rep. Standards
2.     Patoski Affidavit
3.     EEOC Hearing Transcript
4.     Tonini Deposition
5.     HUD Resp. to Request for Admissions
6.     Commendations
7.     Management Directive 714
8.     Gaiter Deposition
9.     Cockrell Deposition
10.    Cockrell Deposition (Worth case)
11.    FY1993 AEP Update Report
12.    FY1994 AEP Accomplishment Report
13.    FY1995 AEP Update Report
14.    FY1996 AEP Update Report
15.    FY1997 AEP Update Report
16.    FY1998 AEP Update Report
17.    FY1999 AEP Update Report
18.    FY2000 AEP Update Report
19.    FY2001 AEP Update Report
20.    FY2002 AEP Update Report
21.    FY2003 AEP Update Report

22.    King Letter
23.    FY2001 FEORP Report
24.    FY1999 FEORP Recruitment Plan
25.    FY1999 FEORP Report
26.    FY2000 FEORP Report
27.    HUD's Answers to Interrogatories
28.    Crane Deposition
29.    Cintron Deposition
30.    Beard Deposition
31.    Community Builder Vacancy Announcement
32.    Cintron Affidavit
33.    Medvic Deposition
34.    Teninga Deposition
35.    Patoski Deposition
36.    Patoski Affidavit (second)
37.    Crane Dep. Exh. 3
38.    Crane Dep. Exh. 4
39.    Crane Affidavit
40.    Beard Dep. Exh. 2
41.    Beard Dep. Exh. 1
42.    PHRS Posting
43.    PHRS Eligibility Documents
44.    Yeow Deposition
45.    Teninga Dep. Exh. 3
46.    Hawkins Deposition
47.    Stipulation of December 1, 2006
48.    Beard Deposition
49.    Linda Pellegrino Application
50.    FY 1999 AEP Update Report
51.    Richard Patoski Affidavit
51A    CB data
51B    CB data
51C    CB data
51D    CB data
52.    EEO Communication as contained in Exh. 52 of Plaintiff's Rule 56 exhibits
59.    FY 2004 MD-715 Report
60.    Carmen Valenti Evaluation
61.    AEP Training Manual
62.    Upward Mobility Handbook
63.    FY 2005 Performance and Accountability Report
64.    Def.'s Responses to Document Requests
65.    FY 2006 Annual Performance Plan
66.    MD-715 Instructions
67.    FY 2005 MD-715 Report
68.    Deborah Medvic Affidavit
69.    June 25, 2000 Letter to Plaintiff

70.     June 27, 2001 Letter to Plaintiff
71.     PHRS Ratings Sheets
72.     Requests for Admissions
73.     Robert Yablonski Application
74.     Mary Kuhn Application
75.     Answers to Interrogatories
76.     Letter Confirming Mary Kuhn's Promotion
77.     Abbey Ogunbola's Application
78.     Beard Dep. Exh. 4
79.     FY 2003 Annual Performance Plan
80.     FY 2004 Annual Performance Plan
81.     FY 1998 AEP Accomplishment Report
82.     FY 1999 AEP Accomplishment Report
83.     OMB Salary schedules for years reflecting lost pay, examples of which were
provided to Defendant in response to its interrogatories.
84.     The Record of Investigation relating to Plaintiff's claims of discrimination
relating to the Community Builder position.
85.     The Record of Investigation relating to Plaintiff's claims of discrimination
relating to the PHRS position.
86.     Defendant's responses to Plaintiff document requests, nos. 1-7786.
87.     Bradford Washington Dep. Exh. 1
88.     Bradford Washington Dep. Exh. 2
89.     Bradford Washington Dep. Exh. 3
90.     Bradford Washington Dep. Exh. 4
91.     Bradford Washington Dep. Exh. 5
92.     Bradford Washington Dep. Exh. 6
93.     Bradford Washington Dep. Exh. 7
94.     Bradford Washington Dep. Exh. 8
95.     Bradford Washington Dep. Exh. 9
96.     Gaiter Dep. Exh. 1
97.     Gaiter Dep. Exh. 2
98.     Gaiter Dep. Exh. 3
99.     Gaiter Dep. Exh. 4
100.    Gaiter Dep. Exh. 5
101.    Gaiter Dep. Exh. 6
102.    Gaiter Dep. Exh. 7
103.    Gaiter Dep. Exh. 8
104.    Gaiter Dep. Exh. 9
105.    Gaiter Dep. Exh. 10
106.    Gaiter Dep. Exh. 11
107.    Gaiter Dep. Exh. 12
108.    Gaiter Dep. Exh. 13
109.    Gaiter Dep. Exh. 14
110.    Gaiter Dep. Exh. 15
111.    Gaiter Dep. Exh. 16
112.    Gaiter Dep. Exh. 17

113.    Beard Dep. Exh. 1
114.    Beard Dep. Exh.  2
115.    Beard Dep. Exh. 3
116.    Beard Dep. Exh. 4
117.    Beard Dep. Exh. 5
118.    Teninga Dep. Exh. 1
119.    Teninga Dep. Exh 2
120.    Teninga Dep. Exh. 3
121.    Teninga Dep. Exh. 4
122.    Teninga Dep. Exh. 5
123.    Hawkins Dep. Exh. 1
124.    Hawkins Dep. Exh. 2
125.    Hawkins Dep. Exh. 3
126.    Hawkins Dep. Exh. 4
127.    Hawkins Dep. Exh. 5
128.    Hawkins Dep. Exh. 6
129.    Hawkins Dep. Exh. 7
130.    Crane Dep. Exh. 1
131.    Crane Dep. Exh. 2
132.    Crane Dep. Exh. 3
133.    Crane Dep. Exh. 4
134.    Crane Dep. Exh. 5
135.    Crane Dep. Exh. 6
136.    Crane Dep. Exh. 7
137.    Crane Dep. Exh.8
138.    Crane Dep. Exh. 9
139.    Crane Dep. Exh. 10
140.    Crane Dep. Exh. 11
141.    Crane Dep. Exh. 12
142.    SF-50s of various decision makers showing some performance awards.  HUD
7786-7806.
143.    Wage Schedules from OPM website.
144.    Table 101 from the 2008 Statistical Abstract,
http://www.census.gov/compendia/statab/tables/08s0101.pdf
145.    HE 6, at 1, 3, 4, 6-8
146.    HE 8
147.    HE 9
148.    HE 10
149.    HE 13
150.    HE 21
151.    HE 25-D
152.    HE 25-F;
153.    HE 25-G;
154.    HE 25-H;
155.    HE 25-I;
156.    HE 25-J;

157.    HE 25-K;
158.    HE 25-M;
159.    HE 25-N;
160.    HE 25-O;
161.    HE 25-P;
162.    HE 25-Q;
163.    HE 25-R
164.    HE 25-Y
165.    HE 57
166.    BN-01-01 ROI, Tab B, M 1 of 2, EEO counselor's reminder to retain documents
167.    Exhibit 27 of BN-98-02 ROI (CBA)
168.    Claim for Reimbursement for Expenditures on Official Business, signed and
dated February 17, 1998
169.    Spreadsheets analyzing applicants for Community Builder positions by gender
and grade.
170.    Pl.'s SOF 200
171.    Pl.'s SOF 201
172.    Pl.'s SOF 202
173.    Pl.'s SOF 203
174.    Computing Retirement Benefits Under the Civil Service Retirement System, at
         http://www.opm.gov/forms/pdfimage/R183-7.pdf
175.    HUD financial Planning Seminar announcement,
         http://hudweb.hud.gov/po/amt/anncmt/preretire.cfm
176.    Retirement Training materials called Planning for Retirement Federal Benefits
177.    Spreadsheet analyzing Boston Community Builder applicants and their rejections
based upon not having experience in more than one HUD program area.

Plaintiff reserves the right to introduce any exhibit listed by Defendant.

Defendant's Proposed Exhibits

1.    Rating Sheets for the Boston CB position
2.    EEOC Exhibit 21A – Master rating Sheet for New England CB Applicants for the
       CB position GS 13 Level (Redacted to Reflect Boston Applicants);
3.    EEOC Exhibit 21B – Master Rating Sheet for New England CB Applicants for
       the CB position GS 14 Level (Redacted to Reflect Boston Applicants);
4.    EEOC Exhibit 21C - Master Rating Sheet for New England CB Applicants for the
       CB position GS 15 Level (Redacted to Reflect Boston Applicants);
5.    EEOC Exhibit 25Z - Rating Sheet for CB Applicants for the CB position GS 13
       Level;
6.    EEOC Exhibit 25AA - Rating Sheet for CB Applicants for the CB position GS 13
       Level;
7.    EEOC Exhibit 25BB - Rating Sheet for CB Applicants for the CB position GS 13
       Level;
8.    EEOC Exhibit 25CC - Rating Sheet for CB Applicants for the CB position GS 13
       Level;

9.      EEOC Exhibit 25DD - Rating Sheet for CB Applicants for the CB position GS 13 Level;

10.     EEOC Exhibit 25FF - Rating Sheet for CB Applicants for the CB position GS 15 Level;

11.     EEOC Exhibit 25HH - Rating Sheet for CB Applicants for the CB position GS 13 Level;

12.     CB position Description EEOC Exhibit 25D

13.     Email from Bruce Tobey to Mary Lou Crane. (EEOC Exhibit 57)

14.      Plaintiff's Interrogatory Responses

Defendant reserves the right to seek introduction of any Exhibit listed by the Plaintiff.

M.      Jury Instructions

See Plaintiff's Proposed Jury Instructions and Proposed Jury Verdict Form, which are attached.

See Defendant's Proposed Jury Instructions, Proposed Jury Verdict Form and Proposed Findings of Fact and Conclusions of law for the Age Discrimination Claim, attached.

Supplemental proposed Findings of Fact and Conclusions of Law may  be submitted once this Court has determined the question of whether particular issues will be decided by the Court or submitted to the jury.  See Docket # 69, and Order dated March 26, 2008.

N.      Voir Dire Questions

[Plaintiff's proposed voir dire]

1.      What are your feelings with regard to affirmative action, and your ability to be fair in a case where a man believes that he has been the victim of discrimination.

2.      Do you think that women should be given a preference in hiring decisions?

3.      Do you think that an employer should be able to consider gender when deciding who to hire?

4.      Do you think an employer should be able to give preferences to younger applicants when deciding who to hire?

[Defendant's Proposed Voir Dire]

1.      Have you ever applied for a position or promotion that you feel was unfairly granted to a woman instead of you because of her gender?

2.      Have you ever applied for a position or promotion that you feel was unfairly granted to a younger individual because of their age?

Respectfully submitted,

The Plaintiff,
By his Attorneys


_____/s/ Robert S. Mantell_____
Kevin G. Powers
BBO# 405020
Robert S. Mantell
BBO# 559715
Rodgers, Powers & Schwartz LLP
18 Tremont Street
Suite 500
Boston, MA  02108
(617) 742-7010

Alfonso Jackson
By his attorney

Michael J. Sullivan
United States Attorney

/s/
Mark J. Grady
Assistant United States Attorney
One Courthouse Way
Boston, MA 02210
(617) 748-3100

21

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD S. PATOSKI,

                Plaintiff,

v.

ALPHONSO JACKSON, SECRETARY,
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT,

                Defendant.

