**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| RICHARD PATOSKI, ) | |
| ) | Civil Action No. 05-11086-RCL |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ALPHONSO JACKSON, Secretary, ) | |
| Department of Housing and Urban ) | |
| Development, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**DEFENDANT'S MOTION _IN LIMINE_ TO EXCLUDE TESTIMONY PURPORTING TO
DEMONSTRATE THE DISPARATE IMPACT OF HUD'S AFFIRMATIVE
EMPLOYMENT PLAN ON _WHITE_ MALES IN THIS CLAIM INVOLVING SOLELY
CLAIMS OF GENDER AND AGE DISCRIMINATION**

Introduction

The Plaintiff, Richard Patoski ("Patoski"), brought the instant action alleging that with

respect to two positions for which he applied, a Community Builder ("CB") position in 1997 and

a Public Housing Revitalization Specialist ("PHRS") position in 2000, the Department of

Housing and Urban Development ("HUD") unlawfully discriminated against him in violation of

Title VII and the Constitution.  Specifically, he alleged that HUD discriminated against him on

the basis of his race (white) – with respect to the 2000 PHRS position; and on the basis of gender

(male) – with respect to both 1997 CB position and the 2000 PHRS position.  Plaintiff also

contended that HUD discriminated against him in violation of the Age Discrimination in

Employment Act ("ADEA") in denying him the 1997 CB position.

In addition to these claims, Patoski further contended that HUD's Affirmative

Employment Program ("AEP") constituted an impermissible affirmative action program.[1]

According to Patoski, the collection and dissemination of workforce statistics based upon race

and gender, to managers, in combination with managerial performance standards based upon

EEO considerations, led HUD hiring officials consider race and/or gender in making individual

personnel decisions irrespective of whether taking race into account could be justified as a matter

of law.  Finally, Patoski sought to pursue claims that HUD's ongoing policies and procedures

discriminate against him on the basis of his race (white) and gender (male) in violation of Title

VII and the Equal Protection Clause of the Constitution.  Patoski sought back pay, injunctive

relief, attorneys fees, and compensatory damages for these alleged violations of Title VII.

After summary judgment hearing, this Court granted summary judgment in favor of HUD

as to all claims except Counts I-IV which relate to the non-selection for the 1997 CB position.

Hence, remaining for trial are solely Plaintiff's claims of age and gender discrimination with

respect to the 1997 CB position.

<u>The 1997 Non-Selection Claim</u>

Briefly, the 1997 CB position was a newly created position within HUD.  There were

---

[1] In fulfilment of its obligations under Title VII of the Civil Rights Act of 1964, the Equal Employment Opportunity Commission ("EEOC") promulgated Management Directive 714 ("MD 714") in 1987, which required each federal department and agency to prepare and submit to the EEOC an "affirmative employment plan" to be reviewed and approved by the EEOC.  The directive required agencies to develop affirmative employment programs which hold senior management responsible for equal employment opportunity objectives and provides for the establishment of numerical "goals" where there is a "manifest imbalance" or "conspicuous absence" of minorities and women in the work force. In 2003, EEOC MD-714 was superceded by EEOC MD-715.   <u>See</u>, <u>e.g.</u>, <u>Worth v. Jackson</u>, 451 F.3d 854, 856 (D.C. Cir. 2006) (finding, *inter alia*, that Plaintiff's claims with respect to the AEP Program were rendered moot by the adoption of MD 715 which eliminates the creation of any goals based upon the statistical analysis).

four such positions created in the Boston office. The Plaintiff, along with ten other candidates, made the "best qualified list" from which the final selections were made. The selecting official, Jose Citron ("Citron"), was provided the list of 11 possible candidates for the position, from which, he could select any four.

In making his decision, Citron contacted Mary Lou Crane ("Crane"), the Secretary's Representative for New England, who would supervise the community builders, regarding the candidates and their suitability for the position.[2] Crane did not recommend Patoski, reporting that she felt that Patoski lacked the necessary interpersonal skills for the CB position. As result, Pastoski was ranked last of the eleven candidates by Citron.

Ultimately, three men and three women were selected for the position (one woman and one man declined to accept the position).

<u>Argument</u>

I.    <u>Plaintiff Cannot Introduce Evidence of Alleged Race Based Discrimination To Prove His Gender Based Discrimination Claim</u>

In support of his claim of gender based discrimination, the Plaintiff seeks to introduce evidence of statistical analysis of the data refelected in HUD's Annual AEP Reports[3] to demonstrate that HUD's policies disparately effected males. This evidence, however, does not

---

[2]The Plaintiff contends that in these circumstances that he may prevail if he can establish that either Crane or Citron harbored discriminatory intent. <u>See</u> <u>Cariglia v. Hertz Equipment Rental Corporation</u>, 363 F.3d 77 (1st Cir. 2004).

