UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RICHARD PATOSKI, | ) ) | |
|  | ) | Civil Action No. 05-11086-RCL |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ALPHONSO JACKSON, Secretary, Department of Housing and Urban Development, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**MOTION *IN LIMINE* TO EXCLUDE PLAINTIFF'S EXPERT TESTIMONY AND REQUEST FOR A *DAUBERT* HEARING**

The Plaintiff, Richard Patoski ("Patoski"), alleges that the Department of Housing and Urban Development ("HUD") unlawfully discriminated against him in violation of Title VII with respect to his non selection for a 1997 Community Builder ("CB") position at HUD. Specifically, Plaintiff alleges that HUD discriminated against him on the basis of his gender and age.[1]

The 1997 Non-Selection Claim

Briefly, the 1997 CB position was a newly created position within HUD and there were four such positions created in the Boston office. The Plaintiff, along with ten other candidates, made the "best qualified list" from which the final selections were made. The selecting official, Jose Citron ("Citron"), was provided the list of 11 possible candidates for the position, of whom,

---

[1] After summary judgment hearing, this Court granted summary judgment in favor of HUD as to all claims except Counts I-IV which relate to the non-selection for the 1997 CB position.

he could select any four.

In making his decision, Citron contacted Mary Lou Crane ("Crane"), the Secretary's Representative for New England, who would supervise the newly hired community builders, regarding the candidates and their suitability for the position.[2] Crane did not recommend Patoski, reporting that she felt that Patoski lacked the necessary interpersonal skills for the CB position.  As result, Pastoski was ranked last of the eleven candidates by Citron.

Ultimately, three men and three women were selected for the position (one woman and one man declined to accept the position).

The Plaintiff's Proposed Expert Testimony

The Plaintiff has provided a report of John G. Larsen which purports to address two issues: (1) whether the U.S. Dept. of Housing and Urban Development (HUD) Affirmative Employment plans and Federal Equal Opportunity Recruitment Plans since 1993 are in or out of compliance with the standards established by the U.S. Supreme Court's decision in the Adarand case,[3] as interpreted by the U.S. Department of Justice and communicated by memorandum dated February 29, 1996, to General Counsels Re: Post Adarand Guidance on Affirmative Action

---

[2] The Plaintiff contends that in these circumstances that he may prevail if he can establish that either Crane or Citron harbored discriminatory intent.  See Cariglia v. Hertz Equipment Rental Corporation, 363 F.3d 77 (1st Cir. 2004).

[3] The Supreme Courts' decision in Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995), involved the awarding of federal highway contracts based upon criteria that took into account race.  In that case, the Court held that the Constitution required strict scrutiny of the use of race based criteria in awarding federal highway contracts.  Id.  Adarand's applicability to the federal employment context is dubious at best.  See, e.g., Worth v. Jackson, 451 F.3d 854, 861 (D.C. Cir. 2006) (it is "our view that neither Northeastern Florida nor Adarand extends much beyond their particular facts"). The claims to be tried before this Court allege age and gender discrimination, hence, testimony of an "expert" regarding HUD's general compliance with Adarand, a claim involving purported race discrimination, is itself irrelevant.

in Federal Government; and (2) whether HUD, as reflected in documents since 1993 actually utilized its Affirmative Employment plans in reaching it promotion decisions nationally, including in Massachusetts.

Argument

The testimony of this witness should be excluded as irrelevant, should be excluded under Fed. R. Evid. 403, and further, should aspects of the testimony be deemed potentially relevant, Defendant would request a hearing under Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993),[4] calling upon Plaintiff to establish this witness' qualifications to offer the testimony proposed and to establish that the testimony sought is properly construed as expert testimony.[5]

**I.    Because The Claims To Be Tried Before This Court Do Not Involve Claims Of Race Based Discrimination, Plaintiff Should Not Be Permitted To Introduce "Expert" Testimony Regarding Race Based Discrimination**

The Plaintiff's expert invariably concludes that HUD has discriminated against *White* males, not, as is the question before this Court, whether any policy of HUD discriminated against males. See Larsen Report, p. 18-23 (summarizing "Findings") and 24-65 (detailing findings of discrimination against *White* males).   Because the testimony of this expert does not address the issue presented, it is irrelevant and must be excluded.  See Fed. R. Evid. 402.

---

[4] See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (extending Daubert's two-prong gatekeeping test to all expert testimony)

[5] The proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied, see Daubert, 509 U.S. at 593 n. 10, and the Federal Rules of Evidence assign to the district court "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand," Daubert, 509 U.S. at 597; Fed. R. Evid. 104(a).

