UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD PATOSKI, )<br><br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALPHONSO JACKSON, Secretary, )<br>Department of Housing and Urban )<br>Development, )<br>)<br>Defendant. ) | Civil Action No. 05-11086-RCL |

**MOTION IN LIMINE TO EXCLUDE TESTIMONY OF OTHER INDIVIDUALS
DENIED POSITIONS BY HUD, EVIDENCE OF ALLEGED MANIPULATION OF
CIVIL SERVICE REGULATIONS, AND EVIDENCE REGARDING THE
UNDERSTANDING OF HUD'S EEO PROCESSES BY INDIVIDUALS UNINVOLVED
WITH THE COMMUNITY BUILDER SELECTION PROCESS**

The 1997 Non-Selection Claim[1]

Briefly outlining the facts of the Plaintiff's claim, in 1997 HUD created a new position,

the "Community Builder," who would work with communities to access HUD programs. There

were four such positions created in the Boston office. The Plaintiff, along with ten other

candidates, made the "best qualified list" from which the final selections were made. The

selecting official, Jose Citron ("Citron"), was provided the list of 11 possible candidates for the

position, of whom, he could select any four.

In making his decision, Citron contacted Mary Lou Crane ("Crane"), the Secretary's

_____

[1]This Court has entered summary judgment in favor of the Defendant as to all other
claims of the Plaintiff's First Amended Complaint. See Docket # 62 and Notes of November 5,
2007, Proceedings.

Representative for New England, who would supervise the community builders, regarding the

candidates and their suitability for the Boston positions.[2]  Crane did not recommend Patoski,

reporting that she felt that Patoski lacked the necessary interpersonal skills for the CB position.

As result, Pastoski was ranked last of the eleven candidates by Citron.

Ultimately, three men and three women were selected for the position (one woman and

one man declined to accept the position).

In this action, the Plaintiff seeks to introduce other evidence of HUD's prior and

subsequent conduct for, according to the Plaintiff, the purpose of establishing HUD's intent to

discriminate against Mr. Patoski and/or that HUD's proffered explanation is a pretext for

discrimination.  In this regard, Plaintiff proposes: (1) to call three witnesses, Larry Price, Everett

Rothschild, and Edward Houchin, to testify regarding positions that they have been denied at

HUD, and, which were given to "minorities" or "women and minorities," along with alleged

delays in the processing of their respective EEO complaints; (2) to call a member of the HUD

OIG to testify regarding an audit performed of HUD's hiring practices in filling the Community

Builder Fellow position; (3) to call three witnesses to testify regarding alleged improprieties in

merit staffing procedures at HUD; and (4) to call Cheryl Ann Teninga, one of the selectees for

the 1997 Boston CB position, regarding her understanding of HUD's EEO policies.

Because the testimony that the Plaintiff seeks to elicit from these individuals is irrelevant,

it should be excluded.  Further, even of the testimony is marginally relevant, it should be

excluded under Fed. R. Evid. 403 because such evidence would be unduly prejudicial, distract

---

[2]The Plaintiff contends that in these circumstances that he may prevail if he can establish that either Crane or Citron harbored discriminatory intent.  See Cariglia v. Hertz Equipment Rental Corporation, 363 F.3d 77 (1st Cir. 2004).

the jury from the question before it and would unduly complicate the trial of this matter.

      A.        Larry Price, Everett Rothschild, and Edward Houchin

           1.      Evidence That These Individuals Were Denied Positions in Favor of "Minorities" Is Irrelevant

The Plaintiff seeks to call Price, Rothschild and Houchin, to testify at trial regarding other positions at HUD which they contend that they were denied in favor of "women and minorities." As an initial matter, as the instant claim does not involve claims of racial discrimination, claims that positions were afforded to "minorities" are wholly irrelevant. See Kelly v. Boeing Petroleum Svcs., Inc., 61 F.3d 350, 357-360 (5th Cir. 1995) (holding comments pertaining to race, sex and national origin have no tendency to prove disability discrimination and were therefore rightly excluded pursuant to Federal Rules of Evidence 401 and 403); Brooks v. CBS Radio, Inc., 2007 WL 4454312, *12 (E.D. Pa. 2007)("While such conduct may be evidence of discrimination on the basis of sex, courts have held that evidence of sex discrimination in cases involving race discrimination, and vice versa, is irrelevant given the lack of correlation between the two kinds of discrimination."); Waters v. Genesis Health Ventures, Inc., 400 F.Supp.2d 808, 814 (E.D. Pa. 2005)(excluding evidence of sex discrimination in a race claim); Olle v. Columbia University, 332 F.Supp.2d 599, 614 (S.D.N.Y. 2004) ("To the extent that the surveys include complaints related to purported discrimination experienced or observed, they relate to alleged race-based discrimination or sexual orientation discrimination, and are not relevant to Olle's claims of sex- and age-based discrimination here"); Simonetti v. Runyon, 2000 WL 1133066, * 6 (D.N.J. 2000) (same); Rauh v. Coyne, 744 F.Supp. 1181, 1183 (D.D.C.1990) (finding that plaintiff alleging gender discrimination may not introduce evidence of racial discrimination because it is not relevant under Federal Rules of Evidence 401 and would result

in unfair prejudice).

