UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RICHARD PATOSKI, | ) |
| Plaintiff, | ) Civil Action No. 05-11086-EFH |
| v. | ) |
| ALPHONSO JACKSON, Secretary, Department of Housing and Urban Development, | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE TO THE PLAINTIFF'S MOTION *IN LIMINE*
"RELATING TO HUD'S AEP PROGRAM"**

Plaintiff's "Motion *in Limine* Relating to HUD's AEP Program" (the Motion) is nothing more than an attempt to expand and complicate the trial by raising claims and allegations previously dismissed by Judge Lindsay and rejected by Magistrate Judge Alexander. Plaintiff's Motion ignores the prior rulings of both Judge Lindsay and Judge Alexander and seeks to have this Court do the same. Hence, the Motion is nothing more than a thinly veiled attempt to circumvent prior rulings and to have this Court overrule decisions made by predecessor judges at an earlier stage of the litigation. The attempt should be rejected.

Specifically, the Motion seeks to have the Court give two instructions to the jury: 1) that HUD's "AEP Program" was unlawful; and 2) that it is unlawful for the government to have as an aspirational goal that its workforce reflect the diversity of the United States civilian workforce as a whole. [D. 70].[1]

---

[1] Matters filed on the Court's Docket are cited as [D. *].

To the extent that plaintiff claims that HUD's AEP constituted an "unlawful affirmative action plan," Judge Lindsay has not only rejected Plaintiff's Motion for Summary Judgment seeking such an instruction but -- months ago -- granted the Defendant's Motion for Summary Judgment as to this issue, dismissing the claim entirely. [Order dated November 5, 2007; D. 62].

Further, to the extent that Plaintiff seeks to use the AEP to support his claim that gender discrimination contributed to his non-selection for the 1997 Community Builder position, the Plaintiff would purport to introduce evidence that HUD's AEP discriminates against <u>white males</u>, rather than males generally.  The Plaintiff's Complaint makes no claim of race-based discrimination and Magistrate Judge Alexander has expressly denied a motion to amend the Complaint to add any claims alleging race based discrimination, concluding that the Plaintiff had failed to administratively exhaust such claims and that the administrative complaint filed by the Plaintiff failed to raise *any* issue of race-based discrimination.  See <u>Patoski v. Jackson</u>, 477 F.Supp.2d 361 (D. Mass. 2007).[2]

Finally, Plaintiff's argument with respect to "diversity" as a goal lacks any basis in fact or law and, thus, should be denied.

In sum, the rulings Plaintiff now seeks  would have the effect of adding into the case, on the eve of trial, claims that already have been rejected and are without legal or factual merit.

## Facts

The Plaintiff, Richard Patoski ("Patoski"), brought this action based on allegations of unlawful discrimination by the Department of Housing and Urban Development ("HUD")

---

[2]As Magistrate Judge Alexander's opinion was published, references are made to the published opinion and not the Docket.

relating to two positions for which plaintiff applied: a Community Builder ("CB") position in 1997; and a Public Housing Revitalization Specialist ("PHRS") position in 2000. Specifically, he alleged that HUD discriminated against him on the basis of his gender and age with respect to the 1997 CB non selection, Counts I-IV, and that HUD discriminated against him on the basis of race (white) and gender with respect to the 2000 PHRS position, Counts V and VI. He also alleged that HUD's AEP constituted an "unlawful affirmative action plan," Count VII; and that ongoing practices of HUD prevented him from competing equally for future positions on the basis of his race and gender in violation of Title VII and the Fifth Amendment, Counts VIII and IX. See Plaintiff's First Amended Complaint [D. 12].

On November 9, 2006, Plaintiff moved to amend the Complaint to add claims of race based discrimination with respect to the 1997 Community Builder position. [D. 21]. The Defendant opposed the motion [D. 23], and, after hearing, Magistrate Alexander denied the motion to amend. [D. 29].

