UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
RICHARD S. PATOSKI,              )
                                 )
             Plaintiff,          )
                                 )
v.                               )    C.A. No. 05-11086 RCL
                                 )
ALPHONSO JACKSON, SECRETARY,     )
DEPARTMENT OF HOUSING AND        )
URBAN DEVELOPMENT,               )
                                 )
             Defendant.          )
```

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE GENDER/AGE CLAIM IN COUNT III, AND MEMORANDUM IN SUPPORT OF A JURY TRIAL FOR COUNT III

Plaintiff hereby submits his opposition to Defendant's Motion to Dismiss the gender/age claim in Count III and further argues that he is entitled to a jury trial of Count III. Count III alleges that Plaintiff's 1997 application for a HUD Community Builder position was rejected, and that the rejection was based on dual consideration of his gender and age. In other words, Plaintiff was rejected because he was an older man.

Defendant HUD's motion should be denied, because a claim that an employer discriminated against an employee based on a combination of gender and age is a cognizable form of gender discrimination under Title VII. Arnett v. Aspin, 846 F. Supp. 1234, 1237-1241 (E.D. Pa. 1994) (recognizing sex plus age theory arising solely under a Title VII gender discrimination claim against Federal employer); Hall v. Missouri Highway & Transp. Com'n, 995 F. Supp. 1001, 1005 (E.D. Mo. 1998) (recognizing sex plus age claim under Title VII); EEOC Memorandum, Intersectional Discrimination, § 2,

example 3, March 19, 1997 (recognizing intersectional discrimination as a priority issue for the EEOC, and explicitly recognizing a prohibition on discrimination based on gender plus age), Attachment 1. Given that the gender/age discrimination claim arises solely under Title VII, a right to a jury trial necessarily obtains, pursuant to 42 U.S.C. § 1981a(c)(1).

For these, and other reasons as will be explained below, HUD's motion to dismiss the gender/age combination claim, and attempt to divest Plaintiff of his right to a jury trial, should be rejected.

## ARGUMENT

I.  **PLAINTIFF IS ENTITLED TO PURSUE A CLAIM OF GENDER DISCRIMINATION IN WHICH HE ALLEGES THAT HIS GENDER, IN COMBINATION WITH HIS AGE, WAS THE MOTIVE FOR HIS REJECTION**

   A.  GENDER/AGE CLAIMS ARE COGNIZABLE UNDER THE SEX PLUS THEORY OF SEX DISCRIMINATION

If an employer exhibits a preference for conferring employment benefits on women, over older men, this constitutes sex discrimination in violation of Title VII. That is because gender is a determinative factor in the decision to discriminate, even if another factor, such as age, was also considered by the employer. Title VII prohibits discrimination against sub-classes of men, if, but for their gender, they would not be placed within that disadvantaged class. For that reason, Plaintiff's combination sex plus age claim falls well within the protections against gender discrimination contained in Title VII.

Title VII prohibits employment discrimination based on gender. 42 U.S.C. § 2000e-2(a)(1) & (a)(2). This prohibition against discrimination protects men as well as

women. Oncale v. Sundowner Offshore Services, Inc., 118 S. Ct. 998, 1001 (1998). Title VII requires that "persons of like qualifications be given employment opportunities irrespective of their sex." Phillips v. Martin Marietta Corp., 91 S. Ct. 496 (1971). "Congress' intent to forbid employers to take gender into account in making employment decisions appears on the face of [Title VII]. . . . We take these words to mean that gender must be irrelevant to employment decisions." Price Waterhouse v. Hopkins, 109 S. Ct. 1775, 1785 (1989) (plurality) (superseded by statute on other grounds). As will be shown, Title VII is violated when an adverse employment action is based on gender plus another factor, such as age.