C.A. No. 05-11086 RCL

## PLAINTIFF RICHARD S. PATOSKI'S
## REQUESTS FOR JURY INSTRUCTIONS

Plaintiff Richard S. Patoski hereby submits his requests for jury instructions.

Request 1

## INTRODUCTION

A.    Some of you have heard the phrase "proof beyond a reasonable doubt." That is a criminal law standard. That is not the proper standard in this case.

B.    The Plaintiff's burden of proof is to prove their respective cases by a preponderance of evidence. What does "preponderance of evidence" mean?

It simply means that the Plaintiff must convince you that it is more probably than not that the Plaintiff was discriminated against.

C.     In weighing all the evidence, think of a scale.  If the evidence is equally divided and the scale does not tip in either direction, you must find for the Defendant.  However, if you find that the evidence tips the scale, however slightly, in favor of the Plaintiff, then it becomes more likely than not that the Defendant engaged in unlawful discrimination you must find for the Plaintiff.

D.     There are two types of evidence which you may properly use in reaching your verdict.

E.     One type of evidence is direct evidence.  Direct evidence is when a witness testifies about something he or she knows by virtue of his or her own senses--something he or she has seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit where the fact to be proven is its present existence or condition.

F.    Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts.  There is a simple example of circumstantial evidence which is often used.

G.    Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella which was dripping wet.  Then a few minutes later another person also entered with a wet umbrella.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

H.    That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or nonexistence of some other fact.

I.    Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence

3

and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 2

DESCRIPTION OF THE CASE

In this case, Plaintiff, Richard or Rick Patoski claims that he was

discriminated against because of his gender, his age, or a combination of

both.  Mr. Patoski was, and still is, an employee of the Defendant HUD.  In

October 1997, Mr. Patoski applied for a promotion to the position of

Community Builder within HUD.  It is undisputed that Mr. Patoski was

qualified for the promotion.   Mr. Patoski was rejected for the promotion,

while the position was offered to three women. Mr. Patoski seeks damages

based on violations of Federal laws that prohibit sex discrimination and

gender discrimination.

There are two separate aspects of these claims, sex discrimination and

age discrimination, which I will explain below.

McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973); Texas Dept. of
Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 3

GENDER DISCRIMINATION

First, I will address the gender discrimination claim. There is a

Federal law called Title VII. The purpose of Title VII is to eradicate

discrimination. Title VII forbids employment discrimination on the basis of

gender. An employer breaks the law if it considers gender in making an

employment decision. Thus, if HUD refused to promote Mr. Patoski

because of his gender, or even if it was a motivating factor in the decision, it

is guilty of sex discrimination and will be held liable.


42 U.S.C. § 2000e-2(a)(1) (prohibiting sex discrimination); Rosenberg v.
Merrill Lynch, Pierce, Fenner & Smith, 995 F. Supp. 190, 200 (D. Mass.
1998), aff'd 170 F.3d 1 (1st Cir. 1999) (referring to "public goal of
eradicating discrimination" and citing to Title VII legislative history
referencing "the substantial public interest in a discrimination-free
workplace . . .. H.R.Rep. No. 40(I), 102d Cong., 1st Sess. 75 (1991)); 42
U.S.C. § 2000e-2(m) ("Except as provided in this title, an unlawful
employment practice is established when the complaining party
demonstrates that . . . sex . . . was a motivating factor for any employment
practice, even though other factors also motivated the practice."); 42 U.S.C.
§ 2000e-5(g)(2)(B) ("On a claim in which an individual proves a violation
under [42 U.S.C. § 2000e-2m] . . . and a respondent demonstrates that the
respondent would have taken the same action in the absence of the
impermissible motivating factor, the court . . . may grant attorneys fees and
costs")

6

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 4

EMPLOYER RESPONSIBILITY

When I say that an employer such as HUD may be held liable, what do I mean? Employers act through their agents, managers and supervisory employees, and are thus, responsible for the conduct of those agents, managers and supervisory employees. For example, when an applicant is rejected based on the evaluation or recommendation of a superior, the motives of the superior are considered the motives for the employer's decision. The fact that other levels of administration approve or sign off on the recommendation does not affect the employer's liability. If the rejection is caused in fact by a negative recommendation by a manager or someone with authority, and that recommendation was motivated by discrimination, this constitutes an illegal act for which the employer is responsible.

Burlington Indus., Inc. v. Ellerth, 118 S. Ct. 2257 (1998) ("[A] tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer"); Thomas v. Eastman Kodak Co., 183 F.3d 38, 58-9 (1st Cir. 1999) (employer that neutrally, and without discriminatory animus, makes a layoff decision based on past evaluations, is liable for discrimination where supervisor that generated evaluations was a discriminator and made the evaluations pretextually low); Tejada-Batista v. Morales, 424 F.3d 97, 102-103 (1st Cir. 2005); Cariglia v. Hertz Equipment Rental Corp., 363 F.3d 77 (1st Cir. 2004); DeGrace v. Rumsfeld, 614 F.2d

796, 803 (1st Cir. 1980); <u>Long v. Eastfield College</u>, 88 F.3d 300, 307 (5th Cir. 1996) (motives of supervisor binds company, where the company rubber-stamped the supervisors recommendation to reject an employee); <u>Thomlison v. Omaha</u>, 63 F.3d 786, 789 (8th Cir. 1995) (supervisor rubber-stamped recommendation of subordinate); <u>Stimson v. Tuscaloosa</u>, 186 F.3d 1328, 1331-1332 (11th Cir. 1999), <u>cert. denied</u>, 120 S. Ct. 1555 (2000).

> If . . . the decision makers relied on the recommendations of supervisors, the motives of the supervisors should be treated as the motives for the decision. . . . An employer should not be permitted to insulate its decision by interposing an intermediate level of persons in the hierarchy of decision, and asserting that the ultimate decision makers acted only on recommendation, without personal hostility toward protected activity.

<u>Trustees of Forbes Library v. Labor Relations Commission</u>, 384 Mass. 559, 570 (1981); <u>see also</u> <u>Adams v. Mount Vincent Nursing Home</u>, 19 MDLR 123, 126 (1997) (respondent liability where employer's employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action); <u>Senna v. New England Power Service</u>, 15 MDLR 1833, 1855 (1993).

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 5

REVERSE DISCRIMINATION

Mr. Patoski, as a male, may prove that he was a victim of gender

discrimination, in the same manner that a woman might prove gender

discrimination. Mr. Patoski has no additional burden for proving gender

discrimination, just because he is a man.

Oncale v. Sundowner Offshore Service, Inc., 118 S. Ct. 998, 1001 (1998)
(Title VII prohibition against sex discrimination protects men as well as
women); McDonald v. Santa Fe Trail Transp. Co., 96 S. Ct. 2574, 2579-
2580 (1976) (("Title VII prohibits racial discrimination against the white
petitioners in this case upon the same standards as would be applicable were
they Negroes and Jackson white." "Title VII was intended to 'cover white
men and white women and all Americans'"); Carey v. Mt. Desert Island
Hospital, 1996 U.S. Dist. LEXIS 12397(D. Me. 1996) (applying same
elements in reverse discrimination case based on careful analysis of Title
VII), aff'd, 156 F.3d 31, 34 (1st Cir. 1998) (en banc) ("There is no real
dispute that Carey has established a prima facie case, as he has shown that
he had a satisfactory job performance record but was terminated and
replaced by a woman"); Eastridge v. Rhode Island College, 996 F. Supp.
161, 166 (D. R.I. 1998) (refusing to adopt a more onerous prima facie case
requirement in reverse discrimination case, as this is "antagonistic to the
very purpose of Title VII itself").

9

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 6

A MOTIVATING FACTOR

I will be providing you with a questionnaire, also called a verdict
form, for you to fill out. It will have a list of questions for you to answer.
The first question for you to answer is whether Mr. Patoski has proven by a
preponderance of the evidence that gender was a motivating factor in the
decision to reject him for the Community Builder position. To prove that
gender was a motivating factor, Mr. Patoski need not prove that gender was
the only factor that was considered in the adverse employment decisions.
You may find that gender was a motivating factor, even if HUD
demonstrates that it would have made the same decisions in the absence of
considerations of gender. Mr. Patoski may prevail on this issue through use
of circumstantial evidence, direct evidence, or a combination of both. You
must answer "Yes" to the first question if you determine that gender was
among the mix of motivating considerations that were present when the
relevant decisions were being made.


42 U.S.C. § 2000e-2(m) ("Except as provided in this title, an unlawful
employment practice is established when the complaining party
demonstrates that . . . sex . . . was a motivating factor for any employment

practice, even though other factors also motivated the practice."); 42 U.S.C. § 2000e-5(g)(2)(B) ("On a claim in which an individual proves a violation under [42 U.S.C. § 2000e-2m] . . . and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court . . . may grant attorneys fees and costs"); <u>Desert Palace, Inc. v. Costa</u>, 123 S. Ct. 2148, 2155 (2003) (circumstantial evidence alone is sufficient to establish a motivating factor); <u>Melendez-Arroyo v. Cutler-Hammer de P.R. Co., Inc.</u>, 273 F.3d 30, 33 (1st Cir. 2001) (under 42 U.S.C. § 2000e-2(m), as combined with 42 U.S.C. § 2000e-5(g)(2)(B), relief is available for plaintiffs demonstrating gender to be a motivating factor, even if it later proven that the same action would have taken place in the absence of consideration of gender); <u>Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith</u>, 995 F. Supp. 190, 200 (D. Mass. 1998), <u>aff'd</u> 170 F.3d 1 (1st Cir. 1999) (same).

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 7

BUT FOR

If you find that gender was a motivating factor, then you must proceed to the second and third questions. You should then determine whether HUD would have made the same decision even if it had not considered the gender of Mr. Patoski and the others who received job offers. For example, would Mr. Patoski have been promoted if all things were equal, but he were a woman? Or conversely, if Ms. Teninga, Ms. Griswold and/or Ms. Pellegrino were males, would Mr. Patoski have been successful in obtaining the Community Builder job? Would the same decision have been made? Importantly, for the purposes of questions 2 and 3, the burden switches to the Defendant. The Defendant HUD must prove, by a preponderance of the evidence, that it would have made the same decision, even if gender was not considered. If the Defendants do not prevail in this burden, you must assume that gender was a "but for" factor in the adverse employment decision.

You may find that gender was the "but for" reason for Mr. Patoski's rejection, even if other, legitimate reasons also played a role in the

12

employer(s) decisionmaking process. Discrimination can be a determining

factor; even if there were other, legitimate determining factors are present.


Desert Palace, Inc. v. Costa, 123 S. Ct. 2148, 2151 (2003) (once Plaintiff proves a motivating factor, the burden shifts to the employer to prove that it would have taken the same action even in the absence of the illegal motive); Weston-Smith v. Cooley Dickinson Hospital, Inc., 282 F.3d 60, 64 (1st Cir. 2002) (after Plaintiff proves an unlawful motivating factor, employer bears an affirmative defense to prove that it would have made the same decisions absent the unlawful motivating factor); Febres v. Challenger Caribbean Corp., 214 F.3d 57, 59, 62 (1st Cir. 2000) (admission that age sometimes was considered in transfer decisions was direct evidence, necessitating shift of burden to employer); Fields v. Clark University, 817 F.2d 931, 937 (1st Cir. 1987) (court finding of existence of impermissible motive has the effect of direct evidence, and shifts burden of proof to defendant to show it would have made the same decision absent discrimination); Fields v. Clark University, 966 F.2d 49, 52 (1st Cir. 1992) (burden shifts where plaintiff proves existence of a discriminatory motivating factor); Wynn & Wynn v. MCAD, 431 Mass. 655, 670 (2000) (upon finding of an unlawful motivating factor, the burden shifts to the defendant who may avoid a finding of liability only by proving that it would have made the same decision, even without the illegal motive).