[3]In these annual reports HUD was required to provide data as to, *inter alia*, the gender, racial and ethnic composition of its workforce, both generally, and by PATCOB category (PATCOB is an acronym for Professional, Administrative, Technical, Clerical, Other and Blue Collar). <u>See</u>, <u>e.g.</u>, FY 1994 Affirmative Employment Report (Exhibit 1); FY 1999 Affirmative Employment Program Plan Update Report (Exhibit 2).

take the form of a statistical analysis of the data as between men and women, but instead

purports to reflect statistical analysis of how those policies effected *White* males.  Such evidence,

as described below, is improper in the context of a claim alleging only gender discrimination.

To establish a claim of disparate impact, the Plaintiff must demonstrate three elements:

> First, the plaintiff must identify the challenged employment practice or policy,
> and pinpoint the defendant's use of it.  Second, the plaintiff must demonstrate a
> disparate impact on a group characteristic, such as race, that falls within the
> protective ambit of Title VII.  Third, the plaintiff must demonstrate a causal
> relationship between the identified practice and the disparate impact.

E.E.O.C. v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 601 (1st Cir. 1995).  To prove the

second and third elements, Plaintiff would apparently seek to rely upon statistical evidence that

HUD's AEP disparately impacted *White* males.  See, e.g, Report of John Larsen (attached to the

Defendant's Motion *In Limine* to Exclude the Plaintiff's Expert).

There is, however, no race based discrimination claim remaining in this matter, see First

Amended Complaint Counts I-IV.  Hence, Plaintiff should not be allowed to attempt to prove

*gender* discrimination by virtue of statistics that do not address the impact of the AEP on *all*

*males* and *all females*.  That is, the relevant statistical evidence as to a claim of gender based

discrimination is statistical evidence reflecting HUD's hiring practices as they effect *all men* and

*all women*.  It is not, as suggested by Plaintiff evidence of disparate impact of HUD's AEP, how

HUD's policies impacted *White* males.

As similarly argued in the Defendant's Motion seeking to exclude the testimony of the

Plaintiff's expert, the statistical analysis of the effect of HUD's policies on White males, based

upon only a segment of the relevant pool, must be excluded.   See, e.g., Rodriguez v. Smithkline

Beecham, 224 F.3d 1, 7 -8 (1st Cir. 2000) (upholding exclusion of statistical evidence that failed

to address the relevant pool);  Blizard v. Frechette, 601 F.2d 1217, 1223-24 (1ˢᵗ Cir. 1979) (upholding exclusion of statistical evidence because, *inter alia*, "appellant's offer was in no way related to the available pool of qualified female applicants for the positions filled predominantly by males").  For purposes of a claim of gender discrimination -- and that is the only claim pressed in this action -- the relevant statistical disparity, if any, is between the hiring of *all males* and *all females* for positions within HUD.

It is perhaps understandable that the Plaintiff would seek to introduce evidence of HUD's AEP upon *White* males, because, when the statistics are compiled using all men versus all women, no evidence of discrimination at all can be found.  For example, in FY 1994 HUD employed 12,493 individuals: 41.3% men and 58.7% women.  See FY 1994 Affirmative Employment Report (Exhibit 1).   By 1999, HUD employed 9,446 individuals: 40.7%  men and 59.3% women.  FY 1999 Affirmative Employment Program Plan Update Report (Exhibit 2). This drop of .6% in the representation of males over a five year period is wholly insufficient to constitute even minimal evidence of disparate impact.[4]   See, e.g., Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994-95 (1988) ("Our formulations, which have never been framed in terms of any rigid mathematical formula, have consistently stressed that statistical disparities must be sufficiently substantial that they raise such an inference of causation.") (plurality opinion);

---

[4]Other statistics that can be readily derived from these reports are similarly devoid of evidence warranting a disparate impact claim as to *gender based* discrimination.  For example, HUD is also required to break down its workforce by PATCOB category (PATCOB is an acronym for Professional, Administrative, Technical, Clerical, Other and Blue Collar).  The Community Builder position at issue fell into the Administrative category.  In the Administrative Category, in 1994 HUD employed 7873 individuals: 48.5% men and 51.5% women.  By 1999 HUD employed 6527 individuals in the Administrative category: 45.3% men and 54.7% women. So over this five year period male representation in the Administrative category fell only 3.2%.