II. **Even If Purported Discrimination Against White Males Is Marginally Relevant to a Claim of Gender Discrimination, It Must be Excluded Under Fed. R. Evid. 403**

Even if marginally relevant to claims of gender based discrimination (which it is not), the proposed expert testimony should be excluded under Fed. R. Evid. 403. The "expert" report lacks a single reference to discrimination against males, as opposed to *White* males. Plaintiff never administratively alleged any race based discrimination with respect to the 1997 CB non-selection and was *expressly* denied leave to add claims of race based discrimination with respect to the 1997 non selection in this Court. See Docket # 29.[6]

Assuming that the expert's testimony has some probative value, Rule 403 provides for the exclusion of even relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The introduction of evidence of race based discrimination into this case would unduly prejudice the Defendant, confuse the issues for the jury, unduly delay the trial of this matter and waste the court's and the jury's time. See Kelly v. Boeing Petroleum Svcs., Inc., 61 F.3d 350, 357-360 (5th Cir. 1995) (holding comments pertaining to race, sex and national

---

[6]In denying Plaintiff's Second Motion to Amend, Magistrate Judge Alexander found that the Plaintiff had forfeited any claims of race based discrimination with respect to the 1997 non-selection by failing to have pursued them administratively and by failing to have timely pursued them in this Court. See Docket # 29. Further, it should be noted that the failure to exhaust bars such claims as a matter of sovereign immunity and deprives this Court of subject matter jurisdiction over such claims. See, e.g., Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005) ("[I]n a Title VII case, a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door."). Further, the Plaintiff was clearly aware of the difference between a claim of gender discrimination and a claim of mixed gender and race discrimination. Compare First Amended Complaint Count V (alleging *combined race and gender discrimination* as to a 2000 non selection).

origin have no tendency to prove disability discrimination and were therefore rightly excluded pursuant to Federal Rules of Evidence 401 and 403); Brooks v. CBS Radio, Inc., 2007 WL 4454312, *12 (E.D. Pa. 2007) ("While such conduct may be evidence of discrimination on the basis of sex, courts have held that evidence of sex discrimination in cases involving race discrimination, and vice versa, is irrelevant given the lack of correlation between the two kinds of discrimination."); Waters v. Genesis Health Ventures, Inc., 400 F.Supp.2d 808, 814 (E.D. Pa. 2005)(excluding evidence of sex discrimination in a race claim); Olle v. Columbia University, 332 F.Supp.2d 599, 614 (S.D.N.Y. 2004) ("To the extent that the surveys include complaints related to purported discrimination experienced or observed, they relate to alleged race-based discrimination or sexual orientation discrimination, and are not relevant to Olle's claims of sex- and age-based discrimination here"); Simonetti v. Runyon, 2000 WL 1133066, * 6 (D.N.J. 2000) (same); Rauh v. Coyne, 744 F.Supp. 1181, 1183 (D.D.C.1990) (finding that plaintiff alleging gender discrimination may not introduce evidence of racial discrimination because it is not relevant under Federal Rules of Evidence 401 and would result in unfair prejudice).

  Hence, because the introduction of evidence of alleged race based discrimination would unfairly prejudice the Defendant and confuse or mislead the jury, such evidence should be excluded.

**III. The Plaintiff's Expert Report Fails To Establish the Requisite Qualifications**

  Under Fed. R. Evid. 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness *qualified as an expert by knowledge, skill, experience, training, or education*, may testify thereto in the form of an opinion or otherwise." Id. (emphasis added). Here, the Plaintiff's "expert" is

wholly unqualified to offer the opinions proffered in his report. Specifically, the Plaintiff's Expert purports to offer opinions as to: (1) the applicability and significance of the Supreme Court's decision in Adarand;[7] and (2) opinion as to the causative effect of HUD's AEP Program on perceived statistical disparities (which, incidentally - fails to address the relevant labor pool).

As an initial matter, even if qualified (which this expert clearly is not), Plaintiff's "expert" cannot testify as to legal conclusions. See, e.g., Hygh v. Jacobs, 961 F.2d 359, 363 (2d Cir.1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."); Jama v. Esmor Correctional Services, Inc., 2007 WL 1847385, *10 (D. N.J. 2007) ("Undoubtedly in the course of his career, Mr. DeLand has heard lectures or taken courses on developing case law relating to prisons, but this in no way makes him an expert on the law of prisons. Even if he were, it would be totally inappropriate for him to tell a jury that Supreme Court or other court decisions are a basis for his opinion."). Hence, testimony regarding interpretation of the Adarand decision is improper.