Further, to the extent that such testimony is deemed even marginally relevant, it should

be excluded under Fed. R. Evid. 403.  Rule 403 provides for the exclusion of even relevant

evidence where "its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay,

waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  The

introduction of evidence of race based discrimination into this case, which does not involve such

a claim, would unduly prejudice the Defendant, confuse the issues for the jury, unduly delay the

trial of this matter and waste the court's and the jury's time.  See Fed. R. Evid. 403; and cases

cited, supra.

> 2.    Testimony That These Individuals Were Denied Positions in Favor of
>        Women Should Be Excluded Under Fed. R. Evid. 403

Unquestionably, circumstantial evidence, including discrimination against other

employees is relevant and potentially admissible.  See, e.g., Cummings v. Standard Register Co.,

265 F.3d 56, 63 (1st Cir. 2001) ("evidence of a discriminatory 'atmosphere' may sometimes be

relevant to showing the corporate state-of-mind at the time of the termination.  While such

evidence does not in itself prove a claim of discrimination, it does tend to add 'color' to the

employer's decisionmaking processes and to the influences behind the actions taken with respect

to the individual plaintiff.")(citations and quotations omitted).  That being said, such evidence is

similarly, unquestionably subject to exclusion under Fed. R. Evid. 403.  "It is true that evidence

of discrimination can be 'too attenuated' to justify admission, and . . . testimony to this effect

should be let in sparingly." <u>Cummings</u>, 265 F.3d at 63 (citation omitted).[3]

The Plaintiff undoubtedly suggests that the denial of other positions to other males is

evidence that HUD discriminates against males.  Nonetheless, if all that these individuals are

going to testify to is that they did not get positions or promotions that they felt they deserved,

they have nothing useful to offer a factfinder.  They are no more probative than would be

evidence introduced by the defendant of individual males who testified that they received

positions, hence, HUD could not have discriminated against this Plaintiff based upon his male

gender.  <u>Compare</u>, <u>e.g.</u>, <u>Thomas v. Bed Bath & Beyond, Inc</u>., 508 F.Supp.2d 1264, 1282 (N.D.

Ga.2007).[4]

---

[3]As to evidence of a "discriminatory atmosphere" against males, the evidence in this
matter does not support such a theory.  For instance, to the extent that the Plaintiff relies upon
the existence of HUD's Affirmative Employment Plan as the foundation for such claims, even
cursory statistical review reveals no statistical support for such claims.  For example, from 1994
through 1999, there was almost no change whatsoever in the relative representation of males and
females within HUD's workforce.  In FY 1994 HUD employed 12,493 individuals: 41.3% men
and 58.7% women.  By 1999, HUD employed 9,446 individuals: 40.7%  men and 59.3% women.
<u>See</u> Defendant's Motion in Limine to Exclude Statistical Evidence With Respect to *White* Males,
p. 5 n.4.  Hence, as one example, in that five year period the percentage of male employees at
HUD dropped less than 1%.  <u>See</u> <u>also, Watson v. Fort Worth Bank & Trust</u>, 487 U.S. 977,
994-95 (1988) ("Our formulations, which have never been framed in terms of any rigid
mathematical formula, have consistently stressed that statistical disparities must be sufficiently
substantial that they raise such an inference of causation.") (plurality opinion).

[4]For her second pretext argument, Thomas points to affidavits from three
former African-American BB & B [Bed Bath and Beyond] employees who
believe that the company discriminated against them because of their race. [These
employees] . . . state that they perceived race discrimination while employed at
BB & B.  All three men allege that they witnessed the company's failure to
promote African-American employees, [and two] . . . state that BB & B passed
them over personally for promotions in favor of less-qualified Caucasian
candidates. . . .  Such accounts, however, do not constitute statistical evidence and
are no more probative in this case than would be anecdotal evidence from other
employees to the effect that they never witnessed discrimination and thought
Plaintiff to be less qualified than others.