After hearing on November 5, 2007, Judge Lindsay granted summary judgment in favor of HUD as to all claims except Counts I-IV. [Order dated November 5, 2007; D. 62]. That ruling meant that the only issue to be tried was whether plaintiff's non-selection for the 1997 CB position was based on age and gender discrimination.

The 1997 Non-Selection Claim

Briefly, the 1997 CB position was a newly created position within HUD. There were four such positions created in the Boston office. The Plaintiff, along with ten other candidates, made the "best qualified list" from which the final selections were made. The selecting official, Jose Citron ("Citron"), was provided the list of 11 possible candidates for the position from

which he could select any four.

In making his decision, Citron contacted Mary Lou Crane ("Crane"), the Secretary's Representative for New England, who would supervise the community builders, regarding the candidates and their suitability for the position.[3]  Crane did not recommend Patoski, reporting that she felt that Patoski lacked the necessary interpersonal skills for the CB position.  As result, Pastoski was ranked last of the eleven candidates by Citron.

Ultimately, three men and three women were selected for the position (one woman and one man declined to accept the position).

## Argument

**I.  The Defendant Was Granted Summary Judgment As To Plaintiff's Claim That HUD's AEP Was An Illegal Affirmative Action Plan**

As is now claimed in the Motion, Count VII of the First Amended Complaint alleged that HUD's AEP was an illegal affirmative action plan.  The parties filed cross motions for summary judgment as to this claim, among others. [D. 41-43, 45-47, 50 and 53].  In seeking summary judgment, the Plaintiff expressly sought the relief now requested from this Court, asking Judge Lindsay to conclude that HUD's AEP was illegal and that the jury be instructed as such.  See Plaintiff's Memorandum in Support of the Motion for Summary Judgment [D. 42], p. 6. ("Plaintiff seeks a declaration, pursuant to Rule 56(d), that the AEP constituted an unlawful discriminatory practice, so that when the rest of the case is tried, the jury will know that when Plaintiff was rejected, that HUD illegally disfavored White males through this formal

---

[3] The Plaintiff contends that in these circumstances that he may prevail if he can establish that either Crane or Citron harbored discriminatory intent.  See Cariglia v. Hertz Equipment Rental Corporation, 363 F.3d 77 (1st Cir. 2004).

program."). The Defendant, conversely, argued that any claim with respect to the AEP was moot as the Program had been superseded and that the Plaintiff had failed to establish any connection between the AEP and the hiring decision at issue such that a determination of its legality would be relevant to this case. [D. 47, p. 11; D. 53, p. 12-14].

After hearing, Judge Lindsay not only rejected the Plaintiff's argument that Plaintiff was entitled to a finding that HUD's AEP was illegal, he granted the Defendant's Motion for Summary Judgment as to Count VII (among others), finding that the claim was moot and that the Plaintiff had failed to establish that HUD's AEP played any role in the Community Builder process. [Order dated November 5, 2007; D. 62]. In so doing, Judge Lindsay specifically rejected Plaintiff's argument that the validity of HUD's AEP was a live issue for purposes of Plaintiff's gender and age discrimination claims in Counts I-IV. [Order dated November 5, 2007; D. 62].[4]

The arguments now pressed by way of the Motion in Limine are *identical* to those pressed in the Plaintiffs' Motion for Summary Judgment, [compare D. 42 and 70], claims which have been rejected by Judge Lindsay. The Plaintiff cannot, by Motion in Limine, seek to re-litigate an issue which Judge Lindsay has already decided at the summary judgment stage.

Nor is this the Plaintiff's first attempt to overturn that ruling. The Plaintiff clearly

---

[4]In light of this Court's assignment, Defendant has requested transcripts of the Summary Judgment Hearing reflecting Judge Lindsay's deliberative process and will supplement this memorandum. Although, it should be noted, the Plaintiff, himself, acknowledges that Judge Lindsay has expressly rejected the argument that the validity of the AEP remained a live issue because of the gender discrimination claims now pending before this Court. See, Plaintiff's Motion for Certificate of Appealability, [D. 61] p. 2 ("The Court rejected Plaintiffs' second argument that Plaintiff's request for declaratory judgment was a live issue, given the parallel gender discrimination claims remaining in counts II and IV.")

recognized the preclusive effect of Judge Lindsay's decision, and filed a motion requesting that Judge Lindsay certify the dismissal of that claim for interlocutory appeal. [D. 61]. In that motion, the Plaintiff argued, as he had in opposing summary judgment on this claim (and as he now again argues), that HUD's AEP was illegal and that the plaintiff was entitled to a ruling on its validity so that the jury could be instructed on the issue. [D. 61]. That Motion was also denied by Judge Lindsay. [Order, dated December 3, 2007].