Title VII prohibits so called "gender plus" or "sex plus" discrimination, by which an employer discriminates, not against the class of men or women as a whole, but against a subclass of men or women so designated by their sex plus another characteristic. Gee-Thomas v. Cingular Wireless, 324 F. Supp. 2d 875, 881 (M.D. Tenn. 2004), citing Back v. Hastings on Hudson Union Free Sch. Dist., 365 F. 3d 107, 118 n.7 (2d Cir. 2004). A plaintiff may prevail in a Title VII sex discrimination case where the employer disparately treated a subclass of men or women. See, e.g., Phillips, 91 S. Ct. at 497-498.

In the Phillips case, Martin Marietta Corp. was willing to hire both women and men, and did not discriminate against these broad categories, in general terms. Id. at 497. Indeed, the overall hiring statistics showed that women were hired in numbers that exceeded their representation in the applicant pool. Id. Where the employer ran into trouble was its policy of rejecting job applications from women with young children, while it was willing to consider the applications of men with young children. Id. at 497. Despite the fact that women, as a general class, were being hired at levels indicating a

lack of gender-wide animus, the Supreme Court recognized a theory that allowed recovery for gender discrimination, where sex plus another factor (young children) was considered. According to Martin Marietta, men with children were eligible – women with children were not. This was not acceptable under the law.

Subsequent decisions confirmed and built upon the sex plus theory. The First Circuit has recognized a sex-plus-clothes claim.[1] There is also a sex-plus-marriage line of cases. In Sprogis v. United Airlines, 444 F.2d 1194, 1194-98 (7th Cir.), cert. denied, 404 U.S. 991, 30 L. Ed. 2d 543, 92 S. Ct. 536 (1971), the employer would hire married male flight attendants, but would not hire married female flight attendants. The Sprogis court held that this policy violated the Title VII prohibition against sex discrimination. Id. at 1198. "The effect of the statute is not to be diluted because discrimination adversely affects only a portion of the protected class." Id., at 1198. See also Fisher v. Vassar College, 70 F.3d 1420, 1449 n.14 33-34, 1448 (2d Cir. 1995), aff'd en banc, 114 F.3d 1332 (1997), cert. denied, 522 U.S. 1075, 139 L. Ed. 2d 752, 118 S. Ct. 851 (1998) ("Sex plus marriage discrimination is simply a sub-category of sex discrimination. To discriminate on the basis of sex plus marriage is to discriminate on the basis of sex").

Likewise, in Jefferies v. Harris County Community Action Association, 615 F.3d 1025, 1032-1033 (5th Cir. 1980), the Fifth Circuit recognized a combination sex plus race

---

[1] The First Circuit's decision in Rosa v. Park West Bank & Trust Co., 214 F.3d 213 (1st Cir. 2000), is consistent with the sex plus analysis. In that case, Lucas Rosa, a biological male, was wearing women's clothes when he sought a loan application from the defendant bank. Id. at 214. The bank refused to provide Rosa with a loan application, allegedly because he did not come dressed in masculine attire. Id. at 214. Rosa filed suit under the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691-1691f. The ECOA, like Title VII, prohibits discrimination on the basis of sex. 15 U.S.C. § 1691(a). The District Court granted the bank's motion to dismiss and Rosa appealed. The First Circuit held in Rosa's favor. When a man wearing a particular set of clothes would be treated better if he were a woman, then gender has been shown to be a determinative factor, and sex discrimination has been proven. Rosa, 214 F.3d at 215-216. But for Rosa's gender, he would have received the application, and this is the dispositive allegation, even though another factor (clothes) was also allegedly given consideration by the bank.

Title VII claim. Following the holding of Phillips, the Court reasoned that an African-American woman, experiencing bias due to the confluence of race and gender, had stated a valid theory of recovery under the sex-plus rubric. Id. at 1033. "[D]iscrimination against black females [could] exist even in the absence of discrimination against black men or white women." Id. at 1032.[2]

This line of reasoning extends reasonably, and naturally, to protect discrimination based on sex and age, such as older men, which is the type of claim that Plaintiff is pursuing. The case of Arnett v. Aspin, 846 F. Supp. 1234, 1237-1241 (E.D. Pa. 1994), is on point. In Arnett, the District Court recognized a gender plus age claim, arising solely under a Title VII gender discrimination count, after a lengthy and well reasoned analysis.[3] In that case, an older woman was permitted to seek recovery against her employer, an agency of the Federal government, based on a sex plus age claim. The Court recognized the claim as a necessary outgrowth of the sex plus line of cases. Id.