McDonald v. Santa Fe Trail Transportation Co., 96 S. Ct. 2574, 2580 & n.10 (1976) (under Title VII's "because of" language, plaintiff need only prove discrimination was "but for" cause as opposed to "sole" cause); Price Waterhouse v. Hopkins, 109 S. Ct. 1775, 1785 & n. 7 (1989) (construing Title VII, "we know the words "because of" do not mean '*solely* because of'"); Dartt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 8 (1998) (c. 151B does not require proof that discrimination was sole reason for adverse action); Smith College v. MCAD, 376 Mass. 221 (1978).

13

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 8

CONSIDER TOTALITY OF THE EVIDENCE
TO DETERMINE MOTIVE

In deciding whether considerations of gender motivated the rejection, you may consider the totality of the evidence. For example, you could consider past conduct and comments made by HUD's managerial and supervisory employees to determine whether unlawful discrimination existed. You may consider overall statistical evidence of HUD's workforce practices. You may consider such information as evidence even though it is possible that you may not or do not award damages based on the past or subsequent conduct.

Williams v. Frank, 757 F. Supp. 112, 118 (D. Mass. 1991) ("employer's prior treatment of plaintiff is relevant to a showing of pretext"); Brown v. Trustees of Boston University, 891 F.2d 337, 349 (1st Cir. 1989) (past acts of discrimination are relevant under Fed. R. Evid. 404(b)); Sinai v. New England Tel & Tel Co., 53 FEP Cases, at 1885; Lamphere v. Brown University, 685 F.2d 743, 747 (1st Cir. 1982); Marsman v. Western Electric Co., 719 F. Supp. 1128, 1135 (D. Mass. 1988); United Air Lines, Inc. v. Evans, 97 S. Ct. 1885, 1889 (1977); Denton v. Int. Bro. of Boilermakers, 653 F. Supp. 55, 60 (D. Mass. 1986); Cajigas v. Banco de Ponce, 741 F.2d 464, 470 n.13 (1st Cir. 1984); Pakizegi v. First Nat. Bank of Boston, 831 F. Supp. 901, 910 n.1 (D. Mass. 1993); Brown v. Trustees of Boston University, 891 F.2d 337, 349-350 (1st Cir. 1989) (sexist comments made by the University President two or three years after an allegedly discriminatory withholding of tenure were admissible); Conway v. Electro Switch Corp., 825 F.2d, at 597 ("evidence of a corporate state of mind or a

14

discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment.").

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 9

EVIDENCE OF PRETEXT MAY BE
CONSIDERED TO ESTABLISH DISCRIMINATORY MOTIVE


HUD has provided explanations for its rejection of Mr. Patoski.  If

Mr. Patoski has convinced you that one or more of these explanations is

false or pretextual, you may consider that fact to support an inference that

unlawful discrimination has occurred.


Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 149 (2000);
Acevedo-Diaz v. Aponte, 1 F.3d 62, 68 (1st Cir. 1993); Sumner v. United
States Postal Service, 899 F.2d 203, 209-210 (2nd Cir. 1990).

 "Resort to a pretextual explanation is like flight from the scene of a crime,
evidence indicating consciousness of guilt, which is, of course, evidence of
illegal conduct." Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d
1061, 1069 (1996).

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 10

NO CONSIDERATION OF GENDER TO CORRECT IMBALANCE

There is no requirement that an employer must maintain gender balance in the work force. On the contrary, any deliberate attempt to maintain a gender balance would involve a violation of the law because maintaining such a balance would require an employer to make employment decisions on the basis of gender. Thus, any consideration of gender in employment decisions is unlawful, even if the purpose is to create balance.

42 U.S.C. § 2000e-2(j) ("Preferential treatment [is] not to be granted on account of [an] existing number or percentage imbalance"); Interpretive Memorandum, 110 Cong.Rec. 7213 (1964) ("There is no requirement in title VII that an employer maintain a racial balance in his work force. On the contrary, any deliberate attempt to maintain a racial balance, whatever such a balance may be, would involve a violation of title VII because maintaining such a balance would require an employer to hire or refuse to hire on the basis of race"). The interpretative memorandum cited above is considered "authoritative" by the Supreme Court and must be read to govern gender cases as well as race cases. See Price Waterhouse v. Hopkins, 109 S. Ct. 1775, 1787 & nn. 8, 9 (plurality) & 1803 (O'Connor, concurring) (1989).

See G.L. c. 151B, § 4, Fifth Unnumbered Paragraph (Nothing in the law requires that an employer grant preferential treatment to any individual or group because of gender, on the grounds that an imbalance exists between the percentage of women employed by the employer and the percentage of women in the workforce).

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 11

DISTINCTIONS BASED ON GENDER ARE UNLAWFUL, EVEN IF
THERE IS GOOD INTENTIONS

It is illegal to make an employment decision based on gender, even if

it can be said that such a preference is based on good intentions.  While

voting for a Presidential candidate because you would rather have a

President of a certain gender is lawful, it is unlawful to consider sex in the

selection process for Federal employees.

Adarand Constructors, Inc. v. Pena, 115 S. Ct. 2097, 2112, 2117 (1995)
(strict scrutiny applies to such racial classifications regardless of whether the
government's intent in making such classification is considered benign or
remedial); Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 45-46 (1st
Cir. 2002) (employer's good faith does not insulate it from liability);
International Union, United Automobile, Aerospace & Agr. Implement
Workers of America, UAW v. Johnson Controls, Inc., 111 S. Ct. 1196,
1203-4 (1991) ("[T]he absence of a malevolent motive does not convert a
facially discriminatory policy into a neutral policy with a discriminatory
effect. . . . Nor did the arguably benign motives lead to consideration of a
business necessity defense. . . . The beneficence of an employer's purpose
does not undermine the conclusion that an explicit gender-based policy is
sex discrimination under § 703(a) and thus may be defended only as a
BFOQ.").

"To discriminate is to make a distinction, to make a difference in treatment
or favor, and those distinctions or differences in treatment or favor which are
prohibited by section 704 are those which are based on any five of the
forbidden criteria:  race, color, religion, sex and national origin."  110

18

Cong.Rec. 7213 (1964), quoted by <u>Price Waterhouse v. Hopkins</u>, 109 S. Ct. 1775, 1787 (1989).

However, it is clear that affirmative action is not to be undertaken to alleviate a societal discrimination, but should focus on correcting disparities, if any, in the specific job position at issue. Segregation in the field of medicine in general is not a valid basis for hiring a woman into a particular job. <u>City of Richmond v. J.A. Croson Co.</u>, 109 S. Ct. 706, 723-4 (1989) (discussing race based affirmative action). An effort to correct traditional segregation in the entire category of medicine is "too amorphous a basis" for imposing a gender classified remedy. <u>See</u>, <u>id.</u>, at 724.

19

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 12

## NO AFFIRMATIVE ACTION PERMITTED AND THE AEP WAS ILLEGAL

Many of you may be aware of the term "affirmative action." While in some circumstances a governmental employer may set goals and objectives to encourage the hiring or promotion of women, the concept of affirmative action is not applicable in this case. This is not a case which would permit HUD to institute an affirmative action program to establish goals and objectives for hiring and promoting women. Once again, it is unlawful for an employer to consider gender as a motivating factor in making staffing decisions in this case.

You have heard evidence that HUD instituted an Affirmative Employment Program, or AEP, which established goals for the hiring, training and promotion for White women, but not White men. There is nothing in the law that required HUD to institute the program in the form that HUD adopted. Nor does the law permit HUD to initiate the AEP as it was implemented by HUD. HUD's articulated purpose for the AEP, to try to make sure that women were represented at HUD in percentages equal to the civilian workforce, is not a purpose that legally justifies the AEP. In short, the AEP program constituted an illegal classification. You may

consider the AEP's existence, and that fact that it is illegal, in determining

whether gender was a motivating factor, or a but for cause, in Mr. Patoski's

rejection.


See Plaintiff's Motions in Limine, filed with these proposed jury
instructions.

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 13

SEX-PLUS THEORY

You have heard that Mr. Patoski was classified as a White male. That classification refers to two factors, one based on race, and one based on gender. This is not a claim based on race discrimination. However, you may nevertheless find that the classification of "White male" is a classification based on gender. For example, under the AEP, White females were given the benefit of goals and objectives, while White males were not. Thus, but for Mr. Patoski's status as a male, he would have obtained the benefit of the AEP program. But since he was a male, he did not. His gender was the determinative factor as to whether Mr. Patoski was to be assisted by the AEP in this way. Therefore, if you hear evidence that Mr. Patoski was treated worse because he was a White male, you may find the presence of gender discrimination if you find that he would have been treated better had he been a White female.

Where discrimination is based on a combination of the plaintiff's sex and another, independent factor, this constitutes unlawful sex discrimination. Phillips v. Martin Marietta Corp., 91 S. Ct. 496 (1971) (recognizing "sex plus" theory, and holding that an employer may have violated Title VII by treating women with pre-school age children differently than men with similar children); Rosa v. Park West Bank & Trust Co., 214 F.3d 213, 215-

22

216 (1st Cir. 2000) (discrimination against a man who wears female attire may constitute gender discrimination).

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 14

AGE DISCRIMINATION[1]

Federal law prohibits employment discrimination against people
because of their age. So for example, if an employer rejects a 48 year old,
and instead hires a 42 year old because of consideration of age, the law has
been violated. The burden of proving the age discrimination claim rests on
Mr. Patoski. If you find that Mr. Patoski would have been promoted had he
been younger, that would be an illegal act. If you so find, then you should
answer "Yes" to the fourth question on the jury verdict form which asks
about the presence of age discrimination. As with the gender discrimination
claim, you may consider all of the evidence before you as to whether Mr.
Patoski would have been promoted if he were younger.

29 U.S.C. § 633a (ADEA); O'Connor v. Consolidated Coin Caterers Corp.,
116 S. Ct. 1307, 1309-1310 (1996) (older worker may recover for age
discrimination, even if the person selected for the position was over 40 years
old – "The fact that one person in the protected class has lost out to another
in the protected class is thus irrelevant, so long as he has lost out *because of
his age*") (emphasis in original); General Dynamics v. Land Systems, Inc. v.
Cline, 124 S. Ct. 1236, 1247 (2004) (quoting Senator Javits, that "if two
individuals ages 52 and 42 apply for the same job, and the employer selected

---

[1]  There is, apparently, no right to a jury trial for ADEA claims against the Federal Government.
Consequently, Plaintiff requests that this Court submit the age discrimination claims to the jury on an
advisory basis. Fed. R. Civ. P. 39(c).

the man aged 42 solely . . . because he is younger than the man 52, then he
will have violated the act");

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 15

COMBINATION OF GENDER AND AGE DISCRIMINATION

Finally, you will be given the opportunity to decide if Mr. Patoski was

discriminated against based on a combination of gender discrimination and

age discrimination.