<u>Donnelly v. Rhode Island Bd. of Governors for Higher Educ</u>., 110 F.3d 2, 4 (1st Cir. 1997)

("Plaintiffs . . .have failed to establish all the necessary ingredients of their prima facie case of

disparate impact, in particular the "disparateness" of the salary plan's impact on the protected

group (women), and the existence of a causal relationship between the plan and any purported

disparate impact."); <u>contrast</u>, <u>e.g.</u>, <u>E.E.O.C. v. Steamship Clerks Union, Local 1066</u>, 48 F.3d

594, 604 (1st Cir 1995) (evidence that minorities comprised between 8 and 27% of the possible

applicants coupled with the fact that 0 of 30 selections were minorities is evidence of disparate

impact).[5]

Because evidence of the disparate impact on *White* males is not probative of the issues in

this matter, such evidence should be excluded.

II.    <u>Evidence of Disparate Impact On White Males Is Irrelevant, Would Unduly Prejudice the
       Defendant And Would Confuse the Jury</u>

Testimony as to any disparate impact on White males is not relevant to the only claim

before this Court, specifically, that of gender based discrimination.  Because the testimony does

not address the issue presented, it is irrelevant and must be excluded.  <u>See</u> Fed. R. Evid. 402.

Further, even if minimally relevant (which it is not), the evidence should be excluded

under Fed. R. Evid. 403.  Rule 403 provides for the exclusion of even relevant evidence where

"its probative value is substantially outweighed by the danger of unfair prejudice, confusion of

the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless

presentation of cumulative evidence."  Fed. R. Evid. 403.  The introduction of evidence of race

---

[5]<u>See</u> <u>also</u>, <u>Watson v. Fort Worth Bank & Trust</u>, 487 U.S. 977, 994-95 (1988) ("Our
formulations, which have never been framed in terms of any rigid mathematical formula, have
consistently stressed that statistical disparities must be sufficiently substantial that they raise
such an inference of causation.") (plurality opinion).

based discrimination into this case would unduly prejudice the Defendant, confuse the issues for the jury, unduly delay the trial of this matter and waste the court's and the jury's time. See Kelly v. Boeing Petroleum Svcs., Inc., 61 F.3d 350, 357-360 (5th Cir. 1995) (holding comments pertaining to race, sex and national origin have no tendency to prove disability discrimination and were therefore rightly excluded pursuant to Federal Rules of Evidence 401 and 403); Brooks v. CBS Radio, Inc., 2007 WL 4454312, *12 (E.D. Pa. 2007) ("While such conduct may be evidence of discrimination on the basis of sex, courts have held that evidence of sex discrimination in cases involving race discrimination, and vice versa, is irrelevant given the lack of correlation between the two kinds of discrimination."); Waters v. Genesis Health Ventures, Inc., 400 F.Supp.2d 808, 814 (E.D. Pa. 2005)(excluding evidence of sex discrimination in a race claim); Olle v. Columbia University, 332 F.Supp.2d 599, 614 (S.D.N.Y. 2004) ("To the extent that the surveys include complaints related to purported discrimination experienced or observed, they relate to alleged race-based discrimination or sexual orientation discrimination, and are not relevant to Olle's claims of sex- and age-based discrimination here"); Simonetti v. Runyon, 2000 WL 1133066, * 6 (D.N.J. 2000) (same); Rauh v. Coyne, 744 F.Supp. 1181, 1183 (D.D.C.1990) (finding that plaintiff alleging gender discrimination may not introduce evidence of racial discrimination because it is not relevant under Federal Rules of Evidence 401 and would result in unfair prejudice).

III.    To the Extent That Data From HUD's AEP Reports Is Used, The Data Should Be Compiled to Reflect All Men and All Women

The instant Complaint involves only claims of gender based discrimination, while the AEP reports of HUD break down its workforce by both race, ethnicity and gender.  For example, to determine the percentage of male HUD employees in the relevant PATCOB Category from

the AEP Reports (the CB position was in the Administrative category), one must add up the

percentages of White males, Black males, Hispanic males, Asian males and Indian males

(likewise to determine the percentage of female employees).  See, e.g.,FY 1994 Affirmative

Employment Report (Exhibit 1); FY 1999 Affirmative Employment Program Plan Update

Report (Exhibit 2).

   Providing the reports to the jury in their present form would risk improperly inserting

issues of race into what is solely a claim of gender discrimination.  In lieu of allowing the

evidence to be presented in such a form, the Defendant would request that any statistical

evidence derived from these reports, if any, be required to reflect the compiled data  as to *all men*

and *all women*.