Moreover, the Adarand decision is irrelevant. Adarand involved claims of race based discrimination which are not at issue here and, thus, the Plaintiff's expert proposes to testify as to issues not before the court.

Even putting aside these clear justifications for exclusion of the testimony, the Plaintiff's "expert report" fails to demonstrate the qualifications of the Plaintiff's expert and the scientific methodologies utilized in reaching his conclusions. Based upon the qualification provided by the report, the "expert" lacks "knowledge, skill, experience, training or education" that would

---

[7]This is, in any event, the province of this Court not expert testimony.

allow him to testify regarding statistics, analysis, or what conclusions may be drawn from statistical analysis.[8] Such opinions are the province of individuals with mathematical degrees, or at a minimum, significant training and experience in statistical analysis, not, as is in the case of Plaintiff's expert, individuals with a self avowed interest in federal affirmative action programs, a spattering of work experience involving the subject matter.

The Plaintiff's expert appears to hold no degree in statistical analysis and, thus, appears wholly unqualified to testify regarding the acceptance within the relevant scientific community, that of statisticians, of the methodologies he employs. Further, given the dearth of this "expert's" experience in statistics, he is wholly unqualified to offer opinions as to any causal relation between any HUD employment practice and any statistical disparities.

**IV.    The Plaintiff's "Expert" Has Either Wholly Failed to Address The Question Before This Court Or has Failed To Utilize Reliable Methodologies In Reaching His Conclusions**

Finally, under the Daubert standard, the Plaintiff's proposed expert's testimony should be excluded because his analysis fails to address the relavant groups for analysis of a gender based discrimination claim. Either the Plaintiff's "expert" has wholly failed to address the question before this Court, *i.e.*, whether HUD's policies were discriminatory against men (as opposed to *White* men), in which case his opinion is irrelevant, or, he has utterly failed to engage in reliable analysis of the issue, in which case the opinion must be exclude under Daubert.

---

[8]If, however, what is proffered by the Plaintiff are alleged statistical disparities in the hiring of particular groups that are apparent to even lay people, the Plaintiff should not be allowed to drape such evidence in the guise of "expert" opinion, thereby hoping to sway the jury with the imprimatur of "scientific" evidence.

At issue in this matter is the Plaintiff's claim of *gender* discrimination. As has been noted previously, Plaintiff has attempted, and failed, to add claims of race discrimination. Hence, at issue is solely gender discrimination, that is, whether HUD's policies discriminate against men (not *White* men). The Plaintiff's "expert," by contrast, seeks to testify regarding the disparate impact of HUD's AEP on *White* males, not males generally. The testimony is either irrelevant, because it does not address the issue before the Court, and further, the methodology is so fundamentally flawed that it must be excluded under Daubert. See, e.g., Rodriguez v. Smithkline Beecham, 224 F.3d 1, 7 -8 (1st Cir. 2000) (upholding exclusion of statistical evidence that failed to address the relevant pool); Blizard v. Frechette, 601 F.2d 1217, 1223-24 (1st Cir.1979) (upholding exclusion of statistical evidence because, *inter alia*, "appellant's offer was in no way related to the available pool of qualified female applicants for the positions filled predominantly by males").

For purposes of a claim of gender discrimination -- and that is the only claim pressed in this action -- the relevant statistical disparity, if any, is between the hiring of *all males* and *all females* for positions within HUD.

<u>Conclusion</u>

Wherefore, Defendant respectfully requests that the Plaintiff's Proposed Expert testimony be excluded and to the extent that the testimony may be deemed relevant, and not precluded under Fed. R. Evid. 403, the Defendant requests a <u>Daubert</u> hearing as to its admissibility.

Respectfully submitted,
MICHAEL J. SULLIVAN,
United States Attorney

By:   /s/ Mark J. Grady
Mark J. Grady, Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA  02210
617-748-3136

<u>L.R. 7.1 Certificate of Compliance</u>

I hereby certify that I conferred with plaintiff's counsel. No agreement could be reached as to this issue.

/s/ Mark J. Grady
Mark J. Grady
Assistant U.S. Attorney

<u>Certificate of Service</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 27, 2008.

/s/ Mark J. Grady
Mark J. Grady
Assistant U.S. Attorney