Perhaps more importantly, there is no logical connection between the denial of the

positions for Price, Rothschild or Houchin  and the two decision makers involved in the decision

not to hire Mr. Patoski. "[A]necdotal evidence of discrimination should only be admitted if the

prior incidences of alleged discrimination can somehow be tied to the employment actions

disputed in the case at hand."  Heno v. Sprint/United Management Co., 208 F.3d 847, 856 (10th

Cir. 2000).  There is no evidence that Mr. Citron or Ms. Crane, the decision makers at issue, had

any involvement whatsoever with the decisions not to hire Price, Rothschild or Houchin for any

position.  See, e.g.,  Wyninger v. New Venture Gear, Inc., 361 F.3d 965,  (7th Cir. 2004)

(upholding exclusion of claims of discrimination by another employee where "the evidence

involved a different employment decision in a different department made by different

decisionmakers."); Kline v. City of Kansas City, Fire Dept., 175 F.3d 660, 668 (8th Cir. 1999)

(same).

Further, allowing testimony from these individuals will undoubtedly distract the jury

from the question presented, whether HUD discriminated against Mr. Patoski (rather than some

other individual) on the basis of his age or gender and, will require "mini trials" as to each

employment decision in which the defendant is called upon to defend the merits of dozens of

employment decisions with little or no connection to the hiring decision at issue.  See

McWhorter v. City of Birmingham, 906 F.2d 674, 679 (11th Cir.1990)(holding that the district

court did not abuse its discretion in excluding testimony from employees other than the plaintiff,

who claimed they had also been harassed, because the admission of other employees' grievances

"could have resulted in a series of mini-trials centering on the employment history of each

---

Thomas, 508 F.Supp.2d at 1282.

[employee]").

  3.    Evidence Regarding Alleged Delays in EEO Processing of the Complaints of
        Price, Houchin and Rothschild Is Irrelevant

To the extent that the Plaintiff would seek to call witnesses to testify regarding alleged

delays in the processing of their respective EEO complaints, such evidence is wholly irrelevant

to the issues before this Court.  Further, even if there is some manner by which the Plaintiff

could argue that the evidence is even marginally relevant, introduction of this evidence should be

precluded under Fed. R. Evid. 403.

  B.    Testimony of D. Michael Beard

D. Michael Beard is an Auditor in HUD's Office of Inspector General.  In the course of

his duties, he undertook an audit of HUD's hiring practices for Community Builder Fellows.

Community Builder Fellows were non-civil service positions and were for one or two year

appointments.  Speaking generally, the audit revealed that HUD did not properly follow civil

service hiring practices in staffing the Community Builder Fellow positions and had exceeded is

Schedule A[5] authority in the hiring of the Community Builder fellows.

Mr. Patoski did not apply for a Community Builder fellow position.  Whatever the results

of the audit (and the findings were contested by HUD) evidence of these issues is irrelevant to

the issue of gender and age discrimination raised in this case.  Further, the audit does not

conclude that HUD acted in a discriminatory fashion in selecting Community Builder fellows

---

[5]"Upon specific authorization by OPM, agencies may make appointments under this
section to positions which are not of a confidential or policy-determining character, and which
are not in the Senior Executive Service, for which it is not practicable to examine. Examining for
this purpose means application of the qualification standards and requirements established for
the competitive service. Positions filled under this authority are excepted from the competitive
service and constitute Schedule A."  5 C.F.R. § 213.3101.

and, even if there were such evidence, there is no evidence that the decision makers with respect

to Mr. Patoski's non selection for the 1997 Community Builder position played any role in that

process.   Nor can the Plaintiff offer any statistical evidence demonstrating any nationwide effort

to discriminate against males so as to argue that improprieties in the Community Builder Fellow

hiring process should be attributed to the Community Builder hiring process.  See, e.g,

Defendant's Motion in Limine to Exclude Testimony Regarding Alleged Disparate Impact on

White Males, p. 5, n.5 (noting the absence of statistical support for any claim of discrimination

against males).

        Further, the inclusion of such evidence, will undoubtedly unduly delay this trial.  Again,

such evidence creates the need for a "mini-trail" regarding the audit, its methodologies and

conclusions.  Given the, at best, marginal relevance of such evidence, the testimony should be

excluded under Fed. R. Evid. 403.

        C.        Testimony From Carmen Valenti, Jeffery Lahmers, Susan Lang and William
                  Jolley

        The Plaintiff seeks to call Valenti and Lahmers to testify regarding purported improper

conduct of HUD in merits staffing procedures for a Public Housing Revitaliztaion Specialist

("PHRS") position for which Plaintiff applied in 2000.[6]  As an initial matter, the Defendant has

prevailed at summary judgment regarding Plaintiff's claims that he was discriminated against on

the basis of his gender and race with respect to his non-selection for this position.  As the

Defendant has demonstrated that no rational factfinder could concluded that the evidence

---

[6]As this Court recalls, the Plaintiff had also pursued claims in this action that his non-selection for that position was based on race and gender discrimination.  This Court granted the Defendant's Motion for Summary Judgment as to those claims.

proffered by the Plaintiff warrants a finding of discrimination in the PHRS non-selection, this

evidence clearly should not be admitted as evidence of discrimination.