The present motion simply represents yet another attempt to evade Judge Lindsay's ruling. Further, the motion makes no attempt to describe why these prior rulings should be overturned, ignoring them entirely. As Judge Lindsay has previously not only rejected Plaintiff's Motion for Summary Judgment seeking a jury instruction that HUD's AEP was illegal, but has, in fact, granted summary judgment in favor of the Defendant on this claim, this Court should not disturb the law of this case. And, as judgment has entered in favor of the Defendant on the claim that HUD's AEP constituted an "unlawful affirmative action program," the issue of the legality of HUD's AEP plan is simply no longer one before the Court. Thus, the Plaintiff's Motion in Limine should be denied.

## II.   This Court Should Not Overturn Judge Lindsay's Prior Decision Granting Summary Judgment to the Defendant

This Court should not undertake to overturn Judge Lindsay's prior summary judgment decision, nor should it entertain a motion to do so in the guise of a Motion in Limine. "[U]nless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation." Flibotte v. Pa. Truck Lines, Inc., 131 F.3d 21, 25 (1st Cir.1997). While this Court has the same discretion that Judge Lindsay would possess to revisit a ruling on summary judgment at any time before trial, see, e.g.,

Bethlehem Steel Export Corp. v. Redondo Construction Corp., 140 F.3d 319, 321 (1st Cir. 1998), the grant of summary judgment disposing of some claims and thereby narrowing the issues for trial should not be lightly disturbed, particularly where it would broaden the scope of the trial.  Alberty-Velez v. Coorporacion de Puerto Rico Para La Difusion Publica, 242 F.3d 418, 422-23 (1st Cir. 2001).

It is beyond rational dispute that the interjection of legal claims with respect to HUD's AEP, which have been previously dismissed, will unquestionably expand and complicate the trial of this matter.  Further, reversing previous decisions in this matter would unquestionably be unfair to the Defendant, whose trial preparation and strategy has proceeded in accord with the Court's rulings.  It is, to say the least, unreasonable to expect the defendant to have prepared to now conduct a trial on claims on which it had prevailed at summary judgment.  See, e.g., Williams v. Commissioner of Internal Revenue, 1 F.3d 502, 503 (7th Cir. 1993) (stating that "[l]itigants have a right to expect that a change in judges will not mean going back to square one").

Moreover, even assuming that the Motion in Limine is construed as properly seeking reconsideration (it is not), the Motion utterly fails to provide any reasoned basis to do so.  As previously noted, the Motion in Limine does nothing more than rehash arguments previously rejected by Judge Lindsay.  [Compare D. 42 and 70].

Furthermore, the Plaintiff addresses none of the four factors identified by the First Circuit as controlling the question of when a departure from the law of the case is justified.  Ellis v. United States, 313 F.3d 636, 647-648 (1st Cir. 2002).  Indeed, three of these principles (the initial ruling was preliminary or made on an inadequate record; there has been material change in

controlling law; there is newly discovered evidence) are completely inapplicable to the present case. The summary judgment record was unquestionably complete, there has been no intervening change in law, nor any newly discovered evidence.

The only arguably apposite principle is the avoidance of "manifest injustice." Id. Yet, the Plaintiff's Motion makes no argument in this regard, instead proceeding as if Judge Lindsay had never granted the Defendant summary judgment on this issue, nor denied the plaintiff's motion for a certificate of appealability. In these circumstances, the Plaintiff has clearly failed to establish "manifest injustice." Indeed, the Motion cites to the very facts and arguments, the Summary Judgment record, previously rejected by Judge Lindsay.