Other authorities recognize the existence of sex plus age claims. Hall v. Missouri Highway & Transp. Com'n, 995 F. Supp. 1001, 1005 (E.D. Mo. 1998) (recognizing sex plus age claim under Title VII); EEOC Memorandum, Intersectional Discrimination, § 2, example 3, March 19, 1997 (recognizing intersectional discrimination as a priority issue for the EEOC, and explicitly recognizing a prohibition on discrimination based on gender plus age), Attachment 1.

---

[2] See also Johnson v. Dillard's Inc., 2007 U.S. Dist. Lexis 71176 (D. S.C. 2007), at 8-12 (recognizing sex plus race claim under Title VII); Graham v. Bendix Corp., 585 F. Supp. 1036, 1047 (N.D. Ind. 1984) ("The duty not to discriminate is owed each minority employee, and discrimination against one of them is not excused by a showing the employer did not discriminate against all of them, or there was one he did not abuse."), citing Furnco v. Waters, 98 S. Ct. 2943 (1978);
[3] See Trezza v. Hartford, Inc., 1998 U.S. Dist. Lexis 20206 (S.D. N.Y. 1998), at 18-19 (following the Arnett decision and praising it as "well reasoned").

5

If an employer would prefer other categories of people, older women, younger women, younger men, as compared with older men, the determinative factor in this discrimination is gender. If the older man changed gender and became an older woman, the discrimination would go away, under this scenario. Discrimination that considers sex and another neutral factor nevertheless places the conduct squarely within the realm of sex discrimination. Consequently, when an employer makes a decision based on sex, in combination with another immutable characteristic, such as age, this represents gender discrimination under Title VII.

B.  TITLE VII CLEARLY PROHIBITS SEX PLUS DISCRIMINATION

HUD argues that a sex plus age claim is not clearly established in Title VII as to overcome the Federal Government's claim of sovereign immunity. However, it is absolutely clear that the sex plus theory of discrimination is embraced by Title VII, and it has been applied to the Federal Government.

Congress rejected an amendment that would have prohibited discrimination based "solely" on gender. 110 Cong. Rec. 2728, 13837 (1964); Price Waterhouse v. Hopkins, 109 S. Ct. 1775, 1785 & n. 7 (1989). Consequently, Title VII prohibits discrimination on the basis of sex when such consideration is paired with other motives. Indeed, an enormous body of case law has been built up, interpreting sex plus and mixed motive analysis. Thus, the sex plus theory is embraced under Title VII, with "legitimate legislative underpinning." Arnett, 846 F. Supp. at 1238 n. 5, quoting Willingham v. Macon Telegraph Publishing Co., 507 F.2d 1084, 1088-1089 (5th Cir. 1975). **The Arnett case applied a gender/age theory against the Federal Government, and so the prohibition at issue here has sufficient statutory basis to avoid sovereign immunity.**

Thus, the sex plus claim that Plaintiff is pursuing is embraced by the broad prohibitions against gender discrimination contained in Title VII, which are fully applicable to the Federal Government.

Plaintiff is asking that the Court simply recognize a type of gender discrimination theory, sex plus, which has applied since the <u>Phillips</u> case in 1971. Congress has always understood that gender discrimination may be combined with other factors. Title VII has never imposed a requirement that unlawful discrimination be the sole reason for the adverse action. <u>McDonald v. Santa Fe Trail Transportation Co.</u>, 427 U.S. 273, 282 n.10 (1976) (under Title VII's "because of" language, plaintiff need only prove discrimination was "but for" cause as opposed to "sole" cause). Consequently, there is sufficient legislative clearance to pursue the combination claim against HUD.