The "sex +" doctrine permits recovery under Title VII for gender discrimination, where
the plaintiff's theory is not that the employer discriminated against an identifiable class as
a whole, but instead the employer disparately treated a subclass within the protected
class.[2] Thus, a claim of gender discrimination is cognizable under Title VII where an
employer discriminates based on a combination of gender and age. Arnett v. Aspin, 846
F. Supp. 1234, 1237-1241 (E.D. Pa. 1994) (recognizing sex plus age theory arising solely
under a Title VII gender discrimination claim against Federal employer, without regard to
the ADEA); Hall v. Missouri Highway & Transp. Com'n, 995 F. Supp. 1001, 1005 (E.D.
Mo. 1998) (recognizing sex plus age claim under Title VII); EEOC Memorandum,
Intersectional Discrimination, § 2, example 3, March 19, 1997 (recognizing intersectional
discrimination as a priority issue for the EEOC, and explicitly recognizing a prohibition
on discrimination based on gender plus age); Brown v. Trustees of Boston University,
891 F.2d 337, 352 (1st Cir. 1989) (properly worded instruction permits jury to consider
combinations of protected class statuses as a reason for termination).

Since the gender discrimination claims embrace a right to a jury under Title VII, a
combination gender/age claim arising under Title VII includes a right to a jury as well,
because by nature, a combination claim asks whether gender discrimination was part of
the reason for the rejection. Curtis v. Loether, 415 U.S. 189, 196 n.11 (1974) (where a
legal claim is joined with an equiable claim, the right to a jury trial on the leal claim,
including all issues common to both claims, remains intact); Tull v. United States, 107 S.
Ct. 1831, 1839 (1987); Dragon v. Dept. of Mental Health, Retardation & Hosp., 936 F.2d
32, 37 (1st Cir. 1991).  While the ADEA does not provide for a jury trial in claims against

---

[2]  Plaintiff is also, in the alternative, pursuing gender claims, in which he is alleging that gender was a
motivating factor in the rejection, and that but for consideration of his gender, he would have been
promoted to the Community Builder position

the employer, the gender plus age claim is being pursued as a jury-worthy claim solely pursuant to Title VII.[3]

---

[3]   To the extent that this Court prevents the gender/age combination claim from being heard by the jury, Plaintiff reserves his right to recast the claim to be tried before the court as relying on Title VII, the ADEA, and/or a combination of both.

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 16

SPOILATION OF EVIDENCE

The employer in this case has an obligation to retain relevant evidence during the pendancy of the case.  You are permitted to draw inferences adverse to HUD to the extent that it has failed to retain relevant documents.


Taydus v. Cisneros, 902 F. Supp. 288, 296 (D. Mass. 1995)

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 17

DAMAGES

If you find that HUD engaged in unlawful conduct, you must then consider what the measure of damages is. In other words, you will asked how much money would fairly compensate Mr. Patoski for the harm caused by the discrimination. The purpose of the award of money is to, as much as is possible and fair, place the Plaintiff in the same position he would have been had he not been the victim of discrimination. In awarding compensatory damages, you may award monetary damages to compensate Mr. Patoski for lost pay and benefits, emotional and physical pain and suffering, and interest that Mr. Patoski would have received from that money. I will further describe each of these categories for you.

Title VII of the Civil Rights Act of 1964, as amended, § 706(g)(1), 42 U.S.C. § 2000e-5(g)(1) (1998); Civil Rights Act of 1991, § 1977A, 42 U.S.C. § 1981a (1998); *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001).

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 18

LOST WAGES AND BENEFITS

If you find that discrimination was the "but for" reason for the failure to promote Mr. Patoski, you may award him his back pay and benefits, that is, the amount that he would have earned, to the date of your verdict, but for the discrimination, reduced by the amount of his actual earnings during that period. In other words, you are being asked to determine the amount of money Mr. Patoski lost due to HUD's decision.

You may also award Mr. Patoski front pay, that is, the amount of pay and benefits that he will lose from the date of your verdict into the future. In determining this figure, you may take into account losses to Mr. Patoski's pension. In determining front pay, you should take into account what the plaintiff would have earned but for the discrimination against him, reduced by the amount that he will earn. You should award the present value of the amount of money that you find that Mr. Patoski has lost in front pay.

Lost back and front pay need not be calculated to a mathematical certainty. You need only have a reasonable basis for estimating the amount of wage and benefit loss that Mr. Patoski has suffered and will suffer in the future.

30

42 U.S.C. §2000e-5; <u>Weaver v. Casa Gallardo, Inc.</u>, 922 F.2d 1515, 1528 (11th Cir. 1991); <u>Pollard v. E.I. du Pont de Nemours & Co.</u>, 532 U.S. 843 (2001) (front pay).

Under 42 U.S.C. § 1981a(b)(2), the Court is ultimately responsible for assessing back pay damages. Regardless of whether the Court is ultimately responsible for assessing such damages, it may still allow the jury to first pass on the issue in an advisory capacity under Rule 39(c) of the Federal Rules of Civil Procedure.

"In this circuit, juries are generally entrusted with decisions on back pay when the jurors are already resolving issues of liability and compensatory damages." <u>Johnson v. Spencer Press of Maine, Inc.</u>, 364 F.3d 368, 379-380 (1st Cir. 2004) (Title VII claim). Thus, it is better, and consistent with general practice, to submit the claim to jury determination.

Nothing in these jury instructions should be interpreted as indicating that back pay falls within the category of "compensatory" damages for the purposes of the damages cap contained in 42 U.S.C. § 1981a(b)(3).

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 19

EMOTIONAL AND/OR PHYSICAL PAIN AND SUFFERING

In addition to back pay and front pay and benefits, you may award

Mr. Patoski damages for emotional pain, physical suffering, inconvenience,

mental anguish, loss of enjoyment of life, loss of reputation and other non-

monetary losses that were caused by the unlawful discrimination. You must

decide what amount of money would reasonably compensate Mr. Patoski for

what he has endured as a result of the discrimination and what he will suffer

in the future.

In awarding emotional distress, you should consider the effect on the

unlawful discrimination on the plaintiff. You may award emotional distress

damages even if there were other factors in Mr. Patoski's life that also

caused him stress. Thus, if the discrimination exacerbated a pre-existing

condition, you may award an amount that will compensate Mr. Patoski for

the increase in suffering caused by the illegal conduct.

It is understood that awarding emotional and physical pain and

suffering damages is an imprecise exercise. Mathematical certainly is not

required. In order to award such damages, you should use your common

sense, consider the severity and duration of the suffering, and Mr. Patoski's demeanor to fairly compensate the Plaintiff.

When and if you award an amount of money to fairly compensate Mr. Patoski for emotional distress, you should be aware that damages for emotional distress are taxable as income.

Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843 (2001).  Civil Rights Act of 1991, §§ 1977A(b)(2) and 1977A(b)(3), 42 U.S.C. §§ 1981a(b)(2) and 1981a(b)(3) (1998); McKinnon v. Kwong Wah Restaurant, 83 F.3d 498, 506 (1st Cir. 1996) (take victim as found); Norfolk & Western R Co. v. Liepelt, 444 U.S. 490, 497-8 (1980) (tax instruction).

PATOSKI V. JACKSON
C.A. NO. 05-11086 RCL
PLAINTIFF'S PROPOSED INSTRUCTION 20

## PREJUDGMENT INTEREST

As part of compensatory damages, you may award lost interest on the amount of money you award for compensatory damages based on past injuries. An award of interest may be added, so that Mr. Patoski is not disadvantaged by the period of time in which he has not had control over the money which he deserves. For example, you may award lost interest on the pay and benefits that Mr. Patoski lost prior to trial. However, you may not award interest based on the pay and benefits awarded for front pay, which are loses that will occur in the future. Similarly, you may award interest on emotional distress and physical suffering damages occurring in the past, but not in the future.

Under 42 U.S.C. § 1981a(b)(2), the Court is ultimately responsible for assessing interest. Regardless of whether the Court is ultimately responsible for assessing such damages, it may still allow the jury to first pass on the issue in an advisory capacity under Rule 39(c) of the Federal Rules of Civil Procedure.

In the alternative, Plaintiff suggests that his requests for interest be considered by way of post-trial motions, so that evidence concerning interest not be introduced at trial.

Respectfully submitted,

The Plaintiff
By his attorneys,


_____/s/ Robert S. Mantell_____
Kevin G. Powers
BBO# 405020
Robert S. Mantell
BBO# 559715
Rodgers, Powers & Schwartz LLP
18 Tremont Street, Suite 500
Boston, MA  02108
(617) 742-7010, ext. 305
fax (617) 742-7225

Patoski jury instructions

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD S. PATOSKI,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　　)　　　　C.A. No. 05-11086 RCL
v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
ALPHONSO JACKSON, SECRETARY,　　)
DEPARTMENT OF HOUSING AND　　　)
URBAN DEVELOPMENT,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　　　)
　　　　　　　　　　　　　　　　　　)

## PLAINTIFF'S REQUESTS FOR SPECIAL VERDICT QUESTIONS

Pursuant to Fed. R. Civ. P. 49(a), Plaintiff Richard S. Patoski hereby submits his requests for Special Verdict Questions.

## GENDER DISCRIMINATION

1.　　Was the consideration of gender a motivating factor in HUD's rejection of Mr. Patoski's application for the Community Builder position?

　　　　　Yes _____　　　　　No _____

2.　　Do you find that Mr. Patoski would have been hired as a Community Builder if gender had not been considered?

　　　　　Yes _____　　　　　No _____

AGE DISCRIMINATION

4.    Do you find that Mr. Patoski would have been hired as a Community Builder if he had been younger?

                Yes _____              No _____


COMBINATION OF AGE AND GENDER DISCRIMINATION

5.    Do you find that Mr. Patoski would have been hired as a Community Builder but for a combination of age and gender discrimination?

                Yes _____              No _____


        If you have answered "No" to <u>all</u> of the Questions 2 through 5, stop and inform the court.  If you answered "Yes" to any one or more of Questions 2 through 5, please continue.


DAMAGES

6.    What amount of money do you award Mr. Patoski for his lost pay and benefits, incurred up until the time of trial?

                                _____


7.    What amount of money do you award Mr. Patoski for his lost pay and benefits, which will be lost in the future?

                                _____

8.      What amount of money do you award Mr. Patoski for his emotional distress, anguish, inconvenience and/or loss of enjoyment of life?

_____

9.      What amount of money do you award Mr. Patoski for lost interest?

_____

INFORM THE COURT THAT YOU HAVE COMPLETED THE QUESTIONNAIRE.

Respectfully submitted,

The Plaintiff
By his attorneys,


_____/s/ Robert S. Mantell_____
Kevin G. Powers
BBO# 405020
Robert S. Mantell
BBO# 559715
Rodgers, Powers & Schwartz LLP
18 Tremont Street, Suite 500
Boston, MA  02108
(617) 742-7010, ext. 305
fax (617) 742-7225
RMantell@TheEmploymentLawyers.com

Patoski jury verdict form 49a

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

RICHARD PATOSKI,           )
                          )
          Plaintiff,    )
                          )
     v.                )
                          )     Civil Action No. 05-1108-RCL
ALPHONSO JACKSON, Secretary,  )
Department of Housing and Urban  )
Development,             )
                          )
          Defendant.   )
_____)

**DEFENDANT'S PRELIMINARY REQUEST
FOR JURY INSTRUCTIONS**

      Defendant Alphonso Jackson, ALPHONSO JACKSON, Secretary, Department of Housing and Urban Development, submits the following proposed jury instructions and special verdict form. Defendant requests leave to submit supplemental requests for instructions and special verdict questions, as needed, following any further Pretrial Conference, during trial, or following the close of evidence in this case.