<u>Conclusion</u>

For the foregoing reasons, Defendant requests that the Plaintiff be precluded from offering statistical evidence purporting to demonstrate the impact of HUD policies on White males, rather than all males, or, similarly offering evidence or argument of disparate impact of any HUD' policy on White males for the purpose of proving gender discrimination. Further, to the extent data from HUD AEP Reports is introduced, Defendant requests that such data be compiled such that it covers all men and all women, rather than as is presently reflected in the reports, by both gender, race and ethnicity because this may confuse or mislead the jury in this case involving solely claims of gender and age discrimination.

Respectfully Submitted,
MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By:    /s/ Mark J. Grady
       Mark J. Grady, Assistant United States Attorney
       United States Attorney's Office
       1 Courthouse Way– Suite 9200
       Boston, MA 02210
       617) 748-3136

<u>Certificate of Compliance</u>

I certify that I have discussed the relief requested by way of this Motion with Plaintiff's counsel. No agreement could be reached as to this issue.

/s/ Mark J. Grady
Mark J. Grady
Assistant U.S. Attorney

<u>Certificate of Service</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 27, 2008.

/s/ Mark J. Grady

9

Mark J. Grady
Assistant U.S. Attorney

# U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD)

# DEPARTMENTWIDE

# FISCAL YEAR 1994

# AFFIRMATIVE EMPLOYMENT PROGRAM (AEP)

# ACCOMPLISHMENT REPORT

HUD007410

AFFIRMATIVE EMPLOYMENT PROGRAM FOR MINORITIES AND WOMEN

ANNUAL AFFIRMATIVE EMPLOYMENT PROGRAM ACCOMPLISHMENT REPORT

FOR FISCAL YEAR 1994

U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

DEPARTMENT

U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
451 7TH STREET, S.W.
WASHINGTON, D.C. 20410
Name and Address of Organization

Organizational Level: Agency __X__   MOC _____   Region _____
      Command _____   Installation _____   Headquarters _____

Number of Employees covered by Plan:  Total __12,493__
  Professional __1,482__   Administrative __7,873__
  Technical __1,244__ Clerical __1,873__ Other __1__ Blue Collar __20__

Raymond J. Solecki                              (202) 708-0113
Name of Contact Person/Person Preparing Form     Telephone No.

Mari R. Barr
Acting Director, Office of Departmental Equal Employment
Opportunity/Director, Equal Employment Opportunity

Name and Title of Principal EEO Official

_____          12 April 95
Signature of Principal EEO Official            Date

Henry G. Cisneros
Secretary
Name and Title of Head of Organization or Designated Official

_____
Signature of Head of Organization or Designated Official
Certifies that this Plan is in Compliance with EEO-MD-714.

EEOC FORM 568 (8/87)                                D-2

HUD007414

AFFIRMATIVE EMPLOYMENT PROGRAM FOR MINORITIES AND WOMEN

ANNUAL AFFIRMATIVE EMPLOYMENT PROGRAM ACCOMPLISHMENT REPORT

DEPARTMENT

## II.  WORK FORCE - SUMMARY ANALYSIS (Cont'd)

### CHANGE IN WORK FORCE
### FISCAL YEAR 1993 AND FISCAL YEAR 1994
### (Cont'd)

The following depicts the changes in employment between Fiscal Years 1993 and 1994 by year end on-board work force, PATCOB Category and major occupation:

### ON-BOARD WORK FORCE

| Race/Sex | 1993 | 1994 | Differences % | # |
|---|---|---|---|---|
| White males | 29.6% | 29.1% | -0.5 | -194 |
| White females | 29.7 | 29.6 | -0.1 | -133 |
| Black males | 8.0 | 8.0 | 0.0 | - 28 |
| Black females | 22.8 | 23.2 | +0.4 | - 42 |
| Hispanic males | 2.5 | 2.6 | +0.1 | - 7 |
| Hispanic females | 3.7 | 3.8 | +0.1 | - 14 |
| Asian males | 1.2 | 1.2 | 0.0 | - 2 |
| Asian females | 1.5 | 1.5 | 0.0 | - 3 |
| Indian males | 0.4 | 0.4 | 0.0 | - 1 |
| Indian females | 0.6 | 0.6 | 0.0 | - 5 |
| Minorities and Women | 70.4 | 70.9 | +0.5 | -235 |
| Women | 58.3 | 58.7 | +0.4 | -197 |
| Minorities | 40.7 | 41.3 | +0.6 | -102 |

### PROFESSIONAL CATEGORY

| Race/Sex | 1993 | 1994 | Differences % | # |
|---|---|---|---|---|
| White males | 52.0% | 51.4% | -0.6 | - 28 |
| White females | 18.8 | 19.0 | +0.2 | - 4 |
| Black males | 8.4 | 8.6 | +0.2 | 0 |
| Black females | 9.3 | 9.8 | +0.5 | + 3 |
| Hispanic males | 3.3 | 3.0 | -0.3 | - 5 |
| Hispanic females | 1.3 | 1.3 | 0.0 | 0 |