Similarly, Plaintiff proposes to call two other witnesses, Susan Lang and William Jolley

to testify, respectively, "how merit staffing procedures were manipulated in the Boston Field

Office to promote targeted female employees" and "regarding age discrimination practices in

merit staffing at HUD."

As has been previously argued, such evidence is of no relevance to the claim remaining

before this Court.  There is no evidence that either Mr. Citron or Ms. Crane played any role in

the decision making process for the 2000 PHRS position, nor does Plaintiff explain how the

testimony of Lang or Jolley could be logically connected to the decision at issue.  See Heno, 208

F.3d at 856; Schrand v. Federal Pacific Elec. Co., 851 F.2d 152, 156 (6th Cir. 1988) (where

testimony of other employees alleging discrimination did not involve the same supervisors and

occurred in a different part of the country, the lower court properly excluded such evidence

because "there was no evidence from which the alleged statements of the witnesses could

logically or reasonably be tied to the decision to terminate [Plaintiff]."); Contrast, e.g., Morgan

v. New York Life Ins. Co., 507 F.Supp.2d 808, 827 (N.D. Ohio 2007)(admitting testimony of

alleged discrimination by other employees involving the *same supervisors)*;[7] and Lewis v. Home

---

[7]Morgan also distinguishes Schrand on the basis that the Morgan Plaintiff was alleging,
as does Patoski, a "pattern and practice" of discrimination.  The Plaintiff will undoubtedly argue
similarly, that Schrand is distinguishable because he seeks to pursue a "pattern and practice
claim."  In the instant matter, as has been noted in the Defendant's Other Motions in Limine, the
Plaintiff simply cannot provide evidence to support a claim of pattern and practice
discrimination against males.  For instance, between 1994 and 1994, male representation at HUD
declined less than 1%.  See supra note 3.  Further, within the Administrative Job category (the
category encompassing the Community Builder position) male representation at HUD fell only
3.2% between 1994 and 1999.  Hence, over a five year period, this alleged "pattern and practice"

Depot U.S.A., Inc., 2007 WL 1100422, *2 (W.D.Tex. 2007) (same).

Further testimony regarding the PHRS hiring process, occurring two years after the Community Builder Selection process, involving different decision makers, is too remote in time to be admissible evidence of intent or pretext with respect to the 1998 Community Builder position.  See Cummings, 265 F.3d at 63 ("It is true that evidence of discrimination can be 'too attenuated' to justify admission, and . . . testimony to this effect should be let in sparingly.") (citation omitted).  Similarly, the Plaintiff's proffer fails to establish that the testimony of Lang and Jolley is not similarly "attenuated."

D.      Testimony of Cheryl Teninga

The Plaintiff seek to call Cheryl Teninga, one of the selectees, for the 1997 Community Builder position to testify regarding her understanding of HUD's EEO hiring policies.[8]  As she had no part in the selection process for the 1998 Boston Community Builder position, such testimony should be excluded as irrelevant because there is no logical connection to the issues in this matter.  See Argument and cases cited supra.  Similarly, to the extent that this evidence is marginally relevant, it should be excluded under Fed. R. Evid. 403, for the same reasons noted

_____

of discrimination against males accomplished a less than 1% decrease in the representation of males in HUD's workforce generally, and, only a 3.2% decrease in the relevant job category. In light of the utter absence of statistical evidence to support claims of "pattern and practice discrimination," it should not be sufficient for Plaintiff to simply state that Schrand is distinguishable because he *claims* a pattern and practice of discrimination.  There must be some evidence to actually support this "pattern and practice" claim with respect to the claims of gender discrimination, and, clearly, there is not.  Further, the holding of Heno, supra, that the Plaintiff must establish a logical connection to this case is not distinguishable on such a basis and the Plaintiff fails in this regard as well.

[8]Teninga was deposed in connection with the 2000 PHRS selection process, in which she was the selecting official for HUD.

10

above.

Conclusion

For the foregoing reasons, Defendant requests that the Plaintiff be precluded from

offering testimony from these other employees regarding alleged discrimination.

Respectfully Submitted,
MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By:    /s/ Mark J. Grady_____
Mark J. Grady, Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way– Suite 9200
Boston, MA 02210
617) 748-3136

Certificate of Compliance

I certify that I have discussed the relief requested by way of this Motion with Plaintiff's
counsel.  No agreement could be reached as to this issue.

/s/ Mark J. Grady_____
Mark J. Grady
Assistant U.S. Attorney

Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non registered participants on March 27,
2008.

/s/ Mark J. Grady_____
Mark J. Grady
Assistant U.S. Attorney