Hence, this Court should not disturb Judge Lindsay's prior ruling, not only rejecting Plaintiff's request for a jury instruction that HUD's AEP was illegal, but granting summary judgment in favor of the Defendant.

### III.   Plaintiff's Attempts To Include Claims of Race Based Discrimination With Respect To the Community Builder Position Have Been Previously Rejected By This Court

To the extent that the Plaintiff seeks to introduce evidence that HUD's AEP discriminates against *White* males, the Plaintiff simply ignores a prior Order precluding him from adding claims of race based discrimination. See Patoski v. Jackson, 477 F.Supp.2d 361 (D. Mass. 2007). The instant Motion, seeking a jury instruction with respect to the purported illegality of HUD's AEP as applied to *White* males is yet another attempt to introduce claims previously rejected in this matter.[5]

---

[5] The Plaintiff clearly is aware of the difference between a claim of gender based discrimination and a claim of gender *and race* discrimination. For example, Counts V and VI of the First Amended Complaint alleged *race and gender* discrimination with respect to a 2000 non-selection for a Public Housing Revitalization Specialist position at HUD. The Defendant's

This issue, whether Plaintiff may seek to raise claims of race based discrimination, *i.e.*, discrimination against *White* males, with respect to the Community Builder position, is – like the AEP claim noted above – not new to this case. On November 9, 2006, Plaintiff moved to amend the Complaint to add claims of race based discrimination with respect to his non-selection for the Community Builder position. [D. 21]. The Defendant opposed the motion [D. 23], and, after hearing, Magistrate Alexander denied the motion to amend. Patoski, 477 F.Supp.2d at 365.

In denying the motion, Judge Alexander found that the Plaintiff had not pursued *any* race based discrimination claims administratively and was therefore barred from brining any race based discrimination claim in this court. Patoski, 477 F.Supp.2d at 362-363. Judge Alexander also expressly found that *no claim* of race based discrimination could reasonably have been expected to grow out of the administrative claim filed by Patoski. Patoski, 477 F.Supp.2d at 363-365 (citing Powers v. Grinnell, 915 F.2d 34, 38 (1st Cir. 1990).[6]  This, again, is the law of this case. See Section II, supra.[7]

The Plaintiff now apparently seeks to avoid this ruling by arguing that he may pursue claims of racial discrimination within his gender discrimination claim, under what is referred to as the "sex-plus" theory. See, e.g., Phillips v. Martin Marietta, 400 U.S. 542, 544 (1971)

---

Motion for Summary Judgment as to those claims was allowed by Judge Lindsay. [Order dated November 5, 2007; D. 62].

[6]Plaintiff was represented by counsel throughout the administrative proceedings and is not entitled to any liberal construction of the administrative claim. Contrast, Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir.1996)("where, as here, the employee acts pro se, the administrative charge is liberally construed in order to afford the complainant the benefit of any reasonable doubt.").

[7]Moreover, the Court concluded that the Plaintiff knew or should have known of the possibility of race based claims as early as 1999, but had not brought them forward until the second motion to amend the complaint in 2006. Patoski, 477 F.Supp.2d at 365.

(holding that Title VII does not permit an employer to have "one hiring policy for women and another for men-each having pre-school-age children."). Presumably, such argument posits that since the Plaintiff properly exhausted a claim of gender discrimination, he can pursue a claim for "sex- plus" race as part of that claim. Stated another way, the Plaintiff apparently argues that he need not administratively exhaust a race based discrimination claim here because his race is simply the "plus" characteristic of his gender claim. Hence, Plaintiff would have this Court believe that Magistrate Judge Alexander's conclusion that he cannot pursue any race based claims in this matter does not apply.