While age is a protected category under the ADEA, that does not mean that age is not appropriately considered a "plus" factor under Title VII. It would be illogical for Title VII to prohibit discrimination based on sex plus a <u>neutral</u> factor, (such as being married or having children), yet refuse to prohibit discrimination based on sex plus a prohibited criterion. <u>Jeffries</u>, 615 F.2d at 1034. The <u>Arnett</u> decision considered the issue carefully, and concluded that the ADEA's prohibition against age discrimination should not prevent age from being deemed a "sex plus" factor for the purposes of a Title VII gender discrimination claim:

> The reasoning behind the holdings of <u>Phillips</u> and its progeny is that when an employer discriminates against members of one sex, the victims of such discrimination should have a remedy under Title VII which expressly prohibits discrimination on the basis of sex. The point behind the establishment of the sex-plus discrimination theory is to allow Title VII plaintiffs to survive summary judgment when the defendant employer does not discriminate against all members of the sex. Thus, the above-cited cases have not created a new remedy, but instead have closed a loophole through which defendant employers could escape Title VII

7

> liability. As the Court stated in <u>Jefferies</u>, an employer could discriminate against a discrete group of women -- large women, black women, women with children, married women, pregnant women, older women -- and be granted summary judgment in their favor because they had indeed filled these positions with other women not in the group. Such a result cannot be condoned. **This is true whether or not the "plus" classification is also one afforded protection on its own, such as age under the ADEA.**

<u>Arnett</u>, 846 F. Supp. at 1240 (emphasis added). Thus, Plaintiff's sex plus age claim may be pursued against the Federal employer.

    C.    COUNT III DOES NOT REQUIRE A FINDING OF VIOLATION OF THE ADEA

Defendant argues that there is no statute that makes it absolutely clear that a claim alleging sex plus age may be raised against a Federal employer, because nothing clearly permits a claim to combine Title VII with the ADEA. Even if that were the case, Plaintiff may still pursue the claim. Plaintiff is not herein asking the Court to apply a claim involving a mixture of statutory provisions. For the purposes of this motion, Plaintiff is seeking recovery under Count III under Title VII alone, and not in combination with the ADEA.[4]

Plaintiff may pursue a claim alleging violation of Title VII gender discrimination, only, without any reliance on the ADEA. Indeed, as made clear by the <u>Arnett</u> case, a sex plus age claim is one that may arise solely under Title VII, without resort to the ADEA. <u>Arnett</u>, 846 F. Supp. at 1241.

> It is important to remember that the second count of Arnett's complaint contains a claim for sex discrimination, not age discrimination. The "sex-plus" line of cases cited above merely provide a means for those Title VII plaintiffs who claim that their employers have discrimination against them on the basis of sex to survive summary judgment . . . when their employers have not discriminated against all members of their sex. For example, Arnett claims that the defendants

---

[4] To the extent that this Court prevents the gender/age combination claim from being heard by the jury, Plaintiff reserves his right to recast the claim to be tried before the court as relying on Title VII, the ADEA, and/or a combination of both.

8

> discriminated against her on the basis of her sex in violation of Title VII because they required more of her than they did of the male applicants for the position of equal employment specialist. That is, they required that she be under the age of forty.
>
> . . . For purposes of determining whether the defendants discriminated against Arnett in violation of Title VII, I find she is a member of a discrete subclass of women over forty.'

Arnett, 846 F. Supp. at 1240-1241.

Defendants argument that no statute clearly permits a mixture of ADEA and Title VII protections is off point, and irrelevant, since Title VII provides a sole and sufficient basis for the sex plus age claim.