                        Respectfully submitted,

                        ALPHONSO JACKSON,
                        Secretary
                         Department of Housing and Urban Development

                        By his attorneys,

                        MICHAEL J. SULLIVAN
                        United States Attorney

                        _____
                        Mark J. Grady
                        Assistant U.S. Attorney
                        United States Courthouse, Suite 9200
                        1 Courthouse Way
                        Boston, MA  02210
                        (617) 748-3100

DEFENDANT'S PROPOSED INSTRUCTION NO. 1

Opening Instructions -- Nature of Case, General Instructions

Members of the jury, you are about to begin the trial of the case about which you heard some details during the process of jury selection. Before the trial begins, however, there are certain instructions you should have in order to better understand what will be presented before you and how you should conduct yourself during the trial.

The party who brings a lawsuit is called a plaintiff. In this action, the plaintiff is Richard Patoski. The party against whom the suit is brought is called a defendant.  In this action, the defendant is Alphonso Jackson,  Secretary of the Department of Housing and Urban Development. Your role in this trial will be to decide disputed issues of fact. I will decide all questions of law that arise during the trial, and before you retire to deliberate at the close of the case, I will instruct you on the law that you must follow and apply in deciding upon your verdict.

Since you will be called upon to decide the facts of this case, you should give careful attention to the testimony and evidence presented for your consideration, bearing in mind that I will instruct you at the end of the trial concerning the manner in which you should determine the credibility or believability of each witness and the weight to be given his or her testimony.

During the trial, however, you should keep an open mind and should not form or express any opinion about the case one way or the other until you have heard all of the testimony and evidence, the closing arguments of the lawyers, and my instructions to you on the applicable law.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else, nor should you permit anyone to discuss it in your presence.

From time to time during the trial, I may be called upon to make rulings of law on objections or motions made by the lawyers. It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. You should not show prejudice against an attorney or his client because the attorney has made objections. You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. And if I sustain on objection to a questions that goes unanswered by the witness, you should not draw any

2

inferences or conclusions from the question itself.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing with regard to questions of law or procedures that require consideration by the Court alone. On some occasions you may be excused form the courtroom for the same reason.  I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly at times.

DEFENDANT'S PROPOSED INSTRUCTION NO. 2

Overview of Claims

This is an employment action brought by plaintiff Richard Patoski against the Secretary of the Department of Housing and Urban Development. Mr. Patoski alleges that the United States Department of Housing and Urban Development ("HUD") discriminated against him based on his gender by failing to select him for a 1997 "Community Builder" position at HUD. Mr. Patoski also alleges that HUD discriminated against him on the basis of his age, 49, when it selected a younger applicant for the position.

Under the law, however, age discrimination claims against a federal entity, like HUD, are to be decided by the Court without the assistance of the jury.[1] I therefore caution you that although you may hear evidence as to the plaintiff's claims of age discrimination, the issue of age discrimination is not before you, as this is a matter for the Court's consideration. Further, you should not rely upon evidence of any alleged age discrimination in reaching your conclusion as to whether there has been discrimination against Mr. Patoski on account of his male gender.

HUD denies Mr. Patoski's allegation and contends that its actions were justified by legitimate business justifications, namely, that because the Community Builder position would interact extensively with state and local government officials, HUD wished its Community Builders to have exceptional interpersonal skills. HUD contends that because HUD had received complaints from local officials about Mr. Patoski and had concerns about his interpersonal skills, he was not selected for the position.

It is your responsibility to decide whether Mr. Patoski has proven his claim by a preponderance of the evidence.

---

[1] See Lehman v. Nakshian, 453 U.S. 156, 160 (1981). There has been no waiver of sovereign immunity as to trial by jury for such claims. Nor to the extent that the Plaintiff claims "mixed" age and gender discrimination, can the plaintiff point to an express waiver of sovereign immunity authorizing a jury trial on claims of "mixed" gender and age discrimination.

DEFENDANT'S PROPOSED INSTRUCTION NO. 3

Burden of Proof

In a civil case such as this, the plaintiff, Richard Patoski, has the burden of proving each and every element of his claim by a preponderance of the evidence.  I will explain in a moment the essential elements that Mr. Patoski must prove.  If you find that any one of the elements has not been proven by a preponderance of the evidence, you must return a verdict for the defendant on that claim.

What does "preponderance of the evidence" mean?  To establish something by a "preponderance of the evidence" means to prove that something is more likely so than not so.  In other words, Mr Patoski has the burden of introducing evidence with sufficient convincing force to persuade you that each of the essential elements of her claim is more likely true than not true.

If Mr. Patoski has failed to establish by a preponderance of the evidence any one of the necessary elements or facts which she must prove in order to sustain her claim, then it will be your sworn duty to return a verdict for the defendant.  If the plaintiff fails to prove even one of the necessary elements of his claim, then he will have failed to prove his case, and you must return a verdict for the defendant on that claim.

Authority

Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, § 72.01 (4th. ed.).

DEFENDANT'S PROPOSED INSTRUCTION NO. 4

EVIDENCE

Unless you are otherwise instructed, the evidence from which you are to decide the facts consists of: (1) the sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness; (2) the exhibits that have been received into evidence; and (3) any facts to which both sides have agreed or stipulated.   This is the only evidence that you should consider in reaching your verdict.

Authority

Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, §71.08 (4th. ed.).

<u>DEFENDANT'S PROPOSED INSTRUCTION NO. 5</u>

<u>WHAT IS NOT EVIDENCE</u>

Certain things are not evidence and you may not consider them in deciding what the facts are.  I will list them for you:

1.      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.  Nor should you give any weight to the questions asked by the lawyers.  Questions are not evidence; the evidence is to be found in the answers given by the witnesses.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition if testimony or exhibits have been received only for a limited purpose, you must follow the limiting instructions I have given.

4.      Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

5.      Under our system of law, anyone can file papers in court to allege and claim anything they want against others.  A complaint, however, is not evidence.

When the plaintiff filed her complaint in the present case, he undertook the burden to prove what he alleged.  The mere fact that Mr Patoski alleged or stated a claim is not proof that what he claims is true.

<u>Authority</u>

Devitt, Blackmar & Wolff, <u>Federal Jury Practice and Instructions</u>, § 70.03 (4th. ed.).

<u>DEFENDANT'S PROPOSED INSTRUCTION NO. 6</u>

<u>INFERENCES DEFINED--PRESUMPTION OF REGULARITY--ORDINARY</u>
<u>COURSE OF BUSINESS--OBEDIENCE TO LAW</u>

I have instructed you that you are to consider only the evidence in the case.  But in your consideration of the evidence you are not limited to what you see and hear as the witnesses testify. You are permitted to draw, from facts that you find have been proved, such reasonable inferences as seem justified in light of your experience.

Inferences are deductions or conclusions that reason and common sense lead you to draw from facts that have been established by the evidence in the case.

The law presumes that a certain state of affairs is true.  Because of the law's presumption, unless and until outweighed by evidence in the case to the contrary, you may find that official duty has been regularly performed; that the ordinary course of employment has been followed; and that the law has been obeyed.

<u>Authority</u>

Devitt, Blackmar & Wolff, <u>Federal Jury Practice and Instructions</u> § 72.04 (4th ed.)

DEFENDANT'S PROPOSED INSTRUCTION NO. 7

CREDIBILITY OF WITNESSES

In deciding what the facts are, you must consider all the evidence. In doing this, you must decide which testimony to believe and which testimony not to believe. You may disbelieve all or any part of any witness's testimony. In making that decision, you may take into account a number of factors including the following:

1. Was the witness able to see, or hear, or know the things about which that witness testified?

2. How well was the witness able to recall and describe those things?

3. What was the witness's manner or demeanor while testifying?

4. Did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?

5. How reasonable was the witness's testimony considered in light of all the evidence in the case?

6. Was the witness's testimony contradicted by what that witness has said or done at another time, or by the testimony of other witnesses, or by other evidence?

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider therefore whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail. Similarly, inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

9

These are some of the factors you may consider in deciding whether to believe testimony.

The weight of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other.  You must consider all the evidence in the case, and you may decide that the testimony of a smaller number of witnesses on one side has greater weight than that of a large number on the other.

All of these are matters for you to consider in finding the facts.

<u>Authorities</u>

<u>United States v. Ovimette</u>, 798 F.2d 47, 49 (2d Cir. 1986); Devitt, Blackmar & Wolff, <u>Federal Jury Practice and Instructions</u>, § 73.01 (4th. ed.).

DEFENDANT'S PROPOSED INSTRUCTION NO. 8

IMPEACHMENT--INCONSISTENT STATEMENTS OR CONDUCT

A witness may be discredited or impeached by contradictory evidence; or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

Authority

Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, § 73.04 (4th. ed.).

DEFENDANT'S PROPOSED INSTRUCTION NO. 9
DISCRIMINATION: THE MCDONNELL-DOUGLAS STANDARD

Mr. Patoski's first claim in this case is that the Department of Housing and Urban Development discriminated against him based on his gender when he applied for a Community Builder position in HUD's Boston Office in 1997. Mr. Patoski claims that HUD did not select him for the position because he is male.

To prevail on his claim of discrimination, Mr. Patoski must satisfy the following legal standard:

Mr. Patoski first must establish what is known as a prima facie case of discrimination. Specifically, he must demonstrate that: (1) he belongs to a statutorily protected group or class; (2) he applied for an available position for which he was qualified; (3) he was rejected for the position; and (4) the position subsequently was filled by a person outside of his group or class.

If Mr. Patoski establishes each of these elements, the burden shifts to the defendant to set forth nondiscriminatory reasons for why HUD did not select Mr. Patoski for the Community Builder position. It is not necessary for you to agree with the soundness or fairness of those reasons. All that is required is that the reasons put forth by HUD be nondiscriminatory -- in other words, that the reasons not be based on Mr. Patoski's gender.

Once the defendant has given a nondiscriminatory explanation for its decision, Mr. Patoski must then show both that: (1) defendant's proffered reasons for its decision are pretextual – in other words, that the defendant's explanation is false -- and that (2) the real reason HUD did not select Mr. Patoski for the Community Builder position was because of his gender.

At all times, the burden is on Mr. Patoski to prove that the reason he did not get the Community Builder position was because he was male.

Authorities

E.g., St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Conward v. Cambridge Sch. Comm., 171 F.3d 12, 19 (1st Cir. 1999); Champagne v. Servistar Corp., 138 F.3d 7, 13 (1st Cir. 1998); Udo v. Tomes, 54 F.3d 9, 13 (1st Cir. 1995); Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994);  Leblanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993); Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194, 200 (1st Cir. 1987) (holding that it is appropriate to instruct the jury on the McDonnell-Douglas burden shifting framework).

DEFENDANT'S PROPOSED INSTRUCTION NO. 10
LEGITIMATE BUSINESS REASONS: DEFENDANT'S BURDEN

If you find that Mr. Patoski has met the elements of a prima facie case under the legal

standard I have described to you, you must decide of HUD has offered a legitimate explanation for

why it did not select Mr. Patoski. It is not necessary for you to agree with the soundness or fairness

of those reasons.  All that is required is that the reasons put forth by the defendant be non-

discriminatory -- in other words, that the reasons not be based on Mr. Patoski's gender.