HUD007421

AFFIRMATIVE EMPLOYMENT PROGRAM FOR MINORITIES AND WOMEN

<u>ANNUAL AFFIRMATIVE EMPLOYMENT PROGRAM ACCOMPLISHMENT REPORT</u>

DEPARTMENT

II.  WORK FORCE - SUMMARY ANALYSIS (Cont'd)

CHANGE IN WORK FORCE
FISCAL YEAR 1993 AND FISCAL YEAR 1994
(Cont'd)

PROFESSIONAL CATEGORY (Cont'd)

| Race/Sex | 1993 | 1994 | Differences % | # |
|---|---|---|---|---|
| Asian males | 4.0 | 4.0 | 0.0 | - 1 |
| Asian females | 2.3 | 2.4 | +0.1 | + 1 |
| Indian males | 0.3 | 0.2 | -0.1 | - 1 |
| Indian females | 0.3 | 0.3 | 0.0 | 0 |
| Minorities and Women | 48.0 | 48.6 | +0.6 | - 7 |
| Women | 32.0 | 32.8 | +0.8 | 0 |
| Minorities | 29.2 | 29.6 | +0.4 | - 3 |

ADMINISTRATIVE CATEGORY

| Race/Sex | 1993 | 1994 | Differences % | # |
|---|---|---|---|---|
| White males | 35.6% | 34.4% | -1.2 | -130 |
| White females | 27.5 | 27.8 | +0.3 | - 7 |
| Black males | 9.5 | 9.5 | 0.0 | - 8 |
| Black females | 18.5 | 19.3 | +0.8 | + 53 |
| Hispanic males | 3.0 | 3.1 | +0.1 | + 1 |
| Hispanic females | 2.8 | 2.9 | +0.1 | + 1 |
| Asian males | 1.0 | 1.0 | 0.0 | + 1 |
| Asian females | 1.1 | 1.1 | 0.0 | + 3 |
| Indian males | 0.5 | 0.5 | 0.0 | + 1 |
| Indian females | 0.5 | 0.4 | -0.1 | - 2 |
| Minorities and Women | .64.4 | 65.6 | +1.2 | + 43 |
| Women | 50.4 | 51.5 | +1.1 | + 48 |
| Minorities | 36.9 | 37.8 | +0.9 | + 50 |

EEOC FORM 568 (8/87)                                      DS-7

HUD007422

DISTRIBUTION OF EEO GROUPS AND COMPARISON BY PATCOB

FISCAL YEAR 1994

ORGANIZATION: HUD DEPARTMENT

| OCCUPATIONAL CATEGORY | TOTAL ALL % | WHITE | | BLACK | | HISPANIC | | ASIAN AMERICAN/ PACIFIC ISLANDER | | AMERICAN INDIAN ALASKAN NATIVE | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | MALE % | FEMALE % | MALE % | FEMALE % | MALE % | FEMALE % | MALE % | FEMALE % | MALE % | FEMALE % |
| PROFESSIONAL AGENCY (HUD) | 100.0 | 51.4 | 19.0 | 8.6 | 9.8 | 3.0 | 1.3 | 4.0 | 2.3 | 0.3 | 0.3 |
| (CAD) CIVILIAN LABOR FORCE | 100.0 | 54.7 | 30.3 | 2.4 | 3.2 | 2.1 | 1.4 | 3.5 | 1.9 | 0.2 | 0.2 |
| ADMINISTRATIVE AGENCY (HUD) | 100.0 | 34.4 | 27.8 | 9.5 | 19.3 | 3.1 | 2.9 | 1.0 | 1.1 | 0.5 | 0.4 |
| (CAD) CIVILIAN LABOR FORCE | 100.0 | 42.1 | 40.4 | 3.6 | 5.3 | 2.6 | 2.6 | 1.4 | 1.4 | 0.3 | 0.3 |
| TECHNICAL AGENCY (HUD) | 100.0 | 5.8 | 37.4 | 4.3 | 40.8 | 1.0 | 6.1 | 0.6 | 2.4 | 0.1 | 1.5 |
| (CAD) CIVILIAN LABOR FORCE | 100.0 | 36.1 | 42.9 | 3.6 | 6.6 | 3.2 | 3.4 | 1.9 | 1.6 | 0.4 | 0.4 |
| CLERICAL AGENCY (HUD) | 100.0 | 4.3 | 41.0 | 3.3 | 38.9 | 1.2 | 7.8 | 0.2 | 1.9 | 0.2 | 1.2 |
| (CAD) CIVILIAN LABOR FORCE | 100.0 | 14.0 | 63.4 | 2.8 | 9.6 | 1.7 | 5.2 | 0.8 | 1.9 | 0.1 | 0.5 |
| OTHER AGENCY (HUD) | 100.0 | 0.0 | 100.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| (CAD) CIVILIAN LABOR FORCE | 100.0 | 67.6 | 11.2 | 9.7 | 3.2 | 4.8 | 1.0 | 1.2 | 0.3 | 0.9 | 0.2 |
| BLUE COLLAR AGENCY (HUD) | 100.0 | 25.0 | 0.0 | 70.0 | 0.0 | 0.0 | 0.0 | 5.0 | 0.0 | 0.0 | 0.0 |
| (CAD) CIVILIAN LABOR FORCE | 100.0 | 65.4 | 9.8 | 9.1 | 2.2 | 8.7 | 1.5 | 1.7 | 0.5 | 0.8 | 0.2 |