     Putting aside for the moment the exact contours of such a claim (neither the District Court of Massachusetts nor the First Circuit have addressed it), the fact that such a theory may exist does not exempt the Plaintiff from Title VII's exhaustion requirements. Claims of "sex plus" discrimination are subject to exhaustion just like any other claim. See, e.g., Johnson v. Dillard's Inc., 2007 WL 2792232 (D.S.C. 2007) (addressing argument that the Plaintiff had not exhausted a "sex plus" theory of recovery and concluding that the claims could proceed because the claims of sex plus race discrimination were raised in the administrative claim). Patoski cannot "file general charges with the [administrative agency] ... and then expect that this allegation will permit all claims of . . . discrimination in a subsequent law suit." Lattimore, 99 F.3d at 464. Stated another way, the Plaintiff cannot claim administratively that gender and age discrimination *alone* caused his non selection and then - through artful pleading, or otherwise - seek to bring a claim in this Court based on alleged racial discrimination.

     The Plaintiff did not administratively claim that his non selection for the Community Builder position was on account of his gender *and race*. That is to say, he did not

administratively pursue a claim of "sex-plus" race.  Instead, Patoski claimed that his age and gender were responsible for his non-selection.  Any argument that Patoski's administrative claim raised any claim of racial discrimination has been rejected by Judge Alexander.

To be clear, at issue before Magistrate Judge Alexander with respect to the Motion to Amend was whether the Plaintiff's administrative complaint contained *any claim* that would have placed the defendant on notice that there was a racial component.  Hence, Magistrate Judge Alexander properly undertook to review not only whether a claim of racial discrimination was overtly asserted,[8] but whether such any such claim could "reasonably be expected to grow out of [the administrative claim]."  Patoski, 477 F.Supp.2d at 363 (citing Powers, 915 F.2d at 38).

Needless to say, if the Plaintiff had claimed administratively that discrimination based upon his gender *and his race* had contributed to the discharge (he did not), the Plaintiff would have easily cleared this hurdle.  As the Plaintiff failed to present any evidence that he had raised any issue with respect to racial discrimination in the administrative process,[9] Magistrate Judge Alexander properly concluded that the Plaintiff could not pursue any claims of racial discrimination in this Court. Patoski, 477 F.Supp.2d at 363-365.

As regards the instant Motion, "[a] Title VII suit may extend as far as, but not beyond, the parameters of the underlying administrative charge." Jorge v. Rumsfeld, 404 F.3d 556, 564

---

[8] In this regard, Magistrate Judge Alexander noted that "Patoski does not deny that he failed to overtly assert a charge of race based discrimination during his administrative proceedings." [D.29, p. 3].  Further, she found that the Plaintiff was on notice of potential race based discrimination claims as early as 1999, and could have, but did not, bring this claim to the attention of the EEOC in the administrative process. [D. 29, p. 9].

[9] See, [D. 29, p.2. ("Patoski presents no factual basis to believe that he brought the issue of racial discrimination to the attention of the EEOC"].

(1st Cir. 2005). Here, Judge Alexander has previously concluded that the Plaintiff's administrative claim did not raise *any claim* which would have put the Defendant on notice that there was a racial component. It is, thus, the undisputed law of the case that the Plaintiff failed to exhaust *any* claim that racial discrimination played a role in the decision-making process with respect to the Community Builder position. See, e.g., Flibotte, 131 F.3d at 25; Ellis, 313 F.3d at 646-648.[10] Stated another way, Plaintiff claimed that he was denied the position on account of solely his gender and his age, and those are the claims which are to be tried by this Court.

Patoski cannot now seek to pursue claims race based discrimination, whether couched as claims of race and gender based discrimination or claims of "gender plus" race discrimination, that have never been administratively presented or exhausted. "[I]n a Title VII case, a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door." Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005).[11]

The Plaintiff fails to point to any evidence that would justify revisiting Magistrate Judge Alexander's prior ruling on this issue and Plaintiff's efforts to interject claims of race based discrimination with respect to the Community Builder position which have been previously

---

[10] To the extent that Plaintiff would argue that Magistrate Judge Alexander's decision only addresses whether he may bring an independent claim of race based discrimination, and does not specifically decide whether he may bring as part of his gender discrimination claim a claim that gender discrimination plus race discrimination contributed to his non-selection, such argument is without merit. Here, Magistrate Judge Alexander has concluded that the Plaintiff filed an administrative claim alleging age and gender discrimination that did not implicate *any* claim of race based discrimination. Patoski, 477 F.Supp.2d at 363-365.