## II.    DEFENDANT'S MOTION TO DISMISS IS UNTIMELY

The deadline for filing summary judgment/dispositive motions was May 17, 2007. Defendant's Rule 12 motion is almost a year late. As Defendant acknowledges, the sovereign immunity defense is waivable -- it is, therefore, non-jurisdictional. Thus, the defense, even if it were a valid one (it is not), has been waived.

## III.    PLAINTIFF IS ENTITLED TO A JURY TRIAL OF COUNT III

Plaintiffs seeking to pursue a recovery against the Federal Government for Title VII gender discrimination claims are entitled to a jury trial. 42 U.S.C. § 1981a(c)(1). The statute states that, "[i]f a complaining party seeks compensatory or punitive damages under this section . . . any party may demand a trial by jury." Id. Plaintiff's sex plus gender claim arises solely under Title VII, and he is seeking damages which compel coverage of § 1981a(c)(1), including compensatory damages including front pay and emotional distress damages. Arnett, 846 F. Supp. at 1240-1241. Thus, Plaintiff is entitled to a jury trial for Count III of his Complaint.

The Defendant is correct to argue that there is no right to a jury for claims arising under the ADEA. However, the Defendant is wrong to assume that the sex plus age claim necessarily draws upon a combination of both the ADEA and Title VII. The Plaintiff is not herein asserting the claim pursuant to the ADEA. He is asserting a claim arising solely under Title VII. Cf supra fn. 4. Consequently, the right to a jury obtains. In the alternative, Plaintiff requests an advisory jury.

Respectfully submitted,

The Plaintiff,
By his Attorneys


_____/s/ Robert S. Mantell_____
Kevin G. Powers
BBO# 405020
Robert S. Mantell
BBO# 559715
Rodgers, Powers & Schwartz LLP
18 Tremont Street
Suite 500
Boston, MA 02108
(617) 742-7010

Patoski opposition dismiss combination gender

# EXHIBIT 1



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Washington, D.C. 20507

MAR 19 1997

MEMORANDUM

TO:      District, Area, and Local Field Office Directors
         Regional Attorneys

FROM:    Ellen J. Vargyas    *Ellen Vargyas*
         Legal Counsel

         C. Gregory Stewart    *C.G. Stewart*
         General Counsel

         Elizabeth Thornton, Director
         Office of Program Operations

SUBJECT: Intersectional Discrimination

The Commission's National Enforcement Plan identifies intersectional discrimination as a priority issue. Specifically, it includes:

> Claims based on the intersection of two or more prohibited bases of discrimination (e.g., discrimination against women of color, older women, or minority persons with disabilities).

Based on questions which have been presented about the meaning of this category, we have prepared this memo to provide additional guidance to the field.

I. **Definition of Intersectional Discrimination**

Intersectional discrimination is discrimination based on a combination -- or "intersection" -- of two or more prohibited bases. In intersectional cases, the discrimination is targeted at, or adversely impacts, individuals who are members of two or more protected categories precisely because they are members of these particular categories. The discrimination is, therefore, based on this intersection or combination of the prohibited bases.

A leading case on intersectional discrimination succinctly explains this theory. In <u>Lam v. University of Hawaii</u>, 40 F.3d 1551 (9th Cir. 1994), the Ninth Circuit held that an Asian woman's claim of race and sex animus should be analyzed in terms of "whether the employer discriminates on the basis of that combination of factors, not just whether it discriminates against people of the same race or of the same sex." 40 F.3d at 1562. The court explained that an individual's identity cannot be bisected at the intersection of race and sex nor can the discrimination be reduced to distinct components, because it distorts or ignores the particular nature of an individual's experience. Asian women may be subject to stereotypes and targeted for discrimination even in the absence of discrimination against Asian men or non-Asian women. Intersectional discrimination exists, at least in part, because of stereotypes that are specific to women of color, Black men, older women, older people with disabilities, and other particular groups in which protected classifications intersect.