Authorities

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508-511 (1993); Randlett v. Shalala, 118 F.3d
857, 862 (1st Cir. 1997); Fennel v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996);
Hoeppner v. Crotched Mtn. Rehab. Ctr., Inc., 31 F.3d 9, 14, 17 (1st Cir. 1994); Byrd v. Ronayne, 61
F.3d 1026 (1st Cir. 1995); Pettiti v. New England Telegraph & Telephone Co., 909 F.2d 28, 33 (1st
Cir. 1990); see also Hazel v. Postmaster General, 7 F.3d 1, 3 (1st Cir. 1993).

14

<u>DEFENDANT'S PROPOSED INSTRUCTION NO. 11</u>
<u>PRETEXT FOR DISCRIMINATION</u>

If the defendant articulates non-discriminatory reasons for its actions, Mr. Patoski must then

show that the defendant's proffered reasons for its actions are pretextual – in other words, not true -

- <u>and</u> that the motivation for the disputed actions was to retaliate against Mr. Patoski for having

filed a discrimination complaint.  If you conclude that HUD's explanation is pretextual or false, you

may, but are not required to, infer that HUD's real reason was unlawful discrimination.  However, I

would caution you that your focus should be on whether Ms. Crane honestly, even if mistakenly,

believed that Mr. Patoski lacked the necessary interpersonal skills.


<u>Authorities</u>

<u>Rios Jimenez v. Principi</u>, 2008 WL 651630, 7 (1ˢᵗ Cir. March 13, 2008) ("The ultimate
burden of proving unlawful action rests at all times with Ríos-Jiménez.") (addressing burden
shifting analysis under Rehabilitation Act Claims).

<u>DeCaire v. Mukasey</u>, 2008 WL 642533, 16 (1ˢᵗ Cir. March 11, 2008) ("To the extent the
district court said it required DeCaire to present evidence beyond disproving the government's
arguments as pretext, that was error.");  <u>Azimi v. Jordan's Meats, Inc</u>., 456 F.3d 228, 246 (1ˢᵗ Cir.
2006) ("focus must be on the perception of the decisionmaker,' that is, whether the employer
believed its stated reason to be credible"); <u>Zapata-Matos v. Reckitt & Coleman, Inc</u>., 277 F.3d 40,
45 (1st Cir.2002);  ("We have adhered to a case by case weighing.... [D]isbelief of the reason may,
along with the prima facie case, on appropriate facts, permit the trier of fact to conclude that the
employer had discriminated."); <u>Ronda-Perez v. Banco Bilbao Vizcaya Argentaria-P.R.</u>, 404 F.3d
42, 44-45 (1st Cir.2005).

DEFENDANT'S PROPOSED INSTRUCTION NO. 12

MIXED MOTIVE

You have heard evidence that the defendant's treatment of the plaintiff was motivated by the plaintiff's gender and also by other lawful reasons.  If you find that the plaintiff's gender was a motivating factor in Hud's decision not to select him for the Community Builder position, the plaintiff is entitled to your verdict, even if you find that HUD's conduct was also motivated by a lawful reason.

However, if you find that the decision not to select Mr. Patoski was motivated by both his gender and by lawful reasons, you must also decide whether HUD would have reached the same decision if the plaintiff's gender had played no role in the employment decision.  That is, you must decide if HUD would have decided not to hire Mr. Patoski for the Community Builder position if his gender had not been considered.   HUD has the burden of proving by a preponderance of the evidence that it would not have selected Mr. Patoski for the Community Builder position if his gender had not been taken into account.

Authorities

Desert Palace, Inc. v. Costa,  539 U.S. 90, 96-97 (2003).

DEFENDANT'S PROPOSED INSTRUCTION NO. 13

MANAGEMENT DECISIONS

To satisfy his burden of proof on his discrimination claim, it is not simply enough for Mr. Patoski to challenge the validity or soundness of HUD's stated reasons for not selecting him for the Program Manager position. The issue in this case is <u>not</u> whether HUD made a wise or unwise personnel decision or whether it correctly or incorrectly judged the qualifications of the candidates for the Community Builder position. The only issue before you is whether the reason that Patoski didn't get the Community Builder position is because of the fact that he was male.

Authorities

Ronda-Perez v. Banco Bilbao Vizcaya Argentaria--Puerto Rico, 404 F.3d 42, 47 (1st Cir. 2005) ("Title VII does not ensure against inaccuracy by an employer, only against gender-based discrimination.")(quoting Rivas Rosado v. Radio Shack, Inc., 312 F.3d 532, 534-535 (1st Cir. 2002)); Connell v. Bank of Boston, 924 F.2d 1169, 1181 (1st Cir. 1991) (Torres, concurring) ("It is not enough for the employee to challenge, or even disprove, the validity or soundness of the stated reason. The employee must present evidence warranting a finding that the employer was not genuinely motivated by that reason . . . "); Morgan v. Massachusetts General Hospital, 901 F.2d 186, 191 (1st Cir. 1990); Gray v. New England Tel. & Tel. Co., 792 F.2d 251, 255 (1st Cir. 1986) ("It is not enough to show that the employer made an unwise business decision, or an unnecessary personnel move . . . [or] that the employer acted arbitrarily or with ill will."); Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1986). ("Title VII liability cannot rest solely upon a . . . determination that an employer misjudged the relative qualifications of admittedly qualified candidates.");

DEFENDANT'S PROPOSED INSTRUCTION NO. 14

HONEST BELIEF

Similarly, if you conclude that the HUD supervisors honestly, but mistakenly, believed that Mr. Patoski was unsuited to the position because of a lack of interpersonal skills you may not find that discrimination was the motive for the non-selection.

Authorities

Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 246 (1st Cir. 2006) ("focus must be on the perception of the decisionmaker,' that is, whether the employer believed its stated reason to be credible"); Wright v. Murray Guard, Inc.,  455 F.3d 702, 708 (6th Cir. 2006) ("In determining whether an employer "reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action."); Price v. Thompson,  380 F.3d 209, 216 (4th. Cir. 2004); Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1363 n. 3 (11th Cir.1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."); Kariotis v. Navistar Int'l Trans. Corp., 131 F.3d 672, 676 (7th Cir.1997).

DEFENDANT'S PROPOSED INSTRUCTION NO. 15[2]

EVIDENCE REGARDING HUD EEO POLICIES

During the course of the trial, you may have heard evidence concerning certain EEO policies, plans and associated documents that were in effect at HUD at different points in time.  The mere existence of such EEO policies, standing alone, is insufficient to support a claim that HUD intentionally discriminated against Mr. Patoski based on his gender.  Mr. Patoski  bears the burden of proving: (1) that the EEO policies and documents on which he bases his claims were in effect at the time of his non-selection; (2) that those policies required or authorized the granting of discriminatory preferences based on race or gender; and (3) that a causal connection existed between the policies and HUD's decision not to select him for the Community Builder position – in other words, that the decision not to select him was motivated by such policies.


Authorities

Plumb v. Potter, 212 Fed. Appx. 472 (6th Cir. 2007) (statement indicating that an increase in diversity was what a facility "needed" is not evidence of discrimination);  Mlynczak v. Bodman, 442 F.3d 1050, 1058 (7th Cir. 2006)  ("Although Taboas was a decisionmaker and the evidence showed that he was philosophically favorable to the hiring of minorities, that does not prove that any particular decision he made was for discriminatory reasons."); Brown v. McLean, 159 F.3d 898, 904 (4th Cir. 1998);  Cerrato v. San Francisco Community College District, 26 F.3d 968, (9th Cir. 1993) ("[T]he mere fact of an affirmative action plan's existence is not relevant to proving discrimination unless the employer acted pursuant to the plan.") (citing other circuit cases); Pilditch v. Board of Education, City of Chicago, 3 F.3d 1113, 1118, 1119 (7th Cir. 1993) (same); Sampson v. Secretary of Transportation, 1999 WL 455399 (6th Cir. 1999) (same) (unpublished opinion); Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir.1991) (same) (per curiam) McQuillen v. Wisconsin Educ. Ass'n Council, 830 F.2d 659, 666 (7th Cir.1987); Jones v. Bernanke, 493 F. Supp.2d 18, 29 (D.D.C. 2007) (same); Reilly v. TXU Corp., 2006 WL 2586818, *13 (N.D. Tex. 2006) (same); Altizer v. City of Roanoke, Virginia,  2003 WL 1456514, *4 (W.D. Va. 2003) (same) Axel v. Apfel, 171 F. Supp.2d 522, 529 (D.Md. 2000)("[T]he mere existence of an Affirmative Employment Program plan is insufficient to prove discriminatory intent as there has been no proof that the actions of [the decision maker] were motivated by the plan.") (and cases cited); Lutes v. Goldin, 62 F. Supp.2d 118, 131-132 (D.D.C.,1999) (same); Blanke v. Rochester Telephone Corp., 36 F. Supp.2d 589, 597 -598 (W.D. N.Y. 1999) same); Brown v. Time, Inc., 1997 WL 231143, *4 (S.D. N.Y. 1997) (same); Payne v. Norwest Corp., 911 F. Supp. 1299, 1305-06 (D.

---

[2]If evidence concerning HUD's Affirmative Employment plan is admitted.

Mont. 1995) (same), *aff'd in part and rev'd on other grounds in part,* 113 F.3d 1079 (9th Cir.1997).

DEFENDANT'S PROPOSED INSTRUCTION NO. 16
EVIDENCE REGARDING HUD'S DESIRE FOR A DIVERSE WORKFORCE

You may have also heard evidence that HUD wishes its workforce to be diverse.  General

statements that an employer wishes its workforce to be diverse are not evidence of an intent to

discriminate.


Authorities

See, Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir.1991) (internal
memorandum stating that lists of candidates for Distinguished Professor "should include a very
significant representation of minorities and females" in no way suggested that appointments to that
position would be race-or gender-based) (per curiam); Altizer v. City of Roanoke, Virginia,  2003
WL 1456514, *4 (W.D.Va.2003) (statements deploring lack of diversity and that increasing
diversity is an important goal are not evidence of discrimination against males); Lutes v. Goldin, 62
F. Supp.2d 118, 131-132 (D.D.C.,1999) (numerous public statements about the importance of
diversity at NASA are not evidence of discrimination against males); Blanke v. Rochester
Telephone Corp., 36 F.Supp.2d 589, 597 -598 (W.D.N.Y.,1999) (statement of desire to increase
diversity is not evidence that males would be fired); Brown v. Time, Inc., 1997 WL 231143, *4
(S.D.N.Y. 1997) (newsletter circulated by defendant's chairman stating, "[W]e must make diversity
a reality . . . We must do as well at recruiting, retaining, and promoting minorities as we have with
women in publishing" "express[ed] a commitment to diversity, but d[id] not thereby suggest a
policy of discrimination"); Payne v. Norwest Corp., 911 F.Supp. 1299, 1305-06 (D.Mont.1995)
(internal memo that recommended increasing the number of women and minorities in certain
positions, and fact that company had diversity goals and kept statistics on the number of minorities
employed at managerial levels, did not give rise to inference that plaintiff was fired because he was
white), aff'd in part and rev'd on other grounds in part, 113 F.3d 1079 (9th Cir.1997).