EEOC FORM 568 (8/87)

DS-21

HUD007436

# U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD)



## *DEPARTMENTWIDE*

## FISCAL YEAR 1999

## AFFIRMATIVE EMPLOYMENT PROGRAM (AEP) PLAN UPDATE REPORT

## *PROGRAM ELEMENT I ORGANIZATION AND RESOURCES*

*Pages DI-1 through DI-7*

**HUD004081**

# U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
## (HUD)

## *DEPARTMENTWIDE*

## FISCAL YEAR 1999

## AFFIRMATIVE EMPLOYMENT PROGRAM (AEP)

## PLAN UPDATE REPORT

## PROGRAM ELEMENT II

## WORK FORCE

*Pages DII-1 through DII-41*

**HUD004089**

AFFIRMATIVE EMPLOYMENT PROGRAM FOR MINORITIES AND WOMEN

FISCAL YEAR 1999
ANNUAL AFFIRMATIVE EMPLOYMENT PROGRAM PLAN UPDATE REPORT
PROGRAM ANALYSIS

DEPARTMENT

UPDATE

II.   WORK FORCE - SUMMARY ANALYSIS

Analyses of the Department's work force were conducted by
occupational category (PATCOB-Professional, Administrative,
Technical, Clerical, Other, Blue Collar), grade groupings, and
major occupations using the National Finance Center's (NFC)
Fiscal Year 1998 year-end data and the Department's Equal
Employment Opportunity Monitoring and Analysis System (EEOMAS).
Further analyses were conducted by occupational category, grade
groupings and major occupations using 1990 Census Availability
Data, NFC's Fiscal Years 1997 and 1998 year-end comparative data,
and EEOMAS.  The results of these analyses are as follows:

The Departmentwide Annual Affirmative Employment Program
(AEP) Plan covers a total of 9,446 permanent full-time and
permanent part-time employees.  There are 1,068 employees in the
Professional category; 6,527 in the Administrative category;
1,405 in the Technical category; 437 in the Clerical category, 1
in the Other category; and 8 in the Blue Collar category.
Instances of manifest imbalances and/or conspicuous absences
continue to exist in some EEO groups.  It appears that the
attrition rate of some EEO groups is contributing to their
continued manifest imbalances and/or conspicuous absences.
Further, in light of the Department's continuing efforts to meet
President Clinton's challenge of reforming Government and
renewing democracy, it is anticipated that minimal, if any,
progress will be attained during Fiscal Year 1999.  Notwith-
standing, the following analyses and action items depict the
Department's Fiscal Year 1999 work force update.

ANALYSIS OF UNDERREPRESENTATION BY OCCUPATIONAL CATEGORY

MANIFEST IMBALANCE - when the work force's representation of a
particular Equal Employment Opportunity (EEO) group, by occup-
ational category or grade level, is substantially below its
representation in the appropriate Civilian Labor Force (CLF).