[11] Again, the Defendant should not be compelled to re-litigate issues previously decided in this matter. The Plaintiff offers no justification for why this court should disturb Magistrate Judge Alexander's findings (the law of this case), and this Court should, as did Magistrate Judge Alexander, exclude any and all claims of race based discrimination, however couched, with respect to the Community Builder non selection. See Section II, supra.

rejected by Judge Alexander must be denied.

As regards the instant Motion then, this Court should preclude the Plaintiff's proffered evidence that HUD's AEP discriminated against *White* males.  See also, Defendant's Motions in Limine to Exclude Plaintiff's Expert and to Exclude Testimony Regarding *White* Males [D. 74-75].

**IV.     An Aspirational Goal that the Federal Workforce Reflect the Diversity of the Civilian Workforce is Neither Illegal Nor Prohibited by Title VII**

That HUD, among agencies of the federal government generally, wishes its workforce to reflect the diversity of the civilian workforce is not evidence that HUD intends to discriminate on the basis of race, ethnicity or gender.  See, e.g., Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir.1991) (internal memorandum stating that lists of candidates for Distinguished Professor "should include a very significant representation of minorities and females" in no way suggested that appointments to that position would be race-or gender-based) (per curiam); Altizer v. City of Roanoke, Virginia,  2003 WL 1456514, *4 (W.D.Va.,2003) (statements deploring lack of diversity and that increasing diversity is an important goal are not evidence of discrimination against white males); Lutes v. Goldin, 62 F. Supp.2d 118, 131-132 (D.D.C.,1999) (numerous public statements about the importance of diversity at NASA are not evidence of discrimination against white males); Blanke v. Rochester Telephone Corp., 36 F.Supp.2d 589, 597 -598 (W.D.N.Y.,1999) (statement of desire to increase diversity is not evidence that White males would be fired); Brown v. Time, Inc., 1997 WL 231143, *4 (S.D.N.Y. 1997) (newsletter circulated by defendant's chairman stating, "[W]e must make diversity a reality . . . We must do as well at recruiting, retaining, and promoting minorities as we have with women in publishing" "express[ed] a commitment to diversity, but d[id] not thereby suggest a policy of

13

discrimination"); Payne v. Norwest Corp., 911 F.Supp. 1299, 1305-06 (D.Mont.1995) (internal memo that recommended increasing the number of women and minorities in certain positions, and fact that company had diversity goals and kept statistics on the number of minorities employed at managerial levels, did not give rise to inference that plaintiff was fired because he was white), *aff'd in part and rev'd on other grounds in part,* 113 F.3d 1079 (9th Cir.1997).

As clearly demonstrated by the numerous cases noted above, the belief that a workforce free from all discrimination would be reflective of the nation's diversity, and, hence, commitment to such a goal, is not evidence that HUD, or the federal government generally, will discriminate on the basis of race, ethnicity or gender in making hiring decisions. As such, to the extent that the Motion in Limine seeks an instruction that such an aspirational goal is illegal, it is without basis in fact or law and must be denied.

## Conclusion

For the foregoing reasons, Defendant requests that Plaintiff's Motion In Limine "Relating to HUD's Affirmative Employment Program" be denied.

                                                   Respectfully Submitted,
                                                   MICHAEL J. SULLIVAN
                                                   UNITED STATES ATTORNEY

By:   /s/ Mark J. Grady_____
       Mark J. Grady, Assistant United States Attorney
       United States Attorney's Office
       1 Courthouse Way– Suite 9200
       Boston, MA 02210
       617) 748-3136

## Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 10, 2008.
                                        /s/ Mark J. Grady\_\_\_\_\_

Mark J. Grady
Assistant U.S. Attorney