<u>Lam</u> is part of a developing jurisprudence which recognizes intersectional discrimination claims as stating a cause of action under the civil rights laws. Several courts had previously recognized Black women as a class separate and distinct from the class of women and the class of Blacks. They found that discrimination against Black women can exist even absent discrimination against Black men or White women and that the fact that Black men and White women are not subject to discrimination does not defeat an aggrieved Black woman's charge. In fact, more favorable treatment of Black men and White women can be evidence of discrimination against an aggrieved Black woman. See <u>Jefferies v. Harris County Community Action Association</u>, 615 F.2d 1025 (5th Cir. 1980); <u>Judge v. Marsh</u>, 649 F.Supp. 770, 780 (D.D.C. 1986) (adverse employment actions directed against Black women may violate Title VII). Several other courts have recognized intersectional claims by older women. See <u>Good v. U.S. West Communications, Inc.</u>, 1995 WL 67672 (D. Or. 1995) (court recognized plaintiff's intersectional claim of age and sex discrimination); <u>Arnett v. Aspin, Secretary of Defense</u>, 846 F.Supp. 1234, 1241 (E.D. Pa. 1994) (court found that

-2-

plaintiff is a member of a protected subgroup -- women over forty).[1]

These cases acknowledge some basic realities of the workforce. For example, employment data indicate a pattern of depressed salary levels and a lack of employment opportunities for Black women, Latino women, and older women. The Department of Labor Glass Ceiling Report, "Good for Business," reports that, at various educational levels and professions, women of color typically make less money than their male racial counterpart and White women. According to the U.S. Bureau of Labor Statistics for 1996, the average median weekly income for Black women is approximately 59% of the median weekly income for White men, 84% of the median weekly income for White women, and 84% of the median weekly income for Black men. The average median weekly income for women 55 years of age and over is approximately 65% of the median weekly income for men in the same age group and 88% of the median weekly income for women 30 to 54 years of age.

Intersectional discrimination cases are distinguishable from multiple discrimination cases. In multiple discrimination cases,

---

[1] For additional information, there are a number of law review articles and treatises on intersectional discrimination available in the headquarters library. See e.g., Winston, *Mirror, Mirror on the Wall: Title VII, Section 1981, and the Intersection of Race and Gender in the Civil Rights Act of 1990*, 79 Calif. L. Rev. (1991); Smith, *Separate Identities: Black Women, Work, and Title VII*, 14 Harvard Women's Law Journal 21 (1991); Shoben, *Compound Discrimination: The Interaction of Race and Sex in Employment Discrimination*, 55 N.Y.U.L. Rev. 793 (1980); Scales-Trent, *Compound Discrimination -- The Intersection of Race and Gender*, in Rossein, Employment Discrimination Law and Litigation (1994); American Association of Retired Persons, *Employment Discrimination Against Midlife and Older Women* (1996). For additional information on specific stereotypes that have lead to intersectional discrimination, see e.g., Ammons, *Mules, Madonnas, Babies, Racial Imagery and Stereotypes: The African-American Woman and the Battered Woman Syndrome*, 1995 Wisconsin Law Review 1003 (1995); American Association of Retired Persons, *The Persistence of Age and Sex Stereotypes in the 1990s: The Influence of Age and Gender in Management Decisionmaking* (1995).

a Charging Party brings an independent claim of discrimination on each of two or more bases. For example, an employer has a promotion policy that disproportionately excludes both women and African-Americans. In a multiple discrimination case, a Black woman can bring a charge alleging both race and sex discrimination, each on an independent basis. This differs from an intersectional claim where the discrimination is based on the combination of bases. Some cases, however, may involve both multiple and intersectional claims.