DEFENDANT'S PROPOSED INSTRUCTION NO. 17

PATOSKI IS SOLE PLAINTIFF

At all times, the relevant issue on which you must focus your deliberations is the reason or reasons that Mr. Patoski was not selected for the Community Builder position. The only plaintiff in this case is Mr. Patoski. Accordingly, the only issue for your consideration is what happened to him, not what might have happened to other employees.

Authorities

Lesage v. Texas, 158 F.3d 213, 221 (5th Cir. 1998) (dispositive issue was whether plaintiff's application had been winnowed out prior to the alleged consideration of race in the selection process); Sims v. Ware, 1999 WL 637226 at *3-4 (N.D. Tex. 1999) (plaintiffs who were "out of the running" prior to defendant's alleged consideration of race had no standing to challenge promotion decision).

DEFENDANT'S PROPOSED INSTRUCTION NO. 18

DAMAGES--GENERAL INSTRUCTIONS

If you find that Mr. Patoski has established that he was denied the community builder position based upon discrimination, then you must determine the damages to which he is entitled from the defendant.

The fact that I instruct you on damages should not be taken by you as indicating one way or the other whether Mr. Patoski is entitled to recover anything. Instructions as to the measure of damages are given to you for your guidance in the event that you find from the evidence in favor of the plaintiff on the question of liability. In other words, you never reach the issue of damages if you find that the defendant did not discriminate or retaliate against Mr. Patoski.

Any damages you award must have a reasonable basis in the evidence. They need not be mathematically exact, but there must be enough evidence for you to make a reasonable estimate of damages without speculation or guesswork.

Authorities

Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, §§74.02, 85.14 (4th. ed.).

DEFENDANT'S PROPOSED INSTRUCTION NO. 19

ACTUAL DAMAGES

The purpose of awarding money damages to a plaintiff who has established the liability of a defendant is to compensate the plaintiff for injuries actually experienced that flowed as a direct and natural consequence of those acts.  Therefore, you may not award damages to Mr. Patoski unless he has proved by a preponderance of the evidence that he sustained actual injury[3] and that such injury was proximately caused by unlawful discrimination or retaliation committed against him.  Harm to Mr. Patoski that did not result from unlawful discrimination against him does not entitle the plaintiff to money damages.

By the same token, conduct by HUD that did not cause harm to Mr. Patoski does not entitle him to money damages, even if the conduct was illegal or may have caused harm to someone else. Damages may not be awarded based on your subjective perception of the abstract value or importance of the rights that Mr. Patoski claims were violated,[4] or be based on sympathy, speculation or guesswork.

The law also does not permit you to award any punitive damages in this case.  Thus, you may not base any monetary award on a desire to punish the defendant, to prevent any unlawful discrimination or retaliation from being repeated in the future, or to warn other employers not to engage in unlawful discrimination or retaliation.  Rather, any monetary award that you make must be calculated solely to provide fair compensation to Mr. Patoski for his actual injuries (if any) caused by unlawful discrimination committed against him, and on no other basis.[5]

---

[3] Memphis Comm. Schools v. Stachura, 477 U.S. 299, 308 (1986).

[4] Id. at 310.

[5] See 42 U.S.C. § 1981a(b)(1). See also, e.g., Robinson v. Runyon, 149 F.3d 507, 517 (6th Cir. 1998) ("Title VII, explicitly exempts government agencies from punitive damages"); Baker v. Runyon, 114 F.3d 668, 669-670 (7th Cir.1997) ("Congress, in enacting section 1981a, exempted all government agencies from the Act's punitive damage provision, with no articulated exceptions."); Beth v. Espy, 854 F. Supp. 735 (D. Kan. 1994) (no punitive damages against government under Title VII); Erickson v. Hunter, 932 F. Supp. 1380 (M.D. Fla. 1996) (same); Chambers v. Weinberger, 591 F. Supp. 1554 (N.D. Ga. 1984) (same).

<u>DEFENDANT'S PROPOSED INSTRUCTION NO. 20</u>

<u>PROXIMATE CAUSE</u>

An injury or damages is proximately caused by an act whenever it appears from the evidence in the case that the act played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act.

<u>Authorities</u>

<u>Carey v. Piphus</u>, 435 U.S. 247, 264 (1978); Devitt, Blackmar & Wolff § 80.18 (4th ed.); <u>Wood v. Strickland</u>, 420 U.S. 308, 319 (1975); Modern Federal Jury Instruction § 87.03, 87-178 (1992).

<u>DEFENDANT'S PROPOSED INSTRUCTION NO. 21</u>

<u>DAMAGES: COMPUTATION OF AMOUNT</u>

If you find that Mr. Patoski suffered actual injuries as a proximate result of discriminatory acts committed against him by the defendant, you must then fix the amount of money that will reasonably and fairly compensate him for such injuries.

In calculating any damages, you should <u>not</u> include any amounts for salary or job-related benefits that Mr. Patoski may have lost.  The award of those items of damages is the Court's responsibility to determine, not yours.  Accordingly, should you find the defendant liable, I will calculate and decide those amounts separately.

The only potential injuries that you are permitted to consider and for which you may award reasonable compensation are emotional distress injuries, such as emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.  In order to award damages for such injuries, however, you must find that the injuries were caused by the defendant's alleged discriminatory acts against Mr. Patoski.

<u>Authorities</u>

<u>Perez v. Rodrigues Bou</u>, 575 F.2d 21, 25 (1st Cir. 1978); Devitt, Blackmar & Wolff §§ 85.01, 85.02, 85.04.

In 1991, Congress broadened the waiver of sovereign immunity under Title VII to provide for an award of compensatory damages against the government where there has been a finding of discrimination or retaliation in employment. 42 U.S.C. § 1981a. Congress also provided that in cases where plaintiffs, including federal employees, seek compensatory damages, any party may request a jury trial. 42 U.S.C. § 1981a(c)(1).  Congress left intact the equitable relief available under Title VII.  Section 102(b)(2) of the Civil Rights Act of 1991 excludes from compensatory damages to be awarded by a jury "backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964."  42 U.S.C. § 1981a(b)(2); <u>see</u> <u>also</u> <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402, 423 n.19 (5th Cir. 1998) ("[T]he right to a jury trial provided by [42 U.S.C.] section 1981a(c) does not include the power to determine the availability of back pay or front pay. . . . These are equitable remedies to which no right to jury trial attaches."); <u>McCue v. State of Kansas</u>, 165 F.3d 784, 792 (10th Cir. 1999) ("Damages awarded under section 2000e-5(g) are equitable relief to be determined by the court, while damages awarded under section 1981a are legal damages that may be submitted to a jury.") ; <u>Pollard v. E.I. duPont de Nemours & Co.</u>, 532 U.S. 843, 851 (2001); <u>Landgraf v. USI Film Products</u>, 511 U.S. 244, 253 (1994)("the new compensatory damages provision of the 1991 Act is "in addition to," and does not replace or

duplicate, the backpay remedy allowed under prior law"); 42 U.S.C. § 2000e-5(g)(incorporated into federal sector programs by 42 U.S.C. § 2000e-16(d)); 42 U.S.C. § 1981a.

The traditional maxim that juries have authority only to award damages, and not equitable relief, applies in full force under Title VII. Therefore, the court, not the jury, continues to award equitable relief.  See, e.g., Peyton v. DiMario, 287 F.3d 1121 (D.C. Cir. 2002); Hemmings v. Tidyman's, Inc., 285 F.3d 1174 (9th Cir. 2002); Hertzberg v. SRAM Corp., 261 F.3d 651 (7th Cir. 2001), cert. denied, 122 S. Ct. 1070 (2002). Nevertheless, in determining appropriate equitable relief, the court is bound by the jury's findings of fact.  Lytle v. Household Manufacturing., Inc., 494 U.S. 545, 550 (1990)(where both legal and equitable relief claimed, plaintiff has right to jury trial on all factual issues common to both); Fogg v. Ashcroft, 254 F.3d 103, 110 (D.C. Cir. 2001)(jury's resolution of common factual issues binding on court in fashioning equitable relief)(citing Kolstad v. American Dental Association, 108 F.3d 1431, 1440 (D.C. Cir. 1997), vacated on other grounds, 527 U.S. 526(1999)); Selgas v. American Airlines, Inc., 104 F.3d 9, 14-15 (1st Cir. 1997)(court should rely only on evidence admitted at trial or during supplemental hearing on equitable issues); Sailor v. Hubbell, Inc., 4 F.3d 323, 325 (4th Cir. 1993)(jury resolves issues of liability and legal relief, then court determines whether equitable relief appropriate and, if so, to what extent). See also McCue v. Kansas Department of Human Resources, 165 F.3d 784, 791 (10th Cir. 1999)(because equitable relief within the trial court's province, appeals court vacated jury award of front pay with directions to the trial court to determine amount); Kolstad v. American Dental Association, 108 F.3d 1431, 1440 (D.C. Cir. 1997)(court must make its own findings and conclusions with respect to equitable issues, although an advisory jury may be used), vacated on other grounds, 527 U.S. 526 (1999).

DEFENDANT'S PROPOSED INSTRUCTION NO. 22A[6]

MEDICAL RECORDS - PATOSKI'S STATEMENTS TO DOCTORS DO NOT CARRY
WEIGHT OF A MEDICAL JUDGMENT OR DIAGNOSIS

In some instances doctors and other medical professionals have written down in their
medical records the plaintiff's statements about his perceived medical condition and symptoms.
You may only consider these statements as evidence that Mr. Patoski related certain matters to his
doctors.  Even if you believe that Mr. Patoski made those statements, they are nothing more than his
perceptions, as related to her doctors, and are not to be considered a medical diagnosis or
professional opinion.  Only the doctors' statements of diagnosis reflect professional medical
judgments.

Authority

Petrocelli v. Gallison, 679 F.2d 286, 292 (1st Cir. 1982); McCormick on Evidence § 277 at 234 (5th
ed. 1995)

---

[6]If medical records of any kind are admitted.

DEFENDANT'S PROPOSED INSTRUCTION NO. 23

VERDICT -- UNANIMOUS -- DUTY TO DELIBERATE

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges--judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Authority

Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, § 74.01 (4th. ed.).

29

Respectfully Submitted,


JOHN E. POTTER, Postmaster General

By his attorneys,

MICHAEL J. SULLIVAN
United States Attorney


By:   /s/ Mark Grady
Mark J. Grady
Assistant U.S. Attorney
1 Courthouse Way. Suite 9200
Boston, MA  02210
(617) 748-3136

**SPECIAL VERDICT FORM**

Pursuant to Fed. R. Civ. P. 49(a), Defendant, Alfonso Jackson, hereby submits his requests for Special Verdict Questions.

1.    Did Mr. Patoski prove by a preponderance of the evidence that his gender was a motivating factor in HUD's decision not to select him for the Community Builder position

        YES                    NO

[If you answered Question 1 "No," stop here , have the foreperson sign this Special Verdict Form and return it to the Court as the verdict of the jury.]

[Alternatively, if you answered "Yes," proceed to Question 2]

2.    Did HUD prove by a preponderance of the evidence that even if Mr. Patoski's  gender had not been a motivating factor in his non-selection, HUD still would have selected someone other than Mr. Patoski for the Community Builder position?

        YES                    NO

[If you answered Question 2, "Yes," stop here, have the foreperson sign this Special Verdict Form and return it to the Court as the verdict of the jury.]