The analysis revealed that there are MANIFEST IMBALANCES in
the following PATCOB categories and EEO groups:

                    PROFESSIONAL.......................White females
                                                      Asian males
                                                      Indian females

                    ADMINISTRATIVE.....................White females

EEOC FORM 566 (8/87)                                                DII-1

HUD004090

AFFIRMATIVE EMPLOYMENT PROGRAM FOR MINORITIES AND WOMEN

FISCAL YEAR 1999
ANNUAL AFFIRMATIVE EMPLOYMENT PROGRAM PLAN UPDATE REPORT
PROGRAM ANALYSIS

DEPARTMENT

UPDATE

II.   WORK FORCE - SUMMARY ANALYSIS (CONT'D)

ANALYSIS OF UNDERREPRESENTATION (CONSPICUOUS ABSENCES)
BY MAJOR OCCUPATION (CONT'D)

CLERICAL CATEGORY

MISC. CLERK/ASSISTANT
        Series 0303..................Asian males
                                      Indian males
                                      Indian females

SECRETARY
        Series 0318..................White females
                                      Hispanic males
                                      Asian males

The following depicts the changes in employment between
Fiscal Years 1997 and 1998 by year-end on-board work force,
PATCOB Category, and major occupation:

ON-BOARD WORK FORCE

| Race/Sex | 1997 | | 1998 | | Differences | |
|---|---|---|---|---|---|---|
| | # | % | # | % | # | % |
| White males | 2,811 | 28.1 | 2,648 | 28.0 | -163 | -0.1 |
| White females | 2,846 | 28.4 | 2,649 | 28.0 | -197 | -0.4 |
| Black males | 826 | 8.3 | 770 | 8.1 | - 56 | -0.2 |
| Black females | 2,468 | 24.7 | 2,367 | 25.1 | -101 | +0.4 |
| Hispanic males | 249 | 2.5 | 242 | 2.6 | - 7 | +0.1 |
| Hispanic females | 399 | 4.0 | 375 | 4.0 | - 24 | 0.0 |
| Asian males | 136 | 1.4 | 135 | 1.4 | - 1 | 0.0 |
| Asian females | 162 | 1.6 | 158 | 1.7 | - 4 | +0.1 |
| Indian males | 41 | 0.4 | 39 | 0.4 | - 2 | 0.0 |
| Indian females | 65 | 0.6 | 63 | 0.7 | - 2 | +0.1 |
| Minorities and Women | 7,192 | 71.9 | 6,798 | 72.0 | -394 | +0.1 |
| Women | 5,940 | 59.3 | 5,612 | 59.4 | -328 | +0.1 |
| Minorities | 4,346 | 43.5 | 4,149 | 44.0 | -197 | +0.5 |

EEOC FORM 566 (8/87)                                              DII-7

HUD004096

AFFIRMATIVE EMPLOYMENT PROGRAM FOR MINORITIES AND WOMEN

FISCAL YEAR 1999
ANNUAL AFFIRMATIVE EMPLOYMENT PROGRAM PLAN UPDATE REPORT
PROGRAM ANALYSIS

DEPARTMENT

UPDATE

II.   WORK FORCE - SUMMARY ANALYSIS (CONT'D)

CHANGE IN WORK FORCE FISCAL YEAR 1997 AND FISCAL YEAR 1998
(Cont'd)

PROFESSIONAL CATEGORY

| Race/Sex | 1997 # | 1997 % | 1998 # | 1998 % | Differences % | Differences # |
|---|---|---|---|---|---|---|
| White males | 618 | 49.4% | 533 | 49.9% | +0.5 | -85 |
| White females | 242 | 19.3 | 218 | 20.4 | +1.1 | -24 |
| Black males | 102 | 8.1 | 83 | 7.8 | -0.3 | -19 |
| Black females | 144 | 11.5 | 122 | 11.4 | -0.1 | -22 |
| Hispanic males | 35 | 2.8 | 33 | 3.0 | +0.2 | - 2 |
| Hispanic females | 25 | 1.9 | 20 | 1.9 | 0.0 | - 5 |
| Asian males | 50 | 4.0 | 34 | 3.2 | -0.8 | -16 |
| Asian females | 32 | 2.6 | 22 | 2.1 | -0.5 | -10 |
| Indian males | 2 | 0.2 | 2 | 0.2 | 0.0 | 0 |
| Indian females | 2 | 0.2 | 2 | 0.1 | -0.1 | - 1 |
| Minorities and Women | 634 | 50.6 | 535 | 50.1 | -0.5 | -99 |
| Women | 445 | 35.5 | 383 | 35.9 | +0.4 | -62 |
| Minorities | 392 | 31.3 | 317 | 29.7 | -1.6 | -75 |