## II. Examples of Intersectional Discrimination

**Example:** Tamara is a Black woman who alleges that she was subjected to a racially and sexually hostile work environment. Tamara's co-worker called her a "Black B****". The epithet "Black B****" contains elements of both racial and sexual animus and cannot be designated exclusively as racist or sexist. It is impossible to separate the racial and sexual hostility. Therefore, the slur "Black B****" can be used as evidence of intersectional discrimination on the combined basis of race and sex. In addition, Tamara's co-worker made several sexual comments and three racial slurs to her in a six-week period. Because of the relative infrequency of the comments, Tamara may have insufficient evidence to prove independent claims of either racial or sexual harassment. Nevertheless, if all the comments were considered together, they would be sufficient to establish a claim of harassment. Evidence of the racial and sexual comments may be aggregated to determine the pervasiveness of the harassment and to establish a hostile work environment. See Hicks v. Gates Rubber Company, 833 F.2d 1406, 1416 (10th Cir. 1987) (evidence of racial and sexual hostility may be aggregated to determine the pervasiveness of the harassment); Anthony v. County of Sacramento, 898 F.Supp. 1435, 1445-47 (E.D. Cal. 1995) (plaintiff called a "Black B****"; evidence of racial and sexual harassment must be considered together to establish a hostile work environment).

**Example:** Luis is a Hispanic male who developed polio as a child. He wears a leg brace and walks with difficulty. Luis applied for, and was denied, a position as a shipping clerk in Respondent's warehouse. However, the Respondent has hired non-Hispanics who have similar impairments and has hired Hispanics without impairments. There is no evidence of discrimination against

Hispanics without disabilities or non-Hispanics with or without disabilities. The employer may be liable for intersectional discrimination on the overlapping bases of national origin and disability. The employer cannot successfully defend its actions by the fact that it has not discriminated against all Hispanics or all individuals with disabilities.

**Example:** Leah is a forty-five year old TV news anchorwoman who was discharged and replaced by a thirty-one year-old anchorwoman. Leah's co-anchor is a fifty-five year old man. A co-worker overheard Leah's manager say that "in this business a woman needs to be youthful and sexually attractive." Leah's former male co-anchor is older than she and her replacement is a woman. Leah may have insufficient evidence to prove an independent claim of age discrimination or sex discrimination. However, Leah may be able to establish that her disparate treatment was caused by a confluence of age and sex discrimination. The Respondent will not be exonerated by the fact that it has not discriminated against all women nor all individuals in the protected age group.

**Example:** Aaron is a Black male who works for a publishing company. He is in an entry level position and sets up computers and phone lines. Aaron has requested training for over a year that would place him on the promotion certification list for a computer analyst position. Women of color, and White and Hispanic men, most with less seniority than Aaron, have received training and are on the certification list. If promoted, Aaron would often have to work after hours and be in the office alone with the female manager. The investigator discovers that this manager has made statements expressing stereotypical fears about Black men. Thus, even though Black women and non-Black men have not been discriminated against, the evidence suggests that Aaron was discriminated against because of the intersection of race and sex.

## III. Charge Processing

Be alert when two or more bases of discrimination may be involved. It may be impossible to determine at the outset of an investigation whether a claim is of intersectional or multiple discrimination. Both theories should be considered when collecting evidence to insure that valid intersectional claims are properly investigated and prosecuted.

The Commission recognizes intersectional discrimination claims as an enforcement priority. Employers should not be allowed to escape liability merely because the employer does not discriminate against all people in a protected category, but targets, or has policies which have an adverse impact on, particular individuals who belong to two or more protected groups. Moreover, if the Charging Party's case would probably be defeated if the bases are analyzed separately (e.g., the Charging Party is a Black female and the employer has hired or promoted non-Black females and Black males), then analyze the case as an intersectional discrimination claim. Claims of intersectional discrimination may be premised upon any combination of race, color, religion, sex, national origin, age, and/or disability. Accordingly, prohibited bases under Title VII, the ADEA, and/or the ADA may be combined to form the basis for intersectional claims.

The Office of Legal Counsel is interested in helping to develop and track these cases. If we can be of assistance, please contact Teresa Guerrant or Susan Murphy in the Office of Legal Counsel at (202) 663-4679. For assistance with cases in litigation, please contact Jerome Scanlan in Litigation Management Services at (202) 663-4719.