[Otherwise, proceed to the next question.]

3.    Do you find by a preponderance of the evidence that Mr. Patoski suffered any emotional pain, suffering, inconvenience, mental anguish or loss of enjoyment of life as a proximate result of any discriminatory or retaliatory acts that HUD committed against him?

[If you answered Question 3, "No," stop here, have the foreperson sign this Special Verdict Form and return it to the Court as the verdict of the jury.]

[Otherwise, proceed to the next question.]

4.       What sum of money, if any, will fairly and reasonably compensate Mr. Patoski for any emotional pain, suffering, inconvenience, mental anguish or loss of enjoyment of life that he suffered as a proximate result of any discriminatory or retaliatory acts that HUD committed against him?   (The Court will determine any damages based on lost salary and benefits.)

_____

Date: _____          _____
                             Signature of Foreperson

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| RICHARD PATOSKI, ) | |
| ) | Civil Action No. 05-11086-RCL |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ALPHONSO JACKSON, Secretary, ) | |
| Department of Housing and Urban ) | |
| Development, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO PLAINTIFF'S CLAIMS OF AGE DISCRIMINATION

Defendant Alphonso Jackson, ALPHONSO JACKSON, Secretary, Department of

Housing and Urban Development, submits the following proposed findings of fact and

conclusions of law.  Defendant requests leave to submit supplemental proposed findings of fact

and conclusions of law, as needed, following any further Pretrial Conference, during trial, or

following the close of evidence in this case.

Respectfully submitted,
MICHAEL J. SULLIVAN,
United States Attorney

By:    /s/ Mark J. Grady
Mark J. Grady, Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA  02210
617-748-3136

**<u>Findings of Fact</u>**

1.    In 1997, HUD announced the creation of a new position, the "Community Builder."

2.    The Plaintiff was one of 11 candidates who made the best qualified list for the Community Builder Position in the Boston office.

3.    There were four positions to be filled in the Boston Office.

4.    Jose Cintron, then Acting Deputy Assistant Secretary for Public and Indian Housing in Washington, D.C., (then 44 years old), was the Selecting Officer for the Boston CB vacancies in December 1997.

5.    In making his selection, Mr. Cintron communicated with Mary Lou Crane, the Secretary's Representative for New England, regarding the applicants for the Boston Community Builder position.

6.    Ms. Crane told Mr. Cintron that she felt that Mr. Patoski lacked the necessary interpersonal skills for the position.

7.    As a result of Ms. Crane's recommendation, Patoski (male, age 49) was ranked last of the eleven candidates.

8.    The persons offered the four community builder positions who accepted were Ms. Pellegrino (female, age 28), Ms. Griswold (female, age 42), Mr. Polito (male, age 40), and Mr. Bernard (male, age 55).

9.    Two applicants Ms. Teninga (female, age 47) and James Reeves (male) were selected for the position but declined the position.

10.    Robert Paquin, a supervisor of Plaintiff, testified that he had needed to speak to Patoski concerning his interactions with co-workers because he had been "sharp" with people in the office.

11.    Arthur Tonnin, Patoski's immediate supervisor, also testified in the administrative proceedings.  Arthur T. Testified that he had received complaints about Mr. Patoski prior to 1998 and that there were problems with interpersonal skills in the office.

12.    Bruce Tobey, the former mayor of Gloucester, testified that he experienced difficulties in dealing with Patoski and had complained to HUD.

13.    To the extent that Plaintiff would rely upon statements in Cintron's EEO affidavit as evidence of age based discrimination, no rational factfinder could conclude that such statement are evidence of age discrimination.

14.    What Cintron said was: 'I did not intend to select anyone who did not have the people

skills.  As a rule, program requirements can be learned, but it is more difficult, if not impossible, to learn new or change old behaviors.'  Cintron Aff. at 4 (<u>See</u> Defendant's Statement of Fact In support of the Motion for Summary Judgment, Ex. 20).

15.    The statement thus concerned the relative ease with which one can learn HUD programs as opposed to the difficulties of reforming ones personality-based behaviors.  Viewed in the context in which it was made, the statement is not one which a rational factfinder could find to be ageist.

16.    Based upon the testimony of Citron, Crane, Tonnini, Paquin and Obey, I find that HUD's explanation for failing to hire the Plaintiff is credible.

17.    Based upon the testimony of Crane, I find that Crane personally believed that Pastoski lacked the necessary interpersonal skills.

## Conclusions of Law

1.    The United States is entitled to immunity from suit without its consent.  <u>Muirhead v.
      Mecham</u>, 427 F.3d 14, 17 (1st Cir. 2005).

2.    "When Congress has waived the sovereign immunity of the United States, it has almost
      always conditioned that waiver upon a plaintiff's relinquishing any claim to a jury trial."
      <u>Lehman v. Nakshian</u>,  453 U.S. 156, 161 (1981).

3.    In assessing whether Congress has created a right to a jury trial for mixed claims of age
      and gender discrimination, as is asserted by Plaintiff, the appropriate inquiry  "is whether
      Congress clearly and unequivocally departed from its usual practice in this area. . ."
      <u>Lehman v. Nakshian</u>, 453 U.S. 156, 162 (1981).

4.    "[T]he plaintiff in an action against the United States has a right to trial by jury only
      where Congress has affirmatively and unambiguously granted that right by statute.
      <u>Lehman v. Nakshian</u>,  453 U.S. 156, 168 (1981).

5.    There is no right to a jury trial on claims of age discrimination.  <u>Lehman v. Nakshian</u>,
      453 U.S. 156, 161 (1981); <u>see</u> <u>also</u>, <u>Gomez-Perez v. Potter</u>,  476 F.3d 54, 60 (1st Cir.
      2007) (favorably citing <u>Lehman</u> for the proposition that "Congress did not intend for §
      626(c), which provides for jury trials in private-sector age discrimination suits, to apply
      to federal employees.").

6.    Under the ADEA, an employer is prohibited from taking an adverse employment action
      against an employee who is forty years of age or older because of the latter's age.  <u>See</u> 29
      U.S.C. §§ 623(a)(1), 631(a).

7.    An employee who claims to have been denied a job opportunity because of his age bears
      the ultimate burden of establishing that age was the determinative factor in the employers
      decision to deny the employee the job opportunity, that is, the burden to establish that he
      would not have been denied the opportunity but for his age.  <u>See</u> <u>Bennett v. Saint-Gobain
      Corp.</u>, 507 F.3d 23 (1st Cir. 2007).

8.    When no direct proof of discrimination exists, the employee may rely on circumstantial
      evidence to prove discrimination. A prima facie case of discrimination may be
      established through the by-now-familiar burden-shifting framework first limned by the
      Supreme Court. <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05, 93
      (1973); <u>Bennett v. Saint-Gobain Corp.</u>,  507 F.3d 23, 30 (1st Cir. 2007).

9.    In the first instance, the plaintiff/employee must establish the modest requirements of a
      prima facie case, showing (1) that he was at least forty years of age at the time the job
      opportunity was denied, (2) that his job performance met or exceeded his employers
      legitimate expectations, (3) that he was not selected for the position, and (4) the employer
      had a continuing need for a person to fill the position.  <u>Bennett v. Saint-Gobain Corp</u>.
      507 F.3d 23, 30 (1st Cir. 2007); <u>see</u> <u>Clifford v. Barnhart</u>, 449 F.3d 276, 280-81 (1st Cir.

2006); <u>Sanchez v. Puerto Rico Oil Co.</u>, 37 F.3d 712, 719 (1st Cir. 1994).

10.    "Once the plaintiff makes out his prima facie case, the burden of production (but not the burden of proof) shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the dismissal.  If and when the defendant satisfies its burden of production, the plaintiff no longer can rest on the initial inference of discrimination but, rather, must show that the defendant's articulated reason is pretextual." <u>Bennett v. Saint-Gobain Corp.</u>,  507 F.3d 23, 30 -31 (1st Cir. 2007) (citations omitted).

11.    If the employer meets the burden of producing a facially adequate explanation for the employment decision, the employee can no longer rest on the initial inference of discrimination, but must show that the explanation offered by the employer is a pretext for discrimination and the bottom-line question of discrimination vel non comes front and center. <u>Id</u>.

12.    Thus, "[t]he question to be resolved is whether the defendants explanation of its conduct, together with any other evidence, could reasonably be seen by a jury not only to be false but to suggest an agedriven animus."  <u>Ronda-Perez v. Banco Bilbao Vizcaya Argentaria–Puerto Rico</u> , 404 F.3d 42, 44 (1st Cir. 2005); <u>see</u> <u>Zapata-Matos v. Reckitt & Colman, Inc.</u>, 277 F.3d 40, 45 (1st Cir. 2002) (the ultimate question is not whether the explanation was false, but whether discrimination was the cause of" the adverse employment action).  "Ultimately, the question is one of the sufficiency of plaintiffs evidence," weighed on a "case by case" basis.  <u>Zapata-Matos</u>, 277 F.3d at 45 (citation omitted).

13.    While "[t]he plaintiff may meet his burden of going forward by showing that the employer's articulated reason for the challenged employment action was pretextual; the ultimate burden on the plaintiff is to show that discrimination is the or a motivating factor, a showing which may, but need not be, inferred, depending on the facts, from the showing of pretext.. <u>Hoffman v. Applicators Sales And Service, Inc.</u>, 439 F.3d 9, 17 (2st Cir. 2006) (citations omitted).

14.    "In order to prevail in a lawsuit under the ADEA, the plaintiff's age must actually have played a role in the employer's decision-making process and have had a determinative or motivating influence on the outcome."  <u>Hoffman v. Applicators Sales And Service, Inc.</u>, 439 F.3d 9, 17 (1st Cir. 2006) (<u>citing</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 141 (2000)).

15.    Here, based upon the testimony of Crane, Tonnini, Paquin and Obey, I find credible the Defendant's explanation that the Plaintiff lacked the necessary interpersonal skills for the position.

16.    Because the Defendant has offered a legitimate, non-discriminatory justification, judgment should enter for the Defendant.

17.    Based upon the testimony of Crane, I further find that Crane personally believed that

Pastoski lacked the necessary interpersonal skills.

18.     It is irrelevant whether Crane was correct in believing that Plaintiff actually lacked the necessary skills.  Relevant to the issue of discrimination is solely whether Crane honestly held such a belief.  "Courts may not sit as super personnel departments, assessing the merits-or even the rationality-of employers' nondiscriminatory business decisions." Velazquez-Fernandez v. NCE Foods, Inc., 476 F.3d 6, 12 (1ˢᵗ Cir. 2007) (quoting Fennell v. First Step Designs, Ltd., 83 F.3d 526, 537 (1st Cir.1996).

19.     Because Crane honestly believed that Patoski lacked the necessary interpersonal skills, judgment should enter in favor of the Defendant as to claims of age discrimination.

20.     Even if the Plaintiff has established pretext, there is insufficient evidence in this case to support a claim that the decision not to hire Plaintiff was motivate by age discrimination. Hoffman v. Applicators Sales And Service, Inc.,  439 F.3d 9, 18 (1ˢᵗ Cir. 2006) ("We believe that regardless of whether the defendants' stated reasons for termination could be found to be pretextual, no factfinder could rationally conclude from the record before the district court that the termination-whatever its precise motivation-was motivated by discrimination based upon Hoffman's age.") (citing  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000).