ADMINISTRATIVE CATEGORY

| Race/Sex | 1997 # | 1997 % | 1998 # | 1998 % | Differences % | Differences # |
|---|---|---|---|---|---|---|
| White males | 2,096 | 31.3% | 2,019 | 30.9% | -0.4 | -77 |
| White females | 1,890 | 28.2 | 1,800 | 27.6 | -1.6 | -90 |
| Black males | 648 | 9.7 | 619 | 9.5 | -0.2 | -29 |
| Black females | 1,419 | 21.2 | 1,411 | 21.6 | +0.4 | - 8 |
| Hispanic males | 194 | 2.9 | 192 | 2.9 | 0.0 | - 2 |
| Hispanic females | 222 | 3.3 | 227 | 3.5 | +0.2 | + 5 |
| Asian males | 77 | 1.1 | 95 | 1.5 | +0.4 | +18 |
| Asian females | 90 | 1.3 | 99 | 1.5 | +0.2 | + 9 |
| Indian males | 35 | 0.5 | 33 | 0.5 | 0.0 | - 2 |
| Indian females | 31 | 0.5 | 32 | 0.5 | 0.0 | + 1 |
| Minorities and Women | 4,606 | 68.7 | 4,508 | 69.1 | +0.4 | -98 |
| Women | 3,652 | 54.5 | 3,569 | 54.7 | +0.2 | -83 |
| Minorities | 2,717 | 40.5 | 2,708 | 41.5 | +1.0 | - 9 |

EEOC FORM 566 (8/87)                                      DII-8

HUD004097

AFFIRMATIVE EMPLOYMENT PROGRAM (AEP) PLAN UPDATE REPORT

DISTRIBUTION OF EEO GROUPS AND COMPARISON BY PATCOB

FISCAL YEAR 1999 – HUD/CIVILIAN LABOR FORCE COMPARISON

| OCCUPATIONAL CATEGORY | TOTAL ALL % | WHITE | | BLACK | | HISPANIC | | ASIAN AMERICAN/ PACIFIC ISLANDER | | AMERICAN INDIAN ALASKAN NATIVE | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | MALE % | FEMALE % | MALE % | FEMALE % | MALE % | FEMALE % | MALE % | FEMALE % | MALE % | FEMALE % |
| PROFESSIONAL AGENCY (HUD) | 100.0 | 49.9 | 20.4 | 7.8 | 11.4 | 3.0 | 1.9 | 3.2 | 2.1 | 0.2 | 0.1 |
| (CAD) CIVILIAN LABOR FORCE | 100.0 | 54.7 | 30.3 | 2.4 | 3.2 | 2.1 | 1.4 | 3.5 | 1.9 | 0.2 | 0.2 |
| ADMINISTRATIVE AGENCY (HUD) | 100.0 | 30.9 | 27.6 | 9.5 | 21.6 | 2.9 | 3.5 | 1.5 | 1.5 | 0.5 | 0.5 |
| (CAD) CIVILIAN LABOR FORCE | 100.0 | 42.1 | 40.4 | 3.6 | 5.3 | 2.6 | 2.6 | 1.4 | 1.4 | 0.3 | 0.3 |
| TECHNICAL AGENCY (HUD) | 100.0 | 5.1 | 35.6 | 3.0 | 43.5 | 0.9 | 7.5 | 0.4 | 1.9 | 0.2 | 1.9 |
| (CAD) CIVILIAN LABOR FORCE | 100.0 | 36.1 | 42.9 | 3.6 | 6.6 | 3.2 | 3.4 | 1.9 | 1.6 | 0.4 | 0.4 |
| CLERICAL AGENCY (HUD) | 100.0 | 5.3 | 29.7 | 4.6 | 51.0 | 0.9 | 5.3 | 0.0 | 2.3 | 0.2 | 0.7 |
| (CAD) CIVILIAN LABOR FORCE | 100.0 | 14.0 | 63.4 | 2.8 | 9.6 | 1.7 | 5.2 | 0.8 | 1.9 | 0.2 | 0.5 |
| OTHER AGENCY (HUD) | 100.0 | 0.0 | 100.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| (CAD) CIVILIAN LABOR FORCE | 100.0 | 67.6 | 11.2 | 9.7 | 3.2 | 4.8 | 1.0 | 1.2 | 0.3 | 0.9 | 0.2 |
| BLUE COLLAR AGENCY (HUD) | 100.0 | 25.0 | 0.0 | 75.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| (CAD) CIVILIAN LABOR FORCE | 100.0 | 65.4 | 9.8 | 9.1 | 2.2 | 8.7 | 1.5 | 1.7 | 0.5 | 0.8 | 0.2 |
| TOTAL AGENCY (HUD) | 100.0 | 28.0 | 28.0 | 8.1 | 25.1 | 2.6 | 4.0 | 1.4 | 1.7 | 0.4 | 0.7 |
| (CAD) CIVILIAN LABOR FORCE | 100.0 | 42.6 | 35.3 | 4.9 | 5.4 | 4.8 | 3.3 | 1.5 | 1.3 | 0.3 | 0.3 |

EEOC FORM 568/569 (8/87)

DII-12

